# HANKE

# EXHIBIT C

This Management and Deposit Agreement is written with the classical law of contracts and obligations adopted the principle of freedom of contracts according to Sharia Principles to the best of the author's knowledge. This Management and Deposit Agreement will be entered into and applied in good faith, preferably be in writing, and avoid riba.

# Management and Deposit Agreement

This *Management and Deposit Agreement* ("**Agreement**") is entered into, legally binding and effective on this 12th March 2019 ("**Effective Date**") by and between:

**Mohammad Thani A.T. Al-Thani**

**Zone 66, Street No 745 Building No. 04**

**Doha, Qatar 18770**


and


**IOLO Global LLC**

**1712 Pioneer Avenue, Suite 500**

**Cheyenne, WY. 82001**


Mohammad Thani A.T. Al-Thani is referred to herein as "**Client**".


IOLO Global, LLC is referred to herein as "**IOLO**".


Client and IOLO are collectively referred to herein as the "**Parties**" and, individually, each is a "Party".


The transaction described in this Agreement is identified by this transaction code:
MTATLRIG3M03072019. Investor Transaction Code: MATIOLO-01022019/A


Cash assets to be managed under this Agreement shall be referred to herein as "**Assets**" and shall be further described in Appendix A.


RECITALS

**This Management and Deposit Agreement is written with the classical law of contracts and obligations adopted the principle of freedom of contracts according to Sharia Principles to the best of the author's knowledge. This Management and Deposit Agreement will be entered into and applied in good faith, preferably be in writing, and avoid riba.**

**Whereas**, IOLO has specific experience in the areas of finance, funding, and investments available for contribution;

**Whereas**, Client has Assets available to invest and has a sophisticated knowledge of the investment markets available for participation and entry;

**Whereas**, Client understands that IOLO is making available their various financial, insurance, and banking services through this vehicle;

**Whereas**, the Parties have agreed to enter into this Agreement for the sole purpose of Client making the Assets described herein available to the asset management and investment services that will be provided by IOLO;

**Whereas**, the Parties recognize the definition given to the term "accredited investor" by the U.S. Securities and Exchange Commission under the Securities Act of 1933, as amended, and Client represents and warrants that Client is an accredited investor;

**Whereas**, both Parties hereto acknowledge and confirm their respective abilities and capacities to undertake and execute this Agreement for their mutual benefit and agree to be bound by the terms and conditions stated herein;

**Now, therefore**, in consideration of the mutual covenants, terms and conditions herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Client and IOLO, the Parties join in making the following agreements.

1. **Scope and Purpose.** The scope and purpose of this Agreement is to establish the relationship between the Parties; to establish the procedures and protocols for the deposit of the Assets into the designated bank account; to describe the methodology which IOLO will utilize to secure said Assets; and to describe the funding desired by the Client.

2. **Asset Declarations.** The undersigned declares that Client is the authorized signatory for the intended investment of the Assets and hereby affirms that:

   2.1. The Assets are clean, clear, unencumbered and of non-criminal origin.

   2.2. Client has legal authority over the above described Assets, including the capacity and power to arrange for the transfer of the intended Assets.

3. **Asset Management Appointment.** Subject to the terms and conditions provided in this Agreement. Client hereby appoints IOLO to perform the specific investment services with respect to the Assets and IOLO hereby accepts and agrees to such appointment. Pursuant to this appointment, the Parties hereby agree that:

**This Management and Deposit Agreement is written with the classical law of contracts and obligations adopted the principle of freedom of contracts according to Sharia Principles to the best of the author's knowledge. This Management and Deposit Agreement will be entered into and applied in good faith, preferably be in writing, and avoid riba.**

3.1. IOLO for and on behalf of Client shall fulfill its mandate in a fiduciary capacity.

3.2. Upon receipt and clearing of Client's Assets into the IOLTA account IOLO will place the Assets into one or more asset enhancement transactions ("**Transaction**") to be structured for Client by IOLO, to produce the desired funding referenced in Appendix B herein.

