UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
MOHAMMED THANI A.T. AL THANI,                                           :
                                                                        :
                                    Plaintiff,                          :
                                                                        :
                                                                        :            20 Civ. 4765 (JPC)
                 -v-                                                    :
                                                                        :            OPINION AND ORDER
ALAN J. HANKE *et al.*,                                                 :
                                                                        :
                                    Defendants.                         :
                                                                        :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       Plaintiff Mohammed Thani A.T. Al Thani filed an Amended Complaint against Defendants

Alan J. Hanke, IOLO Global LLC ("IOLO" and with Hanke, the "Hanke Defendants"), Sidney

Mills Rogers III, Laura Romeo, Amy Roy-Haeger, the SubGallagher Investment Trust, and Sherry

Sims on September 25, 2020, alleging a violation of section 206 of the Investment Advisers Act

of 1940, 15 U.S.C. § 80b-6, along with several common law claims.  Dkt. 35 ("Amended Compl.").

Pending before the Court is Roy-Haeger's motion to dismiss the Amended Complaint for lack of

personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to

transfer the claims against her to Florida.  The Court previously stayed Roy-Haeger's motion and

granted Al Thani's request for jurisdictional discovery.  *Al Thani v. Hanke*, No. 20 Civ. 4765

(JPC), 2021 WL 1895033, at *20 (S.D.N.Y. May 11, 2021) ("*Al Thani I*").  Jurisdictional discovery

is now complete, and Al Thani and Roy-Haeger have submitted supplemental briefing in

connection with Roy-Haeger's motion.  For the reasons that follow, Roy-Haeger's motion to

dismiss the Amended Complaint for lack of personal jurisdiction or to transfer venue is denied.

## I.      Background

The Court incorporates by reference the factual background and procedural history set out in its May 11, 2021 Opinion and Order.  *See Al Thani I*, 2021 WL 1895033, at *1-4.  As such, the Court provides background only to the extent necessary to resolve Roy-Haeger's motion to dismiss for lack of personal jurisdiction or to transfer venue.

### A.  Facts

The following facts, which are taken from the Amended Complaint and from the documents attached thereto and incorporated therein by reference, are assumed true for purposes of this Opinion and Order.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  In deciding Roy-Haeger's instant motion, the Court is also permitted to "consider materials outside the pleadings, including affidavits and other written materials."  *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)); *MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*, 442 F. Supp. 3d 738, 742 n.1 (S.D.N.Y. 2020) ("On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside the pleadings, including accompanying affidavits, declarations, and other written materials."); *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004) (noting that "in deciding a motion to dismiss for improper venue, the court may examine facts outside the complaint to determine whether venue is proper" (internal quotation marks omitted)).

Roy-Haeger resides in and is a citizen of Florida.  Amended Compl. ¶ 12.  The Amended Complaint alleges that Roy-Haeger conspired with the Hanke Defendants to defraud Al Thani "out of millions of dollars through a marketed investment program represented as a means of generating significant returns based on [Al Thani]'s investment."  *Id.* ¶ 1.  As part of this scheme, the Hanke Defendants induced Al Thani to enter into two Management and Deposit Agreements ("MDAs")

and various addenda to these MDAs, under which Al Thani entrusted the Hanke Defendants with $6.5 million. *Id.* ¶¶ 1-4, 35. Under the terms of the MDAs, the Hanke Defendants agreed to manage the funds invested by Al Thani with the promise of massive monetary returns. *Id.* ¶ 2. Al Thani, however, never received any returns on his investment nor the principal $6.5 million that he invested. *Id.* ¶ 4.

Roy-Haeger's alleged role in the scheme involved "impersonat[ing] bank officials to dupe unwitting investors into believing Hanke and IOLO had actually invested their money in a trading program," *id.* ¶ 5, and "participat[ing] in multiple phone calls to perpetrate the fraud," *id.* ¶ 110; *see also id.* ¶¶ 12, 47, 61, 120, 125-126. For example, on August 1, 2019, Hanke and Roy-Haeger participated in a telephone call with Al Thani's advisors, during which Hanke falsely presented Roy-Haeger as "the head of compliance at the trading firm IOLO was allegedly using to manage [Al Thani]'s funds," with Roy-Haeger representing that "she ran background checks on investors who wanted to use Hanke." *Id.* ¶ 47; *see id.* ¶ 12 ("Upon information and belief, Roy-Haeger is not a compliance officer with any bank or any fund."). During the August 1, 2019 call, Hanke and Roy-Haeger also informed Al Thani's advisors that "the delay in receiving funds was the result of accounting errors and logistics issues related to paying off the projects associated with the funds." *Id.* ¶ 47. On April 1, 2020, Hanke and Roy-Haeger had another telephone conference with Al Thani's advisors to discuss the delays in Hanke sending payments to Al Thani. *Id.* ¶ 61. During the April 1, 2020 call, Roy-Haeger "claimed that she expected several projects to complete, freeing up the funds to disburse within the week." *Id.* Later that week, Hanke assured Al Thani's advisors that "he had spoken to Roy-Haeger and that at least one project was on track to complete within the week, with funds coming soon after." *Id.* Al Thani, however, never received any funds from these supposed transactions. *Id.*