3.3. Client grants to IOLO full power, and sole authority to perform every reasonable act necessary to be done for the transaction in the same extent as Client might or could do or cause to be done by virtue hereof if personally present, but only for the sole purpose of this transaction and IOLO performing its obligations under this Agreement.

4. **Deposit of Assets.** Upon execution of this Agreement by both Parties, Client will transfer the Assets ("**Deposit**") into the IOLTA account designated in Appendix C. Client and IOLO agree that this Agreement is offered to Client contingent on Client's origination of the Asset transfer to the account specified in Appendix C on or before the third international banking day following the execution of this agreement.

5. **Asset Surety.** Upon Deposit of Assets, IOLO makes the following Sureties to Client:

5.1. It is agreed and understood by Client that the first $250,000.00 USD of the Deposit will be insured by Federal Deposit Surety Corporation (FDIC) against loss in the event of the Bank's failure.

5.2. The remaining balance will be insured by IOLTA Surety provided by the State (New York).

5.3. Both 5.1 and 5.2 will remain in place until;

5.3.1. An Escrow Agreement between the Parties is effectuated. And,

5.3.2. The entire Deposit is insured by private deposit Surety (Surety), issued by a syndication of Surety companies, each rated "A" or better by AM Best ("**Deposit Guarantee Surety**").

5.4. IOLO shall have five international banking days from the date the Deposit is received by the above designated Bank described in Appendix C to provide completion of the actions described in Section 5.3.1. IOLO shall also have five international banking days from the fully executed Escrow Agreement to provide the Deposit Guarantee Surety described in Section 5.3.2. It is agreed and understood that Client may withdraw its Deposit at any time prior to the completion of these actions.

5.5. In the event of any non-performance by IOLO after the period specified in Appendix B, Client may at its discretion, extend additional time to IOLO to cure the condition of non-performance, or Client, at its discretion, may choose to request the return of its original Assets and IOLO shall comply with this request within seven (7) business days.

5.6. Upon both Parties having executed the Agreement, and upon Client having received the Deposit Guarantee Surety IOLO, shall have full authorization to withdraw any portion of the Assets from the Deposit on account for placement under IOLO's management and utilization, including but not limited to the release of funds held under escrow via the Release Letter. Or,

5.6.1. Client reserves the right to have their funds returned provided as part of the escrow by executing the Return Funds Letter.

This Management and Deposit Agreement is written with the classical law of contracts and obligations adopted the principle of freedom of contracts according to Sharia Principles to the best of the author's knowledge. This Management and Deposit Agreement will be entered into and applied in good faith, preferably be in writing, and avoid riba.

6. **Term.** This Management and Deposit Agreement shall be binding upon the Parties from the date that Escrow Agent receives the Asset, plus the transaction period described in Appendix B, and thereafter until all agreements between the Parties have been fulfilled and/or terminated.

7. **Funding.** The funding payment and/or retention amounts provided in Appendix B are minimum amounts. The amounts may be increased by factors such as the portion of the Assets held in reserve or other factors known to and agreed to by the Parties. IOLO agrees to use commercially reasonable best efforts to satisfy the requirements of the funding and timing described herein.

8. **Change Coordination.** The Parties agree that any change in the funding requirements and/or deposit amount made after this Agreement is executed must be coordinated between and approved by the Parties in either an addendum to this Agreement or in a new Agreement.

9. **Fees.** There will be associated fees for various products or services as a result of this agreement. Such as Escrow Fees, Surety Fees, Bank Fees and Wire/Swift Fees Etc. These fees in no way affect the funding schedule described in Appendix B. Any fees are accounted for and are factored in as a normal cost of doing business in this type of transaction.

10. **Confidentiality.** In the absence of the advance written consent by the other Party, neither Party may provide or disclose to other companies, enterprises, associates, affiliates or persons any materials or information relating to the business of the other Party unless the laws or relevant regulatory authorities otherwise provide, or unless such disclosure is necessary to satisfy the legal requirements regarding information disclosure by listed companies.