Relying on materials obtained during jurisdictional discovery, Al Thani contends that Roy-Haeger "exercised a degree of control over Hanke sufficient to satisfy the agency relationship test" for purposes of personal jurisdiction over her in New York.  Dkt. 250 ("Supplemental Opposition") at 1.  For example, on January 10, 2020, Hanke attended an in-person meeting in New York with Al Thani's representatives, including a man named Steve Papi (the "January 2020 Meeting"). Contemporaneous emails between Hanke and Roy-Haeger, as well as Roy-Haeger's deposition testimony, demonstrate that Roy-Haeger was aware of the January 2020 Meeting in New York. Dkt. 251 ("Ducharme Declaration"), Exh. A ("Roy-Haeger Dep. Tr.") at 104:3-10 ("Q. So you were aware that Mr. Hanke was meeting with Mr. Papi in New York, correct?  A. Correct.  Q. And the purpose of the meeting was to [] provide Mr. Papi with an update as to the transaction, correct? A. Correct.")[1]; *id.*, Exhs. B, C (email conversations between Hanke and Papi scheduling the January 2020 Meeting that Hanke forwarded to Roy-Haeger).[2]

In advance of the January 2020 Meeting, Hanke emailed Roy-Haeger, expressing that he "need[s] some support and answers."  *Id.*, Exh. B at 1; *see also id.*, Exh. C at 1 (January 6, 2020 email from Hanke to Roy-Haeger forwarding an email from Papi regarding the January 2020 Meeting and stating that "[t]his has to get handled.").  Roy-Haeger testified that, in response to Hanke's emails, she sent details of the transaction to Hanke so that Hanke could provide those details to Al Thani's advisors at the January 2020 Meeting:

> Q.    And so this essentially was Mr. Hanke asking you for details again of the transaction, so he could then provide those details to Mr. Al Thani's representatives at a meeting that they were contemplating in New York, correct?

---

[1] Roy-Haeger testified during her deposition that Papi is "a representative of Mr. Al Thani." Roy-Haeger Dep. Tr. at 100:19-23.

[2] At her deposition, Roy-Haeger identified the email address used in these communications with Hanke as her email address.  Roy-Haeger Dep. Tr. at 24:19-25:4.

A.      Correct.

Q.      And did you then speak with Mr. Hanke and provide him details on the transaction?

A.      I am assuming I did.  I was working to get him something in writing, and the result of that was the letter.  Whenever [Hanke] would ask for updates I would give him whatever the current update was.

Q.      And so you would have essentially told Mr. Hanke what he could say to Mr. Papi at this meeting in terms of the status of the transaction, correct?

A.      I would have given him whatever the most recent update was that I could get.  Yes.

Roy-Haeger Dep. Tr. at 102:4-103:2; *see also id.* at 85:9-23 ("Q. And at a point in time Mr. Al Thani's representatives as well as Mr. Barker, Mr. Martino started getting upset that the transaction wasn't paying out, correct?  A. Correct.  Q. And so you would provide these updates as a way to alleviate their concerns, correct?  A. I would provide whatever updates I could based on the request for [Hanke] to have somebody other than himself giving the updates, so that they could hear it from a closer source to the person that had executed that trade agreement.").  The Amended Complaint alleges that during the January 2020 Meeting, "Hanke blamed the delays [in receiving payment] on a frozen trade account with Standard Chartered Bank in Dubai, where the funds were purportedly held" and "falsely represented that the issue would be cleared up and the funds deposited soon."  Amended Compl. ¶ 55.  Also at that meeting, Hanke allegedly "provided one of [Al Thani]'s advisers with what he claimed were electronic screenshots of bank account statements as a 'proof of funds' showing funds that could be used to pay [Al Thani]."  *Id.*  The Amended Complaint alleges that "[t]hese screenshots were fake and were meant to falsely create the impression that the MDA transactions were real."  *Id.*  Al Thani, however, "received no funds from the accounts shown in these supposed 'proof of funds' screenshots."  *Id.*

Al Thani also points to other instances in which Roy-Haeger provided allegedly "fraudulent updates . . . on the status of the investment that Hanke could then pass along to [Al Thani]'s advisors in email communications and during several in-person meetings." Supplemental Opposition at 8 (citing Roy-Haeger Dep. Tr. at 94:10-95:16); *see also id.* at 7-9. During her deposition, Roy-Haeger acknowledged that she "essentially w[as] dictating what Mr. Hanke would say to Mr. Al Thani's representatives by providing this update because [she] w[as] the source of the information." Roy-Haeger Dep. Tr. at 95:11-16. Al Thani further cites to evidence obtained during jurisdictional discovery showing that Roy-Haeger "received commission payments and kickbacks" in connection with her work with Hanke. Supplemental Opposition at 5. For example, Roy-Haeger testified that she received a $15,000 commission payment from a principal at a gold company for introducing him to Hanke, and that she understands that Hanke loaned that individual $600,000 in funds that came from Al Thani's investment. Roy-Haeger Dep. Tr. at 43:11-49:8.