11. **Obligations.** Except for the Confidentiality provisions of this Agreement, the Parties will be temporarily released from obligations under this Agreement during times that a Party is prevented from executing its obligations in whole or in part due to force majeure, such as earthquake, typhoon, flood, fire, and war or any other unforeseen and uncontrollable major disruptive event where the affected Party has communicated the impacting nature of said event to the other Party and taken any and all appropriate actions to mitigate the impact of said event.

12. **Non-Waiver.** Unless otherwise provided by law, no failure to exercise and no delay in exercising any right, power, or privilege hereunder shall constitute a waiver of such right, power or privilege; nor shall any single or partial exercise of any right, power, or privilege preclude the exercise of any other rights, powers or privileges.

13. **Notices.** All notices affidavits, and/or other communications relating to the Agreement shall be in writing and shall be delivered by overnight courier, fax or post. Notices delivered by overnight courier shall take effect upon delivery. Notices sent by fax shall take effect upon successful transmission, provided that a fax confirmation report produced by the fax machine showing the successful transmission of the notice is provided by the sending Party. Notices sent by mail shall take effect on the third day after having been posted. (If the last day is a Sunday, or statutory holiday, such day shall be the next working day.) The addresses of the Parties for the delivery of notices are as indicated below.

13.1. **If to the Client;**

Company: N/A

Name: Mohammad Thani A.T. Al-Thani

This Management and Deposit Agreement is written with the classical law of contracts and obligations adopted the principle of freedom of contracts according to Sharia Principles to the best of the author's knowledge. This Management and Deposit Agreement will be entered into and applied in good faith, preferably be in writing, and avoid riba.

Address: Zone 66, Street No 745 Building No. 04, Doha, Qatar 18770

Phone: +974 6666 5831

Email: mta.althani@gmail.com

**13.2. If to the IOLO Global LLC;**

Company: IOLO Global LLC

Name: Alan Hanke

Address: 1712 Pioneer Ave, Suite 500, Cheyenne, WY 82001

Phone: +1 (815) 814-3879

Email: alanjhanke@sbcglobal.net

14. **Governing Law.** This Agreement shall be governed by and interpreted and construed in accordance with the laws of the State of Wyoming.

15. **Dispute Resolution.** Any disputes arising from and related to this Agreement shall be settled by both Parties through friendly negotiations. If a dispute cannot be resolved through friendly negotiations within Ninety (90) days following notice of such dispute, both Parties agree that the law courts of the State of Wyoming may settle any disputes or claims which may arise out of, or in connection with this Agreement by arbitration. The decision of the arbitrator shall be final and binding on both Parties.

16. **Binding.** This Agreement shall inure to the benefit of each Party, their respective heirs, executors, administrators, affiliates, associates, partners and successors in interest and shall be binding on them and on their directors, officers, employees and agents.

17. **Electronic Signatures.** This Agreement, if executed electronically, and any facsimile or scanned copies (PDF / JPEG) shall be deemed to have the same legal effect as if in hard copy format. The same validity, acceptance applies to electronically generated initials, signatures or seals made on this Agreement.

*The Parties whose signatures are affixed below hereby avow, state and represent, under the risk and penalty of perjury, that they are not informants, nor associated with any informant(s), nor with any government or government agency, domestic or international, whose purpose is to gather information concerning any transaction between the Parties hereto. Failure to disclose such information shall not prevent either Party from participation in the transaction contemplated if the purpose is to participate as would any other private citizen or entity. However, should subsequent knowledge of the passing of said information, to any such Authority by either Party against one or the other result in a loss to either Party, in any way, the Party passing the information, and any, and all Parties utilizing such information, shall be severally and wholly liable for such loss to the aggrieved Party.*

*The President of the United States of America did sign H.R.3723 on October 11, 1996 thus protecting all transactions conducted in currency of the United States of America by allowing*

This Management and Deposit Agreement is written with the classical law of contracts and obligations adopted the principle of freedom of contracts according to Sharia Principles to the best of the author's knowledge. This Management and Deposit Agreement will be entered into and applied in good faith, preferably be in writing, and avoid riba.