## B. Procedural History

Al Thani commenced this action on June 22, 2020, naming the Hanke Defendants and John Does 1-100. Dkt. 1. Al Thani filed the Amended Complaint on September 25, 2020, adding five additional Defendants, including Roy-Haeger. Amended Compl. ¶ 1. As to Roy-Haeger, the Amended Complaint pleads claims of fraudulent inducement, *id.* ¶¶ 99-112, fraud, *id.* ¶¶ 113-122, and aiding and abetting fraud, *id.* ¶¶ 123-127. The Amended Complaint alleges that the Court has personal jurisdiction over Roy-Haeger pursuant to New York Civil Practice Laws and Rules ("N.Y. C.P.L.R.") section 302(a)(2) because Roy-Haeger "acted in concert with Hanke and IOLO for the purposes of committing fraud and facilitating the theft of [Al Thani]'s investment funds"; Roy-Haeger, "either through direct meetings in New York with Hanke or through [her] interactions with Hanke, w[as] aware that Hanke was operating in New York for the purpose of inducing

investors, including [Al Thani], to invest in his trading programs and that at least some effects of the conspiracy would be felt in New York"; and "Hanke's plan was to the benefit of [Roy-Haeger] because . . . upon information and belief, [she] received payments from Hanke for [her] participation in the conspiracy." *Id.* ¶ 21.  The Amended Complaint also alleges that "[i]n carrying out his fraudulent activity in New York [Hanke] was acting on behalf of [Roy-Haeger] to secure victims for their fraudulent scheme." *Id.*

On November 19, 2020, Roy-Haeger filed a motion to dismiss the Amended Complaint for lack of personal jurisdiction or to transfer venue.  Dkt. 82 ("Motion").  Roy-Haeger argued that this Court lacks personal jurisdiction over her because she has never lived in New York and has never talked to Al Thani, let alone participated in any conspiracy to commit fraud.  *Id.* at 3-4.  Roy-Haeger also argued that venue is improper in this forum and requested that the Court either dismiss the action as to her or sever and transfer the action "to the Eighteenth Court in Florida."  *Id.* at 5. Al Thani filed an opposition on January 8, 2021, arguing that the Amended Complaint adequately alleges specific jurisdiction over Roy-Haeger under New York's long-arm statute and that this Court's exercise of personal jurisdiction over her would comport with due process.  Dkt. 119 ("Opposition") at 9-20.  In the alternative, Al Thani requested that the Court permit jurisdictional discovery.  *Id.* at 21-22. As to Roy-Haeger's request to transfer venue, Al Thani argued that venue is proper in this District because a substantial part of the fraudulent scheme alleged in the Amended Complaint occurred in New York.  *Id.* at 20-21.

In *Al Thani I*, the Court found, in relevant part, that Al Thani established a *prima facie* case of conspiracy as well as Roy-Haeger's membership in the conspiracy and the commission of the tortious act in New York.  2021 WL 1895033, at *10.  The Court, however, concluded that Al Thani failed to allege that Roy-Haeger exercised control over the Hanke Defendants' New York

7

activities as required under New York's long-arm statute.  *Id.*  Accordingly, the Court granted Al Thani's request for jurisdictional discovery on whether Roy-Haeger exercised any control over the Hanke Defendants in New York, and stayed Roy-Haeger's motion to dismiss.  *Id.* at *20.

On May 20, 2021, after receiving submissions from the parties as to the appropriate scope of jurisdictional discovery, the Court limited discovery with respect to Roy-Haeger to the following categories:

(1) all documents and communications concerning any of the three meetings that took place in New York during which it is alleged that the Hanke Defendants committed a tortious act and/or transacted business in New York;

(2) all documents and communications concerning the involvement of . . . Roy-Haeger . . . with any of the Defendants' activities in or directed at New York that are related to the subject matter of this lawsuit;

(3) all documents and communications concerning . . . Roy-Haeger's . . . efforts to procure additional investments in New York, relating to any transaction involving the Hanke Defendants.