*Corporations the right to declare their contracts, clients, international procedures, information and the transactions which they engage in, to be classified as corporate, or trade secrets fully protected under the Economic and Industrial Espionage Laws of the United States of America and the International Economic Community.*

**IN WITNESS WHEREOF,** the Parties hereto declare that they have **(1)** read and understood this Agreement and are fully aware of the interpretation of all the provisions, terms, and conditions herein, **(2)** accepted and approved all covenants, terms, and conditions of this Agreement in good faith and in good spirit, and **(3)** entered this Agreement by signing with their hand below on the Effective Date specified on page one above.

**For and on behalf of Client:**

Signature: _____

Name: Mohammad Thani A.T. Al-Thani

Title: Individual

**For and on behalf of IOLO Global LLC:**

Signature: _____

Name: Alan J Hanke

Title: Managing Member

# Appendix A

## CLIENT ASSETS

**Assets Amount:**    The Client Assets described as the equivalent of Three Million United States Dollars ($3,000,000.00) will be originating from the following Institution;

Bank Name: Citi Private Bank

Bank Address: 33 Canada Square, London UK

Bank Phone: +44 0 20 7508 6931

**Deposit Date:**    This Agreement is offered to Client contingent on Client's origination of the transfer(s) to the account specified in Appendix C on or before the third international banking day following the execution of this agreement.

# Appendix B

## CLIENT FUNDING

**Funding:**    Fifty (50) international banking days following the release of Escrow, a payment

**This Management and Deposit Agreement is written with the classical law of contracts and obligations adopted the principle of freedom of contracts according to Sharia Principles to the best of the author's knowledge. This Management and Deposit Agreement will be entered into and applied in good faith, preferably be in writing, and avoid riba.**

equivalent to Two Million Four Hundred Thousand United States Dollars ($2,400,000.00) shall be paid directly into the account specified in Appendix D unless otherwise noticed (hereby known as the Initial Payment). Unless addressed in an addendum, it is understood that every twenty (20) international banking days following the release of Escrow from the Initial Payment, a payment equivalent to Two Million Four Hundred Thousand United States Dollars ($2,400,000.00) shall be paid directly into the account specified in Appendix D for a total of eleven (11) consecutive payments unless otherwise notified. Any payments desired by the Client will be noticed to IOLO two weeks or more prior to the payment date and paid directly into the account specified in Appendix D unless otherwise notified.

## Appendix C

### CLIENT SHALL TRANSFER THE ASSETS INTO THE FOLLOWING ACCOUNT:

BANK NAME: Bank of America

ACCOUNT NAME: S. Mills Rogers III /IOLTA Account

ACCOUNT NUMBER: 0001 022 0▮▮▮

ABA ROUTING NUMBER: 026 009 593

SWIFT CODE: BOFAUS3N

BANK ADDRESS: 4851 Lower Roswell Road, Marietta, GA 30068

BANK PHONE: (770) 977-3746

BANK OFFICER: Mr. Eric Szeder

## Appendix D

### IOLO SHALL TRANSFER CLIENT FUNDS INTO THE FOLLOWING ACCOUNT:

BANK NAME: Citi Private Bank

ACCOUNT NAME: Mohammad Thani A.T. Al-Thani

ACCOUNT NUMBER: 31▮▮▮▮

ABA ROUTING NUMBER: 021000089

SWIFT CODE: CITIGB

BANK ADDRESS: 33 Canada Square, Canary Warf, London, England, E14 5LB

BANK PHONE: +44 0 20 7508 6931

BANK OFFICER: Frankie Stannage

This Management and Deposit Agreement is written with the classical law of contracts and obligations adopted the principle of freedom of contracts according to Sharia Principles to the best of the author's knowledge. This Management and Deposit Agreement will be entered and applied in good faith, preferably be in writing, and avoid riba. This Addendum is consistent with Islamic laws, rules, principles and traditions and is carried out in a Sharia compliant manner.