Dkt. 194.  The parties also agreed to take depositions for purposes of jurisdictional discovery. Dkts. 191, 193, 204.  Al Thani and Roy-Haeger completed jurisdictional discovery on December 3, 2021.  Dkt. 247.  On January 7, 2022, Al Thani filed his Supplemental Opposition, in further opposition to Roy-Haeger's motion to dismiss or to transfer venue.  Roy-Haeger's reply was due by January 28, 2022.  Dkt. 249.  On January 31, 2022, the Court *sua sponte* extended Roy-Haeger's deadline to file her reply and advised that to the extent Roy-Haeger "intends to file a reply brief, she must do so by February 4, 2022"; otherwise, "the Court will assume that she does not intend to file a reply brief."  Dkt. 252.  Roy-Haeger filed her supplemental reply on February 4, 2022. Dkt. 253 ("Supplemental Reply").

## II.    Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(2)

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Penguin Grp. (USA) v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010) (internal quotation marks omitted).  A plaintiff bears the burden of raising facts that, "if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (internal quotation marks and alterations omitted); *accord In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  In considering a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "courts have 'considerable procedural leeway,' which includes 'permit[ting] discovery in aid of the motion' or conducting 'an evidentiary hearing on the merits of the motion.'" *Shepherd v. Annucci*, 921 F.3d 89, 95 (2d Cir. 2019) (alteration in original) (quoting *Dorchester Fin. Sec., Inc.*, 722 F.3d at 84).

If jurisdictional discovery has not occurred, a plaintiff's *prima facie* showing of jurisdiction "may be established solely by allegations." *Ball*, 902 F.2d at 197.  But where, as here, a plaintiff has conducted jurisdictional discovery but without the court conducting an evidentiary hearing, the plaintiff's *prima facie* showing must "include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (alteration omitted) (quoting *Ball*,

902 F.2d at 197).  In assessing a plaintiff's showing, the court applies a "standard . . . akin to that on a motion for summary judgment," construing the "pleadings, documents, and other evidentiary materials . . . in the light most favorable to the plaintiff" and resolving all doubts in the plaintiff's favor.  *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 503 (S.D.N.Y. 2004) (citations omitted); *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993) (observing that in deciding a motion to dismiss for lack of personal jurisdiction, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party").  At the same time, the court generally "will limit its jurisdictional analysis to the facts presented and . . . assume that the Plaintiff[] ha[s] provided all the evidence [he] possess[es] to support [his] jurisdictional claims." *Jacobs v. Felix Block Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001).

District courts in this Circuit have recognized that "[a]lthough Rule 12(b)(2) motions cannot be converted into . . . Rule 56 motion[s] for summary judgment when extrinsic evidence is considered, the Rule 56 standard nevertheless guides the Court as to the documents it may consider outside the pleadings." *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 121 (S.D.N.Y. 2020).  Accordingly, "a court, in resolving a Rule 12(b)(2) motion made after jurisdictional discovery, may consider only *admissible* evidence." *Vasquez v. Hong Kong & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 251 (S.D.N.Y. 2020); *accord Paroni v. Gen. Elec. UK Holdings Ltd.*, No. 19 Civ. 1034 (PAE), 2021 WL 3501234, at *5 (S.D.N.Y. Aug. 9, 2021) ("[A]ffidavits or declarations in support of personal jurisdiction 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" (quoting Fed. R. Civ. P. 56(c)(4))).

**B.  Federal Rule of Civil Procedure 12(b)(3)**

A motion to dismiss under Rule 12(b)(3) asserts that venue is "improper."  Fed. R. Civ. P.

12(b)(3).  In assessing whether venue is proper for purposes of Rule 12(b)(3), courts in this Circuit

apply the same standard of review as for a motion to dismiss for lack of personal jurisdiction under

Rule 12(b)(2): "If the court chooses to rely on pleadings and affidavits, the plaintiff need only

make a *prima facie* showing of venue." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir.

2005) (cleaned up).  "In analyzing whether the plaintiff has made the requisite prima facie showing

that venue is proper, [courts] view all the facts in a light most favorable to plaintiff." *Phillips v.

Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).

### III.    Discussion

**A.  Personal Jurisdiction**

To lawfully exercise personal jurisdiction, a court must have "a statutory basis for

exercising personal jurisdiction." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir.

2013).  In assessing whether such statutory basis exists, a court sitting in diversity looks to "the

law of the forum in which the court sits." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d

Cir. 1986); *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d

Cir. 1984) ("[P]ersonal jurisdiction in a diversity case is determined by the law of the state in which

the district court sits.").  Here, Al Thani argues that this Court has specific jurisdiction over Roy-

Haeger under N.Y. C.P.L.R. section 302(a)(2), which provides that "a court may exercise personal

jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious

act within the state."  N.Y. C.P.L.R. § 302(a)(2).  "[T]here is no minimum threshold of activity

required [under section 302(a)(2)] so long as the cause of action arises out of the allegedly

infringing activity in New York." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000).