# Management and Deposit Agreement

This *Management and Deposit Agreement* ("**Agreement**") is entered into, legally binding and effective on this 29 July 2019 ("**Effective Date**") by and between:

**Mohammad Thani A.T. Al-Thani**
**Zone 66, Street No 745 Building No. 04**
**Doha, Qatar 18770**

and

**IOLO Global LLC**
**1712 Pioneer Avenue, Suite 500**
**Cheyenne, WY. 82001**

Mohammad Thani A.T. Al-Thani is referred to herein as "**Client**".

IOLO Global, LLC is referred to herein as "**IOLO**".

Client and IOLO are collectively referred to herein as the "**Parties**" and, individually, each is a "Party".

The transaction described in this Agreement is identified by this transaction code: MTATIG3.5M07292019.

Cash assets to be managed under this Agreement shall be referred to herein as "**Assets**" and shall be further described in <u>Appendix A</u>.

### RECITALS

**Whereas**, IOLO has specific experience in the areas of finance, funding, and investments available for contribution;

**Whereas**, Client has Assets available to invest and has a sophisticated knowledge of the investment markets available for participation and entry;

**Whereas**, Client understands that IOLO is making available their various financial, insurance, and banking services through this vehicle;

**Whereas**, the Parties have agreed to enter into this Agreement for the sole purpose of Client making the Assets described herein available to the asset management and investment services that will be provided by IOLO;

**Whereas**, the Parties recognize the definition given to the term "accredited investor" by the U.S. Securities and Exchange Commission under the Securities Act of 1933, as amended, and Client represents and warrants that Client is an accredited investor;

**Whereas**, both Parties hereto acknowledge and confirm their respective abilities and capacities to

**This Management and Deposit Agreement is written with the classical law of contracts and obligations adopted the principle of freedom of contracts according to Sharia Principles to the best of the author's knowledge. This Management and Deposit Agreement will be entered and applied in good faith, preferably be in writing, and avoid riba. This Addendum is consistent with Islamic laws, rules, principles and traditions and is carried out in a Sharia compliant manner.**

undertake and execute this Agreement for their mutual benefit and agree to be bound by the terms and conditions stated herein;

**Now, therefore,** in consideration of the mutual covenants, terms and conditions herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Client and IOLO, the Parties join in making the following agreements.

**1    Scope and Purpose.** The scope and purpose of this Agreement is to establish the relationship between the Parties; to establish the procedures and protocols for the deposit of the Assets into the designated bank account; to describe the methodology which IOLO will utilize to secure said Assets; and to describe the funding desired by the Client.

**2    Asset Declarations.** The undersigned declares that Client is the authorized signatory for the intended investment of the Assets and hereby affirms that:

   **2.1**   The Assets are clean, clear, unencumbered and of non-criminal origin.

   **2.2**   Client has legal authority over the above described Assets, including the capacity and power to arrange for the transfer of the intended Assets.

**3    Asset Management Appointment.** Subject to the terms and conditions provided in this Agreement. Client hereby appoints IOLO to perform the specific investment services with respect to the Assets and IOLO hereby accepts and agrees to such appointment. Pursuant to this appointment, the Parties hereby agree that:

   **3.1**   IOLO for and on behalf of Client shall fulfill its mandate in a fiduciary capacity.

   **3.2**   Upon receipt and clearing of Client's Assets into the IOLTA account IOLO will place the Assets into one or more asset enhancement transactions ("**Transaction**") to be structured for Client by IOLO, to produce the desired funding referenced in Appendix B herein.