Next, a court must assess whether the exercise of jurisdiction comports with due process. *Sonera Holding B.V. v. Çukurova Holding A.*, 750 F.3d 221, 224 (2d Cir. 2014) (per curiam), *cert. denied*, 573 U.S. 948 (2014).   In doing so, a court first looks to "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Chloé*, 616 F.3d at 164 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).   "For purposes of this inquiry, a distinction is made between 'specific' jurisdiction and 'general' jurisdiction." *Id.*   "Specific jurisdiction exists when 'a [s]tate exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984)).   "A court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Id.*   Because the Court concludes that it has specific jurisdiction over Roy-Haeger, it does not address whether there also is general jurisdiction over her.

### 1.  Statutory Jurisdiction Under N.Y. C.P.L.R. Section 302(a)(2)

Al Thani alleges, in relevant part, that Roy-Haeger "acted in concert with Hanke and IOLO"; was "aware that Hanke was operating in New York for the purpose of inducing investors, including [Al Thani], to invest in his trading programs"; personally benefitted from the scheme; and knew "that at least some effects of the conspiracy would be felt in New York."   Amended Compl. ¶ 21.   New York courts have found that, "[f]or purposes of [section 302(a)(2)], a co-conspirator can be an agent" in certain circumstances. *Small v. Lorillard Tobacco Co.*, 679

N.Y.S.2d 593, 605 (App. Div. 1998), *aff'd on other grounds*, 94 N.Y.2d 43 (1999); *see also Reeves v. Phillips*, 388 N.Y.S.2d 294, 296 (App. Div. 1976) ("The acts of a co-conspirator may, in an appropriate case, be attributed to a defendant for the purpose of obtaining personal jurisdiction over that defendant.").  To establish jurisdiction over an out-of-state defendant based on the acts of that defendant's co-conspirator under New York law, a plaintiff must (1) "establish a prima facie case of conspiracy," (2) "allege specific facts warranting the inference that the defendant was a member of the conspiracy," (3) "demonstrate the commission of a tortious act in New York," and (4) "demonstrate the requisite agency relationship between the nondomiciliary defendant and the in-state tortfeasor."  *First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 394 (S.D.N.Y. 2002), *on reconsideration*, 219 F. Supp. 2d 576 (S.D.N.Y. 2002), *aff'd sub nom. First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004); *accord Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 759 (S.D.N.Y. 2004), *opinion clarified on denial of reconsideration*, No. 02 Civ. 6356 (SHS), 2005 WL 2585227 (S.D.N.Y. Oct. 13, 2005).

The Court already found in *Al Thani I* that Al Thani sufficiently alleges in the Amended Complaint (1) "the existence of a conspiracy," (2) "that the various Co-conspirator Defendants"—including Roy-Haeger—"were members of that conspiracy," and (3) that the tortious acts were committed in New York.[3]  2021 WL 1895033, at *10.  Accordingly, for the purposes of this Opinion and Order, the Court considers whether jurisdictional discovery has established that there was an agency relationship between Roy-Haeger and Hanke.  In order to establish an agency relationship, the plaintiff must show that "(a) the defendant had an awareness of the effects in New

---

[3] Because the Court already found in *Al Thani I* that Al Thani has made a *prima facie* showing of conspiracy and alleges facts sufficient to support a finding that Roy-Haeger was a member of the conspiracy and that the tortious acts were committed in New York, the Court does not consider Roy-Haeger's arguments in her Supplemental Reply that she was not a "conspirator." Supplemental Reply at 4-7.

York of its activity; (b) the activity of the [in-state] co-conspirator[] was to the benefit of the out-of-state conspirator[]; and (c) the co-conspirator[] acting in New York acted 'at the direction or under the control' or 'at the request or on behalf of' the out-of-state defendant." *First Cap. Asset Mgmt., Inc.*, 218 F. Supp. 2d at 394 (quoting *Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 120 (E.D.N.Y. 2000)) (first alteration added).

Al Thani easily satisfies the first requirement.  Documentary evidence obtained during jurisdictional discovery and Roy-Haeger's deposition testimony establish that Roy-Haeger was not only aware of the January 10, 2020 in-person meeting in New York between Hanke and Al Thani's advisor, Papi, regarding Al Thani's investment, but that she provided "support and answers" to Hanke, including by providing updates and details on a transaction for Hanke to present to Al Thani's representatives during the January 2020 Meeting.  Roy-Haeger Dep. Tr. at 102:4-103:2, 104:3-10; Ducharme Declaration, Exhs. B, C.  This sufficiently establishes Roy-Haeger's awareness of the effects of her activity in New York.  *See Andre Emmerich Gallery, Inc. v. Segre*, No. 96 Civ. 889 (CSH), 1997 WL 672009, at *6 (S.D.N.Y. Oct. 29, 1997) (finding that the defendant was aware of the effects in New York of his activity where his co-conspirator testified that the defendant "knew about the negotiations and the sale . . . even if he did not see the written agreement").