   **3.3**   Client grants to IOLO full power, and sole authority to perform every reasonable act necessary to be done for the transaction in the same extent as Client might or could do or cause to be done by virtue hereof if personally present, but only for the sole purpose of this transaction and IOLO performing its obligations under this Agreement.

**4    Deposit of Assets.** Upon execution of this Agreement by both Parties, Client will transfer the Assets ("**Deposit**") into the IOLTA account designated in Appendix C. Client and IOLO agree that this Agreement is offered to Client contingent on Client's origination of the Asset transfer to the account specified in Appendix C on or before the third international banking day following the execution of this agreement.

**5    Asset Surety.** Upon Deposit of Assets, IOLO makes the following Sureties to Client:

   **5.1**   It is agreed and understood by Client that the first $250,000.00 USD of the Deposit will be insured by Federal Deposit Surety Corporation (FDIC) against loss in the event of the Bank's failure.

   **5.2**   The remaining balance will be insured by IOLTA Surety.

   **5.3**   Both 5.1 and 5.2 will remain in place until;

**This Management and Deposit Agreement is written with the classical law of contracts and obligations adopted the principle of freedom of contracts according to Sharia Principles to the best of the author's knowledge. This Management and Deposit Agreement will be entered and applied in good faith, preferably be in writing, and avoid riba. This Addendum is consistent with Islamic laws, rules, principles and traditions and is carried out in a Sharia compliant manner.**

    **5.3.1** An Escrow Agreement between the Parties is effectuated. And,

    **5.3.2** The entire Deposit is insured by private deposit Surety (Surety), issued by a syndication of Surety companies, each rated "A" or better by AM Best ("**Deposit Guarantee Surety**").

**5.4** IOLO shall have five international banking days from the date the Deposit is received by the above designated Bank described in Appendix C to provide completion of the actions described in Section 5.3.1. IOLO shall also have five international banking days from the fully executed Escrow Agreement to provide the Deposit Guarantee Surety described in Section 5.3.2. It is agreed and understood that Client may withdraw its Deposit at any time prior to the completion of these actions.

**5.5** In the event of any non-performance by IOLO after the period specified in Appendix B, Client may at its discretion, extend additional time to IOLO to cure the condition of non-performance, or Client, at its discretion, may choose to request the return of its original Assets and IOLO shall comply with this request within seven (7) business days.

**5.6** Upon both Parties having executed the Agreement, and upon Client having received the Deposit Guarantee Surety IOLO, shall have full authorization to withdraw any portion of the Assets from the Deposit on account for placement under IOLO's management and utilization, including but not limited to the release of funds held under escrow via the Release Letter. Or,

    **5.6.1** Client reserves the right to have their funds returned provided as part of the escrow by executing the Return Funds Letter.

**6**   **Term.** This Management and Deposit Agreement shall be binding upon the Parties from the date that Escrow Agent receives the Asset, plus the transaction period described in Appendix B, and thereafter until all agreements between the Parties have been fulfilled and/or terminated.

**7**   **Funding.** The funding payment and/or retention amounts provided in Appendix B are minimum amounts. The amounts may be increased by factors such as the portion of the Assets held in reserve or other factors known to and agreed to by the Parties. IOLO agrees to use commercially reasonable best efforts to satisfy the requirements of the funding and timing described herein.

**8**   **Change Coordination.** The Parties agree that any change in the funding requirements and/or deposit amount made after this Agreement is executed must be coordinated between and approved by the Parties in either an addendum to this Agreement or in a new Agreement.

**9**   **Fees.** There will be associated fees for various products or services as a result of this agreement. Such as Escrow Fees, Surety Fees, Bank Fees and Wire/Swift Fees Etc. These fees in no way affect the funding schedule described in Appendix B. Any fees are accounted for and are factored in as a normal cost of doing business in this type of transaction.