While a closer call, the Court finds that Al Thani also satisfies the second requirement that Hanke's activities in New York were to Roy-Haeger's benefit.  Roy-Haeger testified during her deposition that she received a $15,000 commission payment from a principal at a gold company for introducing him to Hanke, and Hanke loaned that person $600,000 from Al Thani's investment.  Roy-Haeger Dep. Tr. at 43:11-49:8.  Roy-Haeger further testified that the $15,000 "was paid out to the various parties that had been involved, and then in the end [she] did not keep any of the

14

money." *Id.* at 47:7-10.  It is not clear to the Court in what capacity Roy-Haeger received the $15,000.  For example, Roy-Haeger could have received the $15,000 as commission owed to her that she later paid to cover fees owed to other third parties, or she could have received the $15,000 as an intermediary for the sole purpose of distributing the commission to third parties.  But it is not necessary to resolve this issue at this juncture, because, viewing the evidence in the light most favorable to Al Thani, he has made a sufficient showing that Roy-Haeger benefited from Hanke's New York activities.[4]  Moreover, separate and apart from any direct monetary benefits, the Court finds that Roy-Haeger benefited from Hanke's New York activities because "they were meant to further the overall alleged conspiracy."  *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 336 (S.D.N.Y. 2000); *Andre Emmerich Gallery, Inc.*, 1997 WL 672009, at *6 (finding that it was "possible to infer . . . that defendant stood to benefit financially" from the conspiracy based on, among other things, his assistance in the conspiracy and his "intimate involve[ment]" with the operation of the business that stood to benefit).

Likewise, Al Thani satisfies the third and final requirement to establish an agency relationship between Roy-Haeger and Hanke.  Under the third requirement, Hanke must have acted "at the direction or under the control" or "at the request or on behalf of" Roy-Haeger.  *First Cap. Asset Mgmt., Inc.*, 218 F. Supp. 2d at 394 (internal quotation marks omitted).  Al Thani argues that "Roy-Haeger, through her direct access to certain overseas contacts who received at least

---

[4] Al Thani also references Hanke's April 2019 investment in "a struggling start-up company called Vortex in which Roy-Haeger had invested significant amounts of her own money (around $400,000)."  Supplemental Opposition at 5-6.  Al Thani contends that because that cash infusion occurred right after Hanke received Al Thani's initial $3 million investment, "the most logical inference to draw is that this payment came from [Al Thani]'s funds, and was being provided to Roy-Haeger as a form of commission for her role in the scheme."  *Id.* at 6.  While this may ultimately prove to be true, the sources on which Al Thani relies in his Supplemental Opposition do not appear to support this contention or even mention Al Thani in connection with Hanke's investment in Vortex.

$1,000,000 of [Al Thani]'s funds, maintained a degree of control over Hanke because she was uniquely positioned to obtain the falsified transaction updates that Hanke needed to stave off [Al Thani] and other disgruntled investors who were demanding answers to what happened to their money." Supplemental Opposition at 7. This is demonstrated by Hanke's emails to Roy-Haeger in advance of the January 2020 Meeting, which forwarded email communications from Al Thani's advisor, requested "some support and answers" from Roy-Haeger, Ducharme Declaration, Exh. B at 1, and alerted Roy-Haeger that "[t]his has to get handled," *id.*, Exh. C at 1. Roy-Haeger testified during her deposition that she provided Hanke with the updates and essentially told Hanke what to say to Al Thani's advisor, Papi, at the January 2020 Meeting. Roy-Haeger Dep. Tr. at 102:4-103:2. The Amended Complaint alleges that this information, which was later conveyed by Hanke to Al Thani's advisors at the January 2020 Meeting, was "fake" and "falsely create[d] the impression that the MDA transactions were real." Amended Compl. ¶ 55. Roy-Haeger also acknowledged during her deposition that she provided these updates to Hanke on numerous occasions and "essentially w[as] dictating what Mr. Hanke would say to Mr. Al Thani's representatives by providing this update because [she] w[as] the source of the information." Roy-Haeger Dep. Tr. at 95:11-16.

All of the evidence, taken together, support a finding that Roy-Haeger exercised a degree of control over Hanke (*i.e.*, that Hanke acted "at the direction or under the control" or "at the request or on behalf of" Roy-Haeger). Specifically, Roy-Haeger on numerous occasions provided information regarding Al Thani's investment to Hanke for Hanke to convey to Al Thani's advisors, including during the January 2020 Meeting, that Al Thani alleges were false. *See Chrysler Cap. Corp. v. Cent. Power Corp.*, 778 F. Supp. 1260, 1270 (S.D.N.Y. 1991) (concluding that the control requirement was met where the allegations in the complaint, if true, showed that the out-of-state

conspirator directed the co-conspirator acting in New York "to draft its documents in a misleading fashion, thus assisting in the breach of duty toward and fraud on the investors" by the New York co-conspirator).