**10**  **Confidentiality.** In the absence of the advance written consent by the other Party, neither Party may provide or disclose to other companies, enterprises, associates, affiliates or persons any materials or information relating to the business of the other Party unless the laws or relevant regulatory authorities otherwise provide, or unless such disclosure is necessary to satisfy the legal requirements regarding information disclosure by listed companies.

**11**  **Obligations.** Except for the Confidentiality provisions of this Agreement, the Parties will be temporarily

This Management and Deposit Agreement is written with the classical law of contracts and obligations adopted the principle of freedom of contracts according to Sharia Principles to the best of the author's knowledge. This Management and Deposit Agreement will be entered and applied in good faith, preferably be in writing, and avoid riba. This Addendum is consistent with Islamic laws, rules, principles and traditions and is carried out in a Sharia compliant manner.

12 released from obligations under this Agreement during times that a Party is prevented from executing its obligations in whole or in part due to force majeure, such as earthquake, typhoon, flood, fire, and war or any other unforeseen and uncontrollable major disruptive event where the affected Party has communicated the impacting nature of said event to the other Party and taken any and all appropriate actions to mitigate the impact of said event.

13 **Non-Waiver.** Unless otherwise provided by law, no failure to exercise and no delay in exercising any right, power, or privilege hereunder shall constitute a waiver of such right, power or privilege; nor shall any single or partial exercise of any right, power, or privilege preclude the exercise of any other rights, powers or privileges.

14 **Notices.** All notices affidavits, and/or other communications relating to the Agreement shall be in writing and shall be delivered by overnight courier, fax or post. Notices delivered by overnight courier shall take effect upon delivery. Notices sent by fax shall take effect upon successful transmission, provided that a fax confirmation report produced by the fax machine showing the successful transmission of the notice is provided by the sending Party. Notices sent by mail shall take effect on the third day after having been posted. (If the last day is a Sunday, or statutory holiday, such day shall be the next working day.) The addresses of the Parties for the delivery of notices are as indicated below.

### 14.1 If to the Client;

Company: N/A
Name: Mohammad Thani A.T. Al-Thani
Address: Zone 66, Street No 745 Building No. 04, Doha, Qatar 18770
Phone: +974 6666 5831
Email: mta.althani@gmail.com

### 14.2 If to the IOLO Global LLC;

Company: IOLO Global LLC
Name: Alan Hanke
Address: 1712 Pioneer Ave, Suite 500, Cheyenne, WY 82001
Phone: +1 (815) 814-3879
Email: alanjhanke@sbcglobal.net

15 **Governing Law.** This Agreement shall be governed by and interpreted and construed in accordance with the laws of the State of Wyoming.

16 **Dispute Resolution.** Any disputes arising from and related to this Agreement shall be settled by both Parties through friendly negotiations. If a dispute cannot be resolved through friendly negotiations within Ninety (90) days following notice of such dispute, both Parties agree that the law courts of the State of Wyoming may settle any disputes or claims which may arise out of, or in connection with this Agreement by arbitration. The decision of the arbitrator shall be final and binding on both Parties.

17 **Binding.** This Agreement shall inure to the benefit of each Party, their respective heirs, executors, administrators, affiliates, associates, partners and successors in interest and shall be binding on them and on their directors, officers, employees and agents.

18 **Electronic Signatures.** This Agreement, if executed electronically, and any facsimile or scanned

This Management and Deposit Agreement is written with the classical law of contracts and obligations adopted the principle of freedom of contracts according to Sharia Principles to the best of the author's knowledge. This Management and Deposit Agreement will be entered and applied in good faith, preferably be in writing, and avoid riba. This Addendum is consistent with Islamic laws, rules, principles and traditions and is carried out in a Sharia compliant manner.

copies (PDF / JPEG) shall be deemed to have the same legal effect as if in hard copy format. The same validity, acceptance applies to electronically generated initials, signatures or seals made on this Agreement.