Accordingly, Al Thani has met all of the requirements for the Court to find that it has specific jurisdiction over Roy-Haeger under section 302(a)(2).[5]

### 2. Due Process

Having established that the Court has specific jurisdiction over Roy-Haeger under section 302(a)(2), the Court considers whether exercising jurisdiction over Roy-Haeger comports with due process—*i.e.*, whether Roy-Haeger "purposefully established 'minimum contacts'' in the forum by "purposefully direct[ing] [her] activities at residents of the forum, and [whether] the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (citations and internal quotation marks omitted). In making this assessment, a court "look[s] to the totality of Defendants' contacts with the forum state." *Chloé*, 616 F.3d at 164. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp.*, 471 U.S. at 475 (citations and internal quotation marks omitted).

"Once it has been decided that a defendant purposefully established minimum contacts within the forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe Co.*, 326 U.S. at 320). Specifically, a court must consider

---

[5] Because the Court finds that it has personal jurisdiction over Roy-Haeger under section 302(a)(2), it need not reach Al Thani's argument that the Court has personal jurisdiction over Roy-Haeger under section 302(a)(1). *See* Supplemental Opposition at 10-12.

"(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Chloé*, 616 F.3d at 164 (citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113-14 (1987)). These factors allow a court to determine if, notwithstanding the defendant's minimum contacts with the state, there is "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477.

The Court finds that Roy-Haeger has sufficient minimum contacts with New York. The Second Circuit has observed that "[a]lthough the long-arm statute and the Due Process clause are not technically coextensive, the New York requirements (benefit, knowledge, some control) are consonant with the due process principles that a defendant must have 'purposefully availed itself of the privilege of doing business in the forum.'" *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriquez*, 305 F.3d 120, 127 (2d Cir. 2002)); *see also Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 108 (S.D.N.Y. 2015) ("Because the New York long-arm statute is more restrictive than the federal due process requirements, by virtue of satisfying the long-arm statute the minimum contacts and reasonableness requirements of due process have similarly been met."). Furthermore, where, as here, the court has already "found personal jurisdiction based on an agent's contacts, [courts in this Circuit] have never suggested that due process requires something more than New York law." *Charles Schwab Corp.*, 883 F.3d at 85.

Roy-Haeger also has not demonstrated that the Court's exercise of jurisdiction over her would be unreasonable. Any inconvenience that Roy-Haeger may face in having to litigate Al

Thani's claims against her in New York is outweighed by New York's interest in adjudicating tortious activity that occurred in the state and Al Thani's interest in pursuing a single lawsuit against all Defendants in his chosen forum rather than having to commence separate lawsuits in different states, including against Roy-Haeger in Florida.  Accordingly, the Court concludes that both the minimum contacts and reasonableness requirements of due process have been met, and the Court's exercise of personal jurisdiction over Roy-Haeger is proper.

## B.  Venue

The Court next considers Roy-Haeger's request for venue transfer.  Roy-Haeger argues that "New York is an improper venue and the Court should either dismiss the action or transfer it to the Eighteenth Court in Florida."  Motion at 5.  The Court liberally construes this request as a motion to dismiss under Rule 12(b)(3) and an application for the Court to transfer venue under 28 U.S.C. § 1406(a).

As previously stated, a party may move to dismiss for "improper venue" under Rule 12(b)(3).  Likewise, section 1406(a) provides that a district court "shall dismiss, or if it be in the interest of justice, transfer [a] case [laying venue in the wrong division or district] to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws."  *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013).  In the absence of a more specific statute regarding venue, whether venue is "wrong" or "improper" is governed by 28 U.S.C. § 1391, which governs choice of venue for civil actions filed in federal district court.  *Id.*  Under section 1391, venue is proper in the chosen forum if: (1) at least one defendant resides in the district and all the defendants reside in the same state in which the district is located; (2) a "substantial part" of the events giving rise to

the claim occurred in the district; or (3) a defendant is subject to personal jurisdiction in the district and "there is no district in which an action may otherwise be brought."  28 U.S.C. § 1391(b). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b).  If it does, venue is proper" and such case "may not be dismissed under § 1406(a) or Rule 12(b)(3)."  *Atl. Marine Constr. Co., Inc.*, 571 U.S. at 56.