*The Parties whose signatures are affixed below hereby avow, state and represent, under the risk and penalty of perjury, that they are not informants, nor associated with any informant(s), nor with any government or government agency, domestic or international, whose purpose is to gather information concerning any transaction between the Parties hereto. Failure to disclose such information shall not prevent either Party from participation in the transaction contemplated if the purpose is to participate as would any other private citizen or entity. However, should subsequent knowledge of the passing of said information, to any such Authority by either Party against one or the other result in a loss to either Party, in any way, the Party passing the information, and any, and all Parties utilizing such information, shall be severally and wholly liable for such loss to the aggrieved Party.*

*The President of the United States of America did sign H.R.3723 on October 11, 1996 thus protecting all transactions conducted in currency of the United States of America by allowing Corporations the right to declare their contracts, clients, international procedures, information and the transactions which they engage in, to be classified as corporate, or trade secrets fully protected under the Economic and Industrial Espionage Laws of the United States of America and the International Economic Community.*

**IN WITNESS WHEREOF,** the Parties hereto declare that they have **(1)** read and understood this Agreement and are fully aware of the interpretation of all the provisions, terms, and conditions herein, **(2)** accepted and approved all covenants, terms, and conditions of this Agreement in good faith and in good spirit, and **(3)** entered this Agreement by signing with their hand below on the Effective Date specified on page one above.

**For and on behalf of Client:**

**For and on behalf of IOLO Global LLC:**

Signature: _____

Name: Mohammad Thani A.T. Al-Thani
Title: Individual

Signature: _____

Name: Alan J Hanke
Title: Managing Member

This Management and Deposit Agreement is written with the classical law of contracts and obligations adopted the principle of freedom of contracts according to Sharia Principles to the best of the author's knowledge. This Management and Deposit Agreement will be entered and applied in good faith, preferably be in writing, and avoid riba. This Addendum is consistent with Islamic laws, rules, principles and traditions and is carried out in a Sharia compliant manner.

## Appendix A

### CLIENT ASSETS

**Assets Amount:** The Client Assets described as the equivalent of Three Million Five Hundred Thousand United States Dollars ($3,500,000.00) will be originating from the following Institution;

| | |
|---|---|
| Bank Name: | Qatar International Islamic Bank |
| Bank Address: | Qatar International Islamic Bank, Grand Hamad Street, P.O.Box 664, Doha, Qatar |
| Bank Phone: | 00974 44840000 |

**Deposit Date:** This Agreement is offered to Client contingent on Client's origination of the transfer(s) to the account specified in Appendix C on or before the third international banking day following the execution of this agreement.

## Appendix B

### CLIENT FUNDING

**Funding:** Forty-five (45) calendar days following the release of Escrow, a payment equivalent to Ten Million Five Hundred Thousand United States Dollars ($10,500,000.00) shall be paid directly into the account specified in Appendix D unless otherwise noticed (hereby known as the Initial Payment).

## Appendix C

### CLIENT SHALL TRANSFER THE ASSETS INTO THE FOLLOWING ACCOUNT:

BANK NAME: Bank of America
ACCOUNT NAME: S. Mills Rogers III /IOLTA Account
ACCOUNT NUMBER: 0001 022 0███████
ABA ROUTING NUMBER: 026 009 593
SWIFT CODE: BOFAUS3N
BANK ADDRESS: 4851 Lower Roswell Road, Marietta, GA 30068
BANK PHONE: (770) 977-3746
BANK OFFICER: Mr. Eric Szeder

## Appendix D

### IOLO SHALL TRANSFER CLIENT FUNDS INTO THE FOLLOWING ACCOUNT:

BANK NAME: Citi Private Bank
ACCOUNT NAME: Mohammad Thani A.T. Al-Thani
ACCOUNT NUMBER: 31█████
ABA ROUTING NUMBER: 021000089
SWIFT CODE: CITIGB
BANK ADDRESS: 33 Canada Square, Canary Warf, London, England, E14 5LB
BANK PHONE: +44 0 20 7508 6931
BANK OFFICER: Frankie Stannage