Section 1391(b)(1) does not apply here because all Defendants do not reside in the same state.[6]  With respect to section 1391(b)(2), Roy-Haeger contends that venue is not proper in this District because "significant events or omissions material to" Al Thani's claims did not occur here. Motion at 5 (quoting *Gulf Ins. Co.*, 417 F.3d at 357).  In support, Roy-Haeger points to the fact that "[o]nly three alleged meetings occurred in New York" and Al Thani "does not allege that any of the loan[s] or [Standby Letters of Credit] were executed in New York."  *Id.*  Al Thani counters that venue is proper in this District because "Roy-Haeger participated in a number of calls with a New York-based broker on which misstatements were made" and Defendants "are alleged to be part of a fraudulent scheme . . . that involved numerous in-person meetings in New York." Opposition at 21.  The Court finds Al Thani's arguments persuasive.

Section 1391(b)(2) "permits venue in multiple judicial districts as long as 'a substantial part' of the underlying events took place in those districts."  *Gulf Ins. Co.*, 417 F.3d at 356.  Under this framework, a district court is not required "to determine the best venue," *Bates v. C & S Adjusters*, 980 F.2d 865, 867 (2d Cir. 1992), and venue is proper so long as "*significant* events or omissions *material* to the plaintiff's claim . . . occurred in the district in question, even if other

---

[6] For purposes of section 1391(b)(1), "a natural person . . . shall be deemed to reside in the jurisdiction in which that person is domiciled," and "an entity . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391(c)(1), (2).

material events occurred elsewhere." *Gulf Ins. Co.*, 417 F.3d at 357.   In determining whether venue is appropriate under 1391(b)(2), the court must (1) "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims," and (2) "determine whether a substantial part of those acts or omissions occurred in the district where the suit was filed." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005).   The Second Circuit has emphasized that "'[s]ubstantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Id.* at 432-33.

Here, the Amended Complaint alleges that Defendants engaged in a fraudulent scheme that involved multiple in-person meetings between Hanke and Al Thani's advisors in New York. Amended Compl. ¶¶ 2, 24-25, 34, 42, 48, 55.   During these meetings in New York, Hanke made false and misleading statements to induce Al Thani to enter into the MDAs as well as regarding the status of Al Thani's return on his investment. *Id.*   The Amended Complaint also alleges that Roy-Haeger participated in several telephone calls with Al Thani's advisors in New York, during which she allegedly falsely held herself out to be a bank compliance officer and made false and misleading statements regarding the status of Al Thani's investment. *Id.* ¶¶ 47, 61.   The fact that certain Defendants, including Roy-Haeger, may not have been physically present in New York in carrying out the alleged scheme "is not necessarily relevant to the issue of whether a substantial part of the events or omissions giving rise to the claim occurred" in New York.   *Arabi v. Javaherian*, No. 13 Civ. 456 (ERK), 2014 WL 3892098, at *9 (E.D.N.Y. May 1, 2014) (citation and internal quotation marks omitted).   Indeed, district courts in this Circuit have found venue to be proper in fraud actions where the defendant participated in a series of telephone conversations

with the plaintiff, who the defendant knew was located in New York City, and the defendant "made false representations and material omissions" to the plaintiff's representatives during those telephone conversations.  *Gruntal & Co., Inc. v. Kauachi*, No. 92 Civ. 2840 (JFK), 1993 WL 33345, at *2 (S.D.N.Y. Feb. 5, 1993); *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.*, No. 09 Civ. 3855 (JS), 2014 WL 4374586, at *11 (E.D.N.Y. Aug. 29, 2014) (finding the plaintiffs' allegations "that at least some of those [fraudulent] representations were directed towards—and [the defendant's] interactions dealt with"—representatives in New York were sufficient for venue purposes); *N.Y. Mercantile Exch. v. Cent. Tours Int'l, Inc.*, No. 96 Civ. 8988 (SAS), 1997 WL 370600, at *4 (S.D.N.Y. July 1, 1997) (finding that venue was proper because "many of the fraudulent acts alleged either occurred in or have a substantial relationship to this venue").

Because the Court finds that venue is proper in this District under section 1391(b)(2), Roy-Haeger's motion to dismiss for improper or wrong venue under Rule 12(b)(3) and section 1406(a) is denied.  For the same reasons, the Court denies Roy-Haeger's request for severance and venue transfer under section 1406(a).[7]

---

[7] To the extent Roy-Haeger also seeks severance and transfer of this action under 28 U.S.C. § 1404(a), that request is denied as well for the reasons stated herein.

## IV.    Conclusion

For the foregoing reasons, Roy-Haeger's motion to dismiss the Amended Complaint for lack of personal jurisdiction or to transfer venue is denied.  Roy-Haeger is directed to file an answer to the Amended Complaint within fourteen days of the date of this Order, specifically by March 3, 2022.

SO ORDERED.

Dated: February 17, 2022
       New York, New York                              _____
                                                       JOHN P. CRONAN
                                                       United States District Judge