UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                            :
MOHAMMED THANI A.T. AL THANI,                               :
                                                            :
                          Plaintiff,                        :
                                                            :         20 Civ. 4765 (JPC)
                -v-                                         :
                                                            :
ALAN J. HANKE *et al*.,                                     :
                                                            :
                          Defendants.                       :
                                                            :
------------------------------------------------------------------X
                                                            :
MARTIN JOHN STEVENS,                                        :
                                                            :
                          Plaintiff,                        :
                                                            :         20 Civ. 8181 (JPC)
                -v-                                         :
                                                            :
ALAN J. HANKE *et al*.,                                     :                OPINION AND ORDER
                                                            :
                          Defendants.                       :
                                                            :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

        Since discovery commenced in this action in the fall of 2020, Defendants Alan J. Hanke

and IOLO Global LLC ("IOLO," and collectively, the "Hanke Defendants") have repeatedly failed

to comply with their discovery obligations in a timely and thorough manner.  This has involved

non-compliance with multiple discovery orders of this Court, causing prolonged delays in

producing documents relevant to Plaintiffs' claims, including emails between Hanke and his co-

Defendants and other documents relating to the millions of dollars Defendants allegedly stole from

Plaintiffs.  Indeed, despite being ordered by this Court on November 19, 2020 to substantially

complete their response to Plaintiff Mohammed Thani A.T. Al Thani's October 5, 2020 document

requests and interrogatories by November 30, 2020, the Hanke Defendants did not provide access to the bulk of potentially responsive documents for months and did not fully complete their response until June 2022.

As a result, Al Thani has moved for sanctions against the Hanke Defendants and their former counsel, Thomas H. Herndon, Jr., pursuant to Federal Rule of Civil Procedure 37(b). Dkt. 335.[1] *See Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991) ("When a party seeks to frustrate this design by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate."). The Court heard oral argument on Al Thani's sanctions motion on August 15, 2023, *see* Dkt. 353 ("Oral Arg. Tr."), and received supplemental submissions following that argument. The Court agrees that sanctions are appropriate and grants Al Thani's motion, although not to the full extent he seeks. As discussed below, the Hanke Defendants are ordered to pay sanctions to cover incremental attorneys' fees and costs incurred by Al Thani based on the Hanke Defendants' noncompliance with the Court's discovery orders covering the period of November 30, 2020 through February 16, 2021 and the period of May 24, 2021 through June 9, 2021. The Court declines to impose further monetary sanctions for other periods or harsher, non-monetary sanctions on the Hanke Defendants. Herndon is ordered to pay sanctions in the amount of $500 for his failure to conduct a reasonable inquiry into his former clients' incomplete April 8, 2022 discovery response. Upon consideration of various unique circumstances of this case, the Court concludes that the imposition of more severe monetary sanctions against Herndon would be unjust.

---

[1] "Dkt. __" refers to the docket entries in *Al Thani v. Hanke*, No. 20 Civ. 4765 (JPC) (S.D.N.Y.).

## I. Background[2]

This consolidated action concerns allegations that the Hanke Defendants, with the help of

several co-Defendants, defrauded Al Thani and Plaintiff Martin John Stevens of millions of

dollars.[3]  Al Thani alleges that Defendants induced him to enter into two Management and Deposit

Agreements and various addenda to these agreements, under which Al Thani entrusted the Hanke

---

[2] The facts recited herein are based on the declarations and other submissions from the parties in connection with Al Thani's motion—specifically, the September 27, 2022 declaration submitted by Herndon, Dkt. 338 ("9/27/22 Herndon Declaration"); the August 23, 2023 declaration submitted by Herndon, Dkt. 355 ("8/23/23 Herndon Declaration"), with attached exhibits, Dkt. 361; and the August 29, 2023 response submitted by Hanke with attached exhibits, Dkt. 362 ("8/29/23 Hanke Response")—to the extent that the assertions contained therein are not in dispute—as well as various other public filings in this case.  When there is disagreement as to particular assertions in those declarations, that is noted.

In his September 27, 2022 declaration, Herndon discusses various communications with his former clients pursuant to New York Rule of Professional Conduct 1.6(b)(5)(i).  That Rule provides: "A lawyer may reveal or use confidential information to the extent that the lawyer reasonably believes necessary . . . to defend the lawyer or the lawyer's employees and associates . . . ."  At the Court's request, Herndon submitted a supplemental declaration on August 23, 2023, providing those communications to the Court under seal and *ex parte* (with the exception that copies were also provided to Hanke).  *See* 8/23/23 Herndon Declaration, Exhs. A, B.  While Al Thani has requested access to those communications, Dkt. 356, the Court has reviewed the communications and agrees with Herndon, Dkt. 359, that they should remain *ex parte* and sealed.  Herndon's disclosure of communications with Hanke pursuant to Rule 1.6(b)(5)(i) to defend himself does not constitute a full waiver of the attorney-client privilege and, further, it is Hanke's privilege to waive.

On August 29, 2023, Hanke submitted, also *ex parte* and under seal, the August 29, 2023 Hanke Response, which consisted of a cover email, a letter to the Court responding to the August 23, 2023 Herndon Declaration, and twenty-nine attached exhibits.  Most of those exhibits are emails between Hanke and Herndon or Herndon's associate.  Hanke provided that submission "in confidence as it may contain information considered to be Privileged," but noted that he would "comply with any and all instructions or distribution requests [the Court] may have."  8/29/23 Hanke Response (cover email).  Later that day, the Court ordered Hanke to provide a copy of that submission to Herndon.  Dkt. 360.

The Court discusses herein communications mentioned in the August 23, 2023 Herndon Declaration and the August 29, 2023 Hanke Response, including the attached emails, only to the extent necessary to resolve Al Thani's sanctions motion.

[3] Stevens does not join in Al Thani's sanctions motion.  *See* Oral Arg. Tr. at 3:5-6.

Defendants with $6.5 million.  Dkt. 35 ¶ 1-4, 35.  Al Thani commenced this action on June 22, 2020, Dkt. 1, and filed an Amended Complaint on September 25, 2020, *see* Dkt. 35.  The Amended Complaint contains nine causes of action: three for breach of contract, and one each for fraudulent inducement, fraud, aiding and abetting fraud, breach of fiduciary duties, aiding and abetting breach of fiduciary duties, and violation of the Investment Advisors Act.  *Id.* ¶¶ 76-141.[4]

Discovery in this matter has been long, arduous, and continuously delayed.  It began with an initial pretrial conference on September 4, 2020 before the Honorable Valerie E. Caproni,[5] at which the Hanke Defendants requested to stay discovery pending the Court's decision on their motion to dismiss.  *See* Dkt. 66 at 5-6.  Judge Caproni rejected that request, *id.* at 8-9, and entered a Case Management Plan, which set a fact discovery cutoff date of January 7, 2021, Dkt. 34 ¶ 4.a.  The parties then served each other with initial requests for production and interrogatories on October 5, 2020.  9/27/22 Herndon Declaration ¶ 6; Dkts. 349-1, 349-2.  The document requests from Al Thani were broad and included, *inter alia*, "all documents concerning or reflecting communications" (including emails and other electronic messages) with each of Hanke's co-Defendants, as well as all documents concerning the Management and Deposit Agreements and Al Thani's assets.  *See* Dkt. 349-1 at 12-16; *accord id.* at 2-3 (defining "Communication" to include "correspondence, electronic mail ('e-mail'), telexes, facsimile transmissions, telecopies," and defining "Document(s)" as including, among other things, "electronic or computer-transmitted

---

[4] For more detailed recitations of the factual allegations underlying this case, see the Court's prior Opinions in *Al Thani v. Hanke*, No. 20 Civ. 4765 (JPC), 2021 WL 1895033, at *2-3 (S.D.N.Y. May 11, 2021); *Al Thani v. Hanke*, No. 20 Civ. 4765 (JPC), 2021 WL 4311391, at *1 (S.D.N.Y. Sept. 21, 2021); *Al Thani v. Hanke*, No 20 Civ. 4765 (JPC), 2022 WL 489052, at *1-4 (S.D.N.Y. Feb. 17, 2022); *Stevens v. Hanke*, Nos. 20 Civ. 8181 (JPC), 20 Civ. 4765 (JPC), 2022 WL 489054, at *1 (S.D.N.Y. Feb. 17, 2022).

[5] This action was transferred from Judge Caproni to the undersigned on September 29, 2020.

messages viewed via monitor, correspondence, communications sent and received, letters, e-mails, facsimile transmissions"). Upon receipt, Herndon "[i]mmediately" "reviewed the requests and sent them to Mr. Hanke" and had "several conversations with Mr. Hanke about the location of responsive documents and also the most efficient way for [his firm] to collect those documents for review and production." 9/27/22 Herndon Declaration ¶ 7. Hanke similarly acknowledges that, on October 6, 2020, he was provided a copy of Al Thani's discovery demands. 8/29/23 Hanke Response ¶ 6. Herndon and Hanke agreed that they would conduct a "self-collect[ion]" rather than retain an eDiscovery vendor to save on costs, and Hanke gave Herndon his assurances that he would provide Herndon with all relevant documents. Oral Arg. Tr. at 46:8-47:10; *see* 9/27/22 Herndon Declaration ¶¶ 7, 9-10; 8/23/23 Herndon Declaration, Exh. A-9.

On November 2, 2020, following transfer of this case to the undersigned, the Hanke Defendants requested an extension of the fact discovery deadline, Dkt. 60, which Al Thani opposed, Dkt. 68. Moreover, on November 4, 2020, the Hanke Defendants served Al Thani with responses and objections to Al Thani's interrogatories, which Al Thani found unsatisfactory. *See* Dkts. 81 (November 17, 2020 letter from Al Thani's counsel discussing the Hanke Defendants' "patently improper" responses and objections to Al Thani's document request and interrogatories), 335 ("Motion") at 2-3 (characterizing the Hanke Defendants' responses and objections as "only boilerplate objections and not a single substantive response to any of the interrogatories nor any indication whether any responsive documents would be forthcoming").

At a November 19, 2020 status conference, the Court ordered the Hanke Defendants to substantially complete their response to Al Thani's document requests and interrogatories by November 30, 2020. *See* Nov. 19, 2020 Minute Entry; 9/27/22 Herndon Declaration ¶ 12 ("At a November 19, 2020 conference, the Court set a deadline of November 30, 2020 for substantial

completion of document production."); Motion at 3 ("At the November 17, 2020 [sic] status conference, the Court found these responses and objections . . . inadequate under the Federal Rules and ordered them to be supplemented—and for document productions to be substantially completed—by November 30.").

The Hanke Defendants did not comply with that order.  Herndon avers that throughout November 2020, including immediately following the November 19 status conference, he repeatedly asked his clients to assist him in the collection of responsive documents.  9/27/22 Herndon Declaration ¶¶ 10-12.  Yet, according to Herndon, it was not until November 23, 2020 that he received "what the Hanke Defendants assured [Herndon] were the remaining potentially responsive documents, which [Herndon] had [his] team promptly start reviewing."  *Id.* ¶ 13. Specifically, accordingly to Herndon, Hanke uploaded that day approximately ninety-four files to a SharePoint site that Herndon's law firm had set up for Hanke to share responsive documents. 8/23/23 Herndon Declaration ¶ 2.  Hanke's version of these events is largely consistent.  Hanke claims that, on November 23, 2020, he was unable to upload documents to SharePoint because the link was not functioning, but those issues were resolved the following day when he successfully managed to upload an initial batch of files.  8/29/23 Hanke Response ¶¶ 10, 11.  According to Herndon, Hanke subsequently uploaded an additional sixty-three files on November 25, 2020, and sixty-five files on November 29, 2020.  8/23/23 Herndon Declaration ¶ 2.  Hanke assured Herndon "that these files included all documents that were potentially responsive to the requests and that there were no additional documents that he needed to locate."  *Id.* ¶ 4; *see* 8/29/23 Hanke Response at 3 ("In November 2020 I provided all documents that contained relevant information that was available and immediately accessible.").

6

Herndon contends that, despite canceling his Thanksgiving plans, he was unable to complete his review of those documents in time to meet the Court's November 30, 2020 deadline. 9/27/22 Herndon Declaration ¶ 13.  Accordingly, "as a show of good faith," Herndon made an initial production on behalf of the Hanke Defendants on November 30, 2020, and a supplemental production totaling approximately 2,000 pages on December 4, 2020.  *Id.*; 8/23/23 Herndon Declaration ¶ 3.  Al Thani claims that this supplemental production was extremely deficient:

> The production lacked numerous highly-relevant communications with various co-Defendants and purported recipients of Plaintiff's funds, was disorganized and difficult to review with attachments separated from parent emails such that it was impossible to track which documents were attached to which emails, and was devoid of other critical categories of information, such as the Hanke Defendants' assets (needed to prove Plaintiff's alter ego claims), which the Hanke Defendants improperly withheld on the basis of boilerplate objections.

Motion at 5 (citing Dkt. 141).  Furthermore, while the Hanke Defendants also served Al Thani with supplemental responses and objections to the interrogatories, Al Thani claims that those responses "simply re-iterated many of the same boilerplate objections in the original [responses and objections]," and that certain of the Hanke Defendants' responses were refuted by evidence contained in co-Defendants' document productions.  Dkt. 141 at 1, 3.

The Court held a status conference on February 16, 2021 to address these issues.  *See* Feb. 16, 2021 Minute Entry.  At the conference, the Court ordered Herndon to review all emails between Hanke and his co-Defendants and produce all responsive documents.  Dkt. 164 ("2/16/21 Tr.") at 34.  The Court separately ordered the parties to meet and confer within two weeks regarding the Hanke Defendants' supplemental responses and objections to Al Thani's interrogatories and to attempt to agree on search terms for emails concerning the location of Al Thani's funds.  *Id.* at 34, 38-39; *see also* Feb. 16, 2021 Minute Entry.

That same day, immediately following the status conference, Herndon conferred with Hanke regarding the process for obtaining an eDiscovery vendor to image Hanke's entire computer and cellphone (rather than continue to rely on Hanke to search for responsive documents himself), and reached out to a colleague for some vendor recommendations.  8/23/23 Herndon Declaration ¶ 5.  After receiving some names, Herndon contacted the chosen vendor on February 18, 2021 and received a contract from that company on February 22, 2021.  *Id.* ¶ 6.  According to Herndon, Hanke returned a countersigned copy of the engagement letter on February 25, 2021, and paid the vendor's retainer fee on March 1, 2021.  *Id.* ¶ 7.  Hanke agrees that these events occurred, but contends that he signed the agreement and paid the retainer a few days earlier.  8/29/23 Hanke Response ¶ 15.  Herndon maintains that Hanke was subsequently uncooperative throughout the process of providing his devices for imaging, however, and so the process of collecting and searching documents was further delayed.  8/23/23 Herndon Declaration ¶ 7.  Yet Hanke contends that, by March 2, 2021, all of his emails had been successfully collected.  8/29/23 Hanke Response ¶ 16.  Regardless, on March 19, 2021, the Hanke Defendants produced in discovery over 1,700 emails between Hanke and his co-Defendants and served Al Thani with a third round of supplemental interrogatory responses.  9/27/22 Herndon Declaration ¶ 18; Dkt. 181 at 2.[6]

---

[6] The Court notes that during a status conference on March 10, 2021, whose purpose was to address the failure of Defendants Sherry Sims and SubGallagher Investment Trust to comply with discovery, Dkt. 157, an exchange with an attorney from Herndon's firm, who appeared on behalf of the Hanke Defendants in place of Herndon, suggested that the Hanke Defendants had not been complying with the Court's order from the February 16, 2021 conference to review Hanke's emails with his co-Defendants. Dkt. 174 at 22:19-27:16.  That attorney also pressed the very same arguments regarding those emails that the Court had already rejected at the February 16 conference.  *Id.* at 23:23-24:10.  This appears to have been a misunderstanding.  The August 23, 2023 Herndon Declaration makes clear that during the period from immediately following the February 16 status conference through that March 10 status conference, Herndon was actively engaging and working with the vendor to collect potentially responsive communications.  *See* 8/23/23 Herndon Declaration ¶¶ 5-7, Exh. A.  Hanke's submission similarly demonstrates that

Following that production, the parties reached an agreement on search terms for the Hanke Defendants' remaining documents.  9/27/22 Herndon Declaration ¶¶ 19-20.  And on April 26, 2021, the Court entered a revised Case Management Plan requiring the Hanke Defendants to "substantially complete document discovery by May 18, 2021."  Dkt. 185 at ¶ 5(b).  On May 14, Al Thani agreed to extend this deadline to May 21.  9/27/22 Herndon Declaration ¶ 21.  On May 21, however, Mr. Herndon learned that the vendor needed until May 24 to finish imaging the documents for production, so Al Thani—assured by Mr. Herndon's associate that the vendor was in the process of imaging approximately "4,000" emails—agreed to extend the deadline yet again. 9/27/22 Herndon Declaration ¶¶ 22-23.

At some point after the Hanke Defendants requested that second extension to May 24, but before that date, the vendor notified Herndon and his team "of significant issues with the document production that needed to be addressed."  *Id.* ¶ 23.  Specifically, the production's "search parameters" did not tag full families of documents in the initial review, and so there was a significant number of documents that needed to be reviewed to determine whether they were responsive.  *Id.*  As a result, rather than substantially completing document production on May 24, 2021, the Hanke Defendants "made a small production" of only 161 documents, as Al Thani reported to the Court in a subsequent letter.  Dkt. 206 ("6/7/21 Al Thani Ltr.") at 1.

Herndon claims that this review required input from the Hanke Defendants themselves because some of the documents "involved entirely unrelated transactions that [Herndon] had a duty to keep confidential."  9/27/22 Herndon Declaration ¶ 23.  Hanke thus "agreed to review the

---

Herndon and Hanke were engaging with the vendor shortly after the February 16 conference, which entailed Herndon having a call with the vendor on February 17, 2021, Hanke receiving the vendor agreement on February 22, 2021 and executing that agreement on February 23, 2021, and Hanke submitting the retainer payment to the vendor on February 25, 2021.  8/29/23 Hanke Response ¶¶ 13-15, Exhs. B-1, B-2, B-3.

requested documents and stated that he could do so by June 4, 2021."  *Id.* ¶ 24; *see also* 6/7/21 Al Thani Ltr. at 2 ("Counsel for the Hanke Defendants indicated that Hanke would finish his review of the documents by Friday, June 4").  But, once again, Hanke failed to follow through.  Despite Herndon's "repeated requests for a status update," Hanke reviewed only about "200 or 300" documents by the June 4 deadline and failed to provide Herndon "with information sufficient to allow [Herndon and his team] to make relevance determinations."  9/27/22 Herndon Declaration ¶ 24; Hanke Response ¶ 22, Exh. B-9.  As a result, on "the evening of June 4 the Hanke Defendants made a supplemental production of a single 60-page pdf document."  6/7/21 Al Thani Ltr. at 2.  Al Thani alerted the Court to these continued discovery issues, *id.*, and the Court scheduled a conference for June 11, 2021 to discuss them, Dkt. 207.

Meanwhile, the Hanke Defendants had also fallen significantly behind on their payment obligations to Herndon's law firm, with their last payment having been made in February 2021.  9/27/22 Herndon Declaration ¶ 25.  Hanke seems to acknowledge that he was behind on these payments and contends that Herndon said he would be withdrawing representation as a result.  8/29/23 Hanke Response ¶ 20, Exhs. B-6, B-7.  To make matters worse, according to Herndon, any attempts to bring up the subject of payment resulted in the Hanke Defendants becoming even less cooperative in the discovery process.  9/27/22 Herndon Declaration ¶ 27.  Soon thereafter, on June 9, 2021, Herndon moved to withdraw as attorney for the Hanke Defendants.  Dkt. 208.

Herndon claims that, at some point that same day, but after moving to withdraw, he learned that Hanke had filed for bankruptcy.[7]  9/27/22 Herndon Declaration ¶ 29; *see In re Alan John*

---

[7] Herndon avers that he "was not involved in the legal determination or decision to file for bankruptcy and did not advise the Hanke Defendants concerning any bankruptcy issues."  9/27/22 Herndon Declaration ¶ 29; *see also* Dkt. 220 ("6/11/21 Tr.") at 14:19-15:10 (Herndon confirming that he was not serving as bankruptcy counsel); Oral Argument Tr. at 41:10-42:9.  The Court has not been presented with any evidence to suggest otherwise.

*Hanke*, No. 21-80763 (N.D. Ill. June 9, 2021), Dkt. 1.  IOLO filed for bankruptcy two days later. *See In re IOLO Global LLC*, No. 21-80774 (N.D. Ill. June 11, 2021), Dkt. 1.  Pursuant to 11 U.S.C. § 362(a), those filings automatically stayed this case as to the Hanke Defendants.  Accordingly, at the June 11, 2021 status conference, the Court did not resolve the remaining discovery issues involving the Hanke Defendants, and the Court further declined to rule on Herndon's motion to withdraw at that point.  6/11/21 Tr. at 19:2-20:22.

On February 3, 2022, the Bankruptcy Court lifted the stay as to the Hanke Defendants for the limited purpose of allowing Al Thani and Stevens to litigate their claims in this action against the Hanke Defendants.  *See* Dkt. 257-1 at 5.  This Court subsequently directed the parties to meet and confer regarding the outstanding discovery issues and ordered Herndon to remain as counsel for the Hanke Defendants until further notice.  Dkt. 258.  By this point, Herndon was no longer associated with his prior firm and did not have access to any of his former case files concerning this matter.  9/27/22 Herndon Declaration ¶ 33.  However, the Hanke Defendants' eDiscovery vendor informed him that because the Hanke Defendants owed approximately $15,000, the vendor would not release any documents for production until it was paid.  *Id.* ¶ 34.  Hanke, meanwhile, informed Herndon that he did not have any funds to pay the vendor since they were all under the control of the bankruptcy trustee.  *Id.*

On March 8, 2022, the Court held a conference to address the outstanding discovery issues as well as Herndon's motion to withdraw.  *See* Mar. 8, 2022 Minute Entry.  In addition to counsel, Hanke himself joined remotely.  *See* Dkt. 323 ("3/8/22 Tr.") at 3:10-11.  In light of the "disturbing history in this case" and the Hanke Defendants' ongoing failure to complete their discovery production, the Court denied without prejudice Herndon's motion to withdraw pending the completion of discovery.  *Id.* at 79:25-80:3; *see also* Mar. 8, 2022 Minute Entry.  The Court

suggested that Herndon attempt to negotiate with the vendor a reduced payment for the release of the remaining documents and directed the parties to submit a status letter in two weeks.  3/8/22 Tr. at 80:7-81:5.  The Court concluded with the following warning:

> As you heard over the past two and a half hours, throughout this litigation there have been deadlines that have been discarded, and that is not acceptable by an attorney. That's not acceptable by a litigant who is proceeding pro se, and I will have very little patience for that going forward. But I do want to emphasize for everyone that failure to comply with court orders and deadlines very well may result in sanctions going forward.

*Id.* at 85:8-15.

Following the conference, Herndon again asked the Hanke Defendants to pay the vendor, but they refused.  9/27/22 Herndon Declaration ¶ 35.  Nor was his former law firm willing to split the bill.  *Id.*  Accordingly, Herndon reached an agreement to pay the vendor $12,000 from his personal funds to satisfy the Hanke Defendants' balance.  *Id.* ¶ 36.  On April 6, 2022, the Court then ordered the Hanke Defendants to respond to all outstanding discovery requests by April 8, 2022 and advised that no further extensions would be granted absent a showing of good cause. Dkt. 276.  Herndon then made a production of over 22,000 documents on behalf of the Hanke Defendants on April 8, 2022.  9/27/22 Herndon Declaration ¶ 36; Dkt. 277-1 at 2.

Unfortunately, this production still did not comply with the Court's April 6, 2022 order. The following week, on April 15, 2022, Al Thani's counsel informed Herndon that the Hanke Defendants' production did not include any text messages or WhatsApp messages.  9/27/22 Herndon Declaration ¶ 37; *see* Dkt. 277 ("4/15/22 Al Thani Ltr.") (Al Thani's counsel advising the Court that their review of the production "suggests that there may be material deficiencies in the Hanke Defendants' production," noting that "Plaintiffs have so far been unable to locate any text messages or any instant message app (*e.g.*, WhatsApp) messages within the production"). Herndon, having not reviewed the production previously, Oral Arg. Tr. at 32:21-35:4, was

"surprised" by this revelation, but upon reaching out to the vendor, confirmed that the vendor had not run search terms on the text messages notwithstanding Herndon's payment of $12,000. 9/27/22 Herndon Declaration ¶ 37.  He subsequently reached another agreement with the vendor to produce the outstanding text messages in exchange for an additional payment of $900, which was covered by Herndon's former firm.  *Id.*  Those text messages were then produced to Al Thani on May 6, 2022.  *Id.*

The vendor informed Herndon, however, that it did not find any WhatsApp messages on Hanke's devices.  *Id.* ¶ 38.  Hanke signed a declaration, dated May 3, 2022, swearing that "[t]o the best of my knowledge, I have produced all relevant information and documents responsive to Plaintiffs' Document Requests and supplemented such documents that were not previously produced."  Dkt. 336-1 ("5/3/22 Hanke Declaration") ¶ 6.  In addition, when pressed by Herndon about the absence of WhatsApp messages, Hanke informed Herndon that he has not had the WhatsApp application since early 2021, and any messages he had would have been downloaded by the vendor.  8/29/23 Hanke Response, Exh. D-1.  Yet it soon became apparent based on discovery from Defendants Sims and Roy-Haeger that responsive WhatsApp messages existed and were being stored in the cloud but had not been collected because "Hanke had not synced his WhatsApp application to the cloud before the collection."  9/27/22 Herndon Declaration ¶ 41; Oral Arg. Tr. at 11:20-12:3.  Herndon then worked with Hanke to sync his phone's WhatsApp application to the cloud to collect the responsive messages.  9/27/22 Herndon Declaration ¶ 42. Following several weeks of additional status letters and Court orders, *see* Dkts. 285, 287, 289-92, 295-97, the Hanke Defendants made a production of responsive WhatsApp messages on June 13, 2022, 9/27/22 Herndon Declaration ¶ 42, thereby finally complying with their outstanding discovery obligations.

Herndon then renewed his motion to withdraw as attorney for the Hanke Defendants. Dkts. 319-321. He argued that good cause existed to permit him to withdraw because, *inter alia*, he "ha[d] not been associated with . . . the law firm originally retained to represent the Hanke Defendants" since June 11, 2021, Dkt. 321 at 4, and the Hanke Defendants "repeatedly failed to cooperate with Mr. Herndon . . . during discovery" and failed to pay for Herndon's legal services, *id.* at 5-6. Herndon also stated that "[s]hould the Court grant my motion to withdraw, I consent to the Court's continued jurisdiction for the purposes of determining any forthcoming motion for sanctions against me by the Plaintiff." Dkt. 320 ¶ 42. Al Thani and Stevens did not oppose the motion "[i]n light of Mr. Herndon's consent to jurisdiction for the purposes of any sanctions motion," Dkt. 322, and so on August 30, 2022, the Court relieved Herndon as counsel for the Hanke Defendants, retained jurisdiction over Herndon for the purposes of Al Thani's anticipated sanctions motion, and set a briefing schedule for that motion. Dkt. 329. Pursuant to that briefing schedule, Al Thani moved for sanctions against the Hanke Defendants and Herndon on September 13, 2022, Dkts. 334-336, Herndon opposed, through his own counsel, on September 27, 2022, Dkts. 337-338, and Al Thani replied on October 4, 2022, Dkts. 340-341.[8] The Court heard oral argument on the motion on August 15, 2023, *see* Oral Arg. Tr., and received supplemental

---

[8] Neither Hanke nor IOLO initially filed an opposition to Al Thani's sanctions motion, although as noted Hanke made a post-argument submission. *See* 8/29/23 Hanke Response. In addition, at a status conference on July 11, 2022, Hanke maintained that "we have literally provided every document, every phone call and every record that's humanly possible." Dkt. 325 at 38. Hanke also disclaimed any wrongdoing at the oral argument on Al Thani's sanctions motion. He confirmed that "[f]rom the very beginning, after retaining Mr. Herndon, he did explain to me the importance of providing all the documents that have been requested for this matter," Oral Arg. Tr. at 52:6-8, but failed to provide any explanation for why he initially turned over only 2,000 pages of documents, a tiny fraction of the relevant documents that existed in his possession, except to say "I don't think [there was] time to have them included," *id.* at 56:1-57:13. Hanke also acknowledged that he had used WhatsApp in the past and "for quite a long time," yet stated that around November or December 2020, he told Herndon that he was not then using WhatsApp, which "was the truth at the time." *Id.* at 53:6-17, 60:23-62:2.

submissions from Herndon and Hanke.  Herndon's submission consists of the publicly filed August 23, 2023 Herndon Declaration, with attached communications with the vendor and Hanke filed under seal and *ex parte* (but with copies provided to Hanke).  Hanke's submission, which was submitted sealed and *ex parte*, was made in opposition to sanctions and in response to Herndon's declarations and consists of a letter to the Court along with attached exhibits.  *See* 8/29/23 Hanke Response.  To date, no replacement counsel has appeared on behalf of the Hanke Defendants.

## II.  Legal Standard

"Federal Rule of Civil Procedure 37 governs the district court's procedures for enforcing discovery orders and imposing sanctions for misconduct."  *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 158 (2d Cir. 2012).  "Under Rule 37, courts have wide discretion to sanction parties that fail to obey discovery orders."  *E.L.A. v. Abbott House, Inc.*, No. 16 Civ. 1688 (RMB) (JLC), 2020 WL 5682019, at *1 (S.D.N.Y. Sept. 24, 2020).  Specifically, Rule 37(b)(2)(A) permits a district court to remedy a party's failure to "obey an order to provide or permit discovery" with any of the following sanctions:

(i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)   striking the pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)     dismissing the action or proceeding in whole or in part;

(vi)    rendering a default judgment against the disobedient party; or

(vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

"The purpose of these discovery sanctions is threefold: '(1) to ensure that a party will not benefit from its failure to comply; (2) to obtain compliance with the Court's orders; and (3) to

deter noncompliance, both in the particular case and in litigation in general.'" *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, Nos. 14 Md. 2542 (VSB) (SLC), 21 Civ. 7504 (VSB), 2023 WL 3304287, at *5 (S.D.N.Y. May 8, 2023) (quoting *Royal Park Inves. SA/NV v. U.S. Bank Nat'l Ass'n*, 319 F.R.D. 122, 126 (S.D.N.Y. 2016)); *see also City of Almaty v. Ablyazov*, No. 15 Civ. 5345 (AJN), 2021 WL 4846366, at *3 (S.D.N.Y. Oct. 18, 2021) ("The purposes of these sanctions are to ensure that a party does not profit from their disregard of court orders and to deter future noncompliance."). "Consistent with these purposes, any sanction imposed under Rule 37(b) must be 'just,' and its severity 'must be commensurate with the non-compliance.'" *Karsch v. Blink Health Ltd.*, No. 17 Civ. 3880 (VM) (BCM), 2019 WL 2708125, at *12 (S.D.N.Y. June 20, 2019) (quoting *Joint Stock Co. Channel One Russian Worldwide v. Infomir LLC*, No. 16 Civ. 1318 (GBD) (BCM), 2017 WL 3671036, at *21 (S.D.N.Y. July 18, 2017)); *see also In re Keurig*, 2023 WL 3304287, at *5.

"Rule 37(b)(2)(C) also provides for the award of 'reasonable expenses, including attorney's fees, caused by the failure.'" *Susana v. NY Waterway*, No. 20 Civ. 455 (JPC), 2023 WL 2575050, at *10 (S.D.N.Y. Mar. 20, 2023) (quoting Fed. R. Civ. P. 37(b)(2)(C)). But unlike the provisions of Rule 37(b)(2)(A), this monetary relief is *mandatory* "unless the failure was substantially justified or other circumstances make an award of expenses unjust." *E.L.A.*, 2020 WL 5682019, at *2 (quoting Fed. R. Civ. P. 37(b)(2)(C)). "[T]he burden is on the violator to show that there was a substantial justification for the violation, or that circumstances would make it unjust to award reasonable expenses to the moving party." *In re Doria/Memon Disc. Stores Wage & Hour Litig.*, No. 14 Civ. 7990 (RWS), 2018 WL 1353261, at *5 (S.D.N.Y. Mar. 15, 2018) (internal quotation marks omitted).

While a district judge has "wide discretion in imposing sanctions under Rule 37," *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007); *see also Funk v. Belneftekhim*, 861 F.3d 354, 365-66 (2d Cir. 2016), the Second Circuit has identified four factors that the courts often consider: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party has been warned of the consequences of noncompliance." *S. New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). Moreover, "a court 'should impose the least harsh sanction' that will 'serve as an adequate remedy; the range of sanctions, from the least harsh to the harshest, include further discovery, cost-shifting, fines, special jury instructions, preclusion, entry of default judgment, and dismissal." *In re Keurig*, 2023 WL 3304287, at *5 (quoting *Slovin v. Target Corp.*, No. 12 Civ. 863 (HB), 2013 WL 840865, at *6 (S.D.N.Y. Mar. 7, 2013)).

## III.  Discussion

Al Thani seeks sanctions under Rule 37(b) against both the Hanke Defendants and their former attorney, Herndon, for two categories of misconduct: (1) their repeated submissions of what Al Thani characterizes as "inadequate interrogatory responses" and (2) numerous delayed and incomplete document productions.  *See* Motion at 3-8.

As to the first category, the motion fails for the simple reason that it does not stem from the violation of any court order.  "A district court may only impose sanctions under Rule 37(b) for noncompliance with 'a clearly articulated order of the court requiring specified discovery.'" *Susana*, 2023 WL 2575050, at *10 (quoting *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991)); *see also Salahuddin v. Harris*, 782 F.2d 1127, 1133 (2d Cir. 1986) ("Rule

37(b) sanctions require the violation of an explicit court order."); *In re Keurig*, 2023 WL 3304287, at *7 ("The two predicates to the imposition of sanctions under Rule 37(b) are (1) a court order directing compliance with discovery requests, and (2) non-compliance with that order." (internal quotation marks and brackets omitted)).   While the Court ordered the Hanke Defendants to supplement their interrogatory responses at the November 19, 2020 and February 16, 2021 status conferences, by Al Thani's own admission, the Hanke Defendants did in fact supplement their responses.   *See* Motion at 3 (noting that the Hanke Defendants provided supplemental interrogatory responses on November 30, 2020 and March 3, 2021).   Al Thani merely disputes whether those responses were satisfactory.

Regarding the second category, the Hanke Defendants' document productions, however, the Court finds that both the Hanke Defendants and, to a lesser extent, Herndon violated explicit court discovery orders, thus implicating Rule 37(b).   Below, the Court explains the conduct that violated its orders, first as to the Hanke Defendants and then as to Herndon, and in doing so analyzes the relevant factors in the Second Circuit to assess whether and what sanctions are appropriate.

## A.      The Hanke Defendants

On November 19, 2020, the Court ordered the Hanke Defendants to substantially comply with Al Thani's October 5, 2020 document requests by November 30, 2020.   *See* Nov. 19, 2020 Minute Entry.   This did not occur.   Instead, the Hanke Defendants made a small production of documents on November 30, 2020, and then a supplemental production on December 4, 2020, but even with that supplemental production, the Hanke Defendants did not even come close to substantial completion of their document production.   *See supra* I.   And then after the Court entered a revised Case Management Plan on April 26, 2021 setting a deadline for substantial completion

of document discovery of May 18, 2021, Dkt. 185 ¶ 5(b), this deadline too had not been met by the time the Hanke Defendants filed for bankruptcy in June 2021.  In fact, all responsive documents to Al Thani's requests were not produced by the Hanke Defendants until June 13, 2022, when Hanke's responsive WhatsApp messages were finally turned over.  *See* 9/27/22 Herndon Declaration ¶ 42.  Much of this non-compliance was the result of the Hanke Defendants' repeated failure to make available the complete universe of potentially responsive materials.

The chronology of the Hanke Defendants' steadfast disregard for the Court's discovery deadlines, notwithstanding efforts by Herndon to secure their compliance, is disturbing.  After receiving Al Thani's discovery requests, Herndon sent them to Hanke in early October 2020 and "had several conversations with Mr. Hanke about the location of responsive documents and also the most efficient way for [Herndon's law firm] to collect those documents for review and production."  9/27/22 Herndon Declaration ¶¶ 7, 9; *see* 8/29/23 Hanke Response ¶¶ 6-9.  Herndon's assertion is borne out in the emails between Herndon and Hanke that Herndon submitted to the Court *ex parte*.  8/23/23 Herndon Declaration, Exh. B.  According to Herndon, Hanke assured Herndon "that he would be able to provide relevant documents for [Herndon] and [his] team to review," and "that these documents would be imminently uploaded to" a file transfer link that Herndon's IT staff provided.  9/27/22 Herndon Declaration ¶ 10.  And Hanke similarly contends that, in November 2020, he "provided all documents that contained relevant information that was available and immediately accessible."  8/29/23 Hanke Response at 3.  Yet, the Hanke Defendants' assurances fell flat.  9/27/22 Herndon Declaration ¶ 11.  After finally uploading a meager 222 documents to the SharePoint site at the end of November 2020, 8/23/23 Herndon Declaration ¶ 2, the Hanke Defendants assured Herndon that they had provided all potentially responsive documents, *id.* ¶ 4; *see also* 9/27/22 Herndon Declaration ¶ 13; 8/29/23 Hanke Response at 3.  By

early 2021, however, it became obvious that this was not the case, as a huge portion of discoverable communications clearly was missing.  9/27/22 Herndon Declaration ¶¶ 14-15.  This prompted Herndon to retain an eDiscovery vendor in February 2021 to collect materials from the Hanke Defendants by imaging Hanke's computer and cellphone and allow for production in ESI format. *Id.* ¶ 15.  The non-compliance with the Court's November 19, 2020 discovery order between (1) November 30, 2020, when the Hanke Defendants were ordered to substantially complete their discovery response, but instead made a woefully inadequate production thanks to the insufficient materials provided by Hanke, and (2) February 16, 2021, when Herndon and the Hanke Defendants began the process of retaining an eDiscovery vendor, falls squarely on the Hanke Defendants.

It appears the vendor ultimately received the materials needed for production after imaging Hanke's devices.  8/23/23 Herndon Declaration ¶ 7.  At this point, the Court had entered a revised Case Management Plan that set a deadline of May 18, 2021 for the substantial completion of document discovery.  Dkt. 185 ¶ 5(b).  But on May 24, 2021, Herndon realized that the vendor's production would have consisted of documents that appeared not to be responsive and, of greater concern, appeared to include confidential information pertaining to unrelated transactions.  9/27/22 Herndon Declaration ¶¶ 23, 24; 6/7/21 Al Thani Ltr. at 3; Hanke Response, Exh. B-8.  He immediately contacted Hanke for his assistance in identifying the transactions with Al Thani.  *Id.* ¶ 24.  Herndon reports that despite Hanke agreeing to review those documents by June 4, 2021, and despite Herndon's repeated requests that Hanke provide a status update, Hanke failed to provide Herndon with sufficient information to make production determinations.  *Id.*  Hanke does not contend otherwise in his response; rather, he admits that he reviewed only about 200 or 300 documents through June 4, 2021.  8/29/23 Hanke Response ¶ 22, Exh. B-9.  This resulted in the production of but a single, sixty-page pdf on June 4, 2021.  *See* 6/7/21 Al Thani Ltr. at 2.  Shortly

after that, the bankruptcy stay went into effect when Hanke filed for bankruptcy on June 9, 2021 and when IOLO filed for bankruptcy on June 11, 2021.  Responsibility for this meager and inadequate production, made subsequent to the Court-imposed deadline of May 18, 2021, falls squarely on the Hanke Defendants as well.

Following the lifting of the bankruptcy stay for purposes of this action, on April 8, 2022, the Hanke Defendants produced to Al Thani approximately 22,000 documents collected by the eDiscovery vendor from Hanke's devices.  *See* Dkt. 277-1 at 2.  But these materials did not include WhatsApp messages.  Hanke assured Herndon that while he previously used WhatsApp, he was no longer in possession of any WhatsApp messages.  9/27/22 Herndon Declaration ¶ 38; *see* 8/29/23 Hanke Response, Exh. D-1.  In addition, on May 3, 2022, Hanke swore in a declaration provided to Al Thani that "[t]o the best of my knowledge, I have produced all relevant information and documents responsive to Plaintiffs' Document Requests and supplemented such documents that were not previously produced."  5/3/22 Hanke Declaration ¶ 6.  In actuality, his WhatsApp messages had been saved to the cloud; the WhatsApp application on Hanke's phone simply needed to be synced to the cloud to access those messages.  9/27/22 Herndon Declaration ¶¶ 41-42.  These events followed the Court's express warning at the March 8, 2022 conference, which Hanke himself attended, that further violations of discovery deadlines would not be tolerated and may result in sanctions.  *See* 3/8/22 Tr. at 85:8-15.  While troubling, particularly given the history of this case, there is no indication in the record, however, that Hanke realized that his WhatsApp messages were stored in, and could have been retrieved from, the cloud.  And those WhatsApp messages were ultimately produced to Al Thani on June 13, 2022.  9/27/22 Herndon Declaration ¶ 42.  The Court therefore declines to hold the Hanke Defendants responsible for the omission of Hanke's WhatsApp messages in the April 8, 2022 production.

As explained above, in deciding whether to impose sanctions under Rule 37(b) and which sanctions are appropriate, the Court is guided by the following factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party has been warned of the consequences of noncompliance." *S. New England Telephone Co.*, 624 F.3d at 144 (quoting *Agiwal*, 555 F.3d at 302).

As to the first factor, the Court finds that the Hanke Defendants' failure to comply with discovery orders—specifically, the November 19, 2020 order and the April 26, 2021 Case Management Plan—was willful. "Noncompliance with a court's discovery order is willful when the order is clear, the party understood the order, and the failure to comply is not due to factors beyond the party's control." *Ramgoolie v. Ramgoolie*, 333 F.R.D. 30, 35 (S.D.N.Y. 2019). "Moreover, a persistent refusal to comply with court orders 'presents sufficient evidence of willfulness, bad faith, or fault.'" *Grammar v. Sharinn & Lipshie, P.C.*, No. 14 Civ. 6774 (JCF), 2016 WL 525478, at *3 (S.D.N.Y. Feb. 8, 2016) (quoting *Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002)); *see also HSBC Bank USA v. Harris*, No. 17 Civ. 382 (MPS), 2021 WL 5501711, at *5 (D. Conn. Nov. 23, 2021) (finding willfulness when "the discovery orders were clear, and [the party] refused to comply despite multiple extensions"). Here, the Hanke Defendants' original deadline to complete fact discovery was January 7, 2021, Dkt. 34 ¶ 4(a), and they were directed by the Court to substantially complete their response to Al Thani's document requests by November 30, 2020, *see* Nov. 19, 2020 Minute Entry. The Hanke Defendants nonetheless repeatedly failed to complete their production. Nor have the Hanke Defendants offered any explanation for Hanke providing only a small subset of potentially responsive communications for months until his attorney finally secured an eDiscovery vendor in mid-

February 2021.  Similarly, Hanke has not provided any justification in his delay in reviewing documents that may have involved unrelated transactions in May and early June 2021.  Again, at this point the Court had entered a revised Case Management Plan extending the deadline for substantial completion of document discovery to May 18, 2021.  Dkt. 185 ¶ 5(b).  And while mindful of Hanke's now *pro se* status in defending himself against Al Thani's sanctions motion, the Court cannot think of any justification for his prolonged noncompliance.  This is particularly so in light of Hanke's own acknowledgement that Herndon explained to him "[f]rom the very beginning" the importance of turning over all responsive documents.  Oral Arg. Tr. at 52:6-9.

Accordingly, this first factor strongly favors sanctioning the Hanke Defendants for their conduct in failing to comply with discovery orders over two periods of time: (1) from November 30, 2020, the deadline for their substantial completion of their response to Al Thani's discovery requests, and February 16, 2021, when Herndon and the Hanke Defendants began to engage an eDiscovery vendor, and (2) from May 24, 2021, when Hanke agreed to review the vendor's production for confidential information pertaining to unrelated transactions, and June 9, 2021, when Hanke filed for bankruptcy without having completed that review.

Next the Court finds that the second factor, the efficacy of lesser sanctions, favors monetary sanctions, but disfavors nonmonetary sanctions.  The Court finds that monetary sanctions in the form of "the reasonable expenses, including attorney's fees, caused by the failure" of the Hanke Defendants to comply with the Court's November 30, 2020 order will effectively remedy the discovery abuses inflicted upon Al Thani.  Fed. R. Civ. P. 37(b)(2)(C); *see In re Keurig*, 2023 WL 3304287, at *12 (finding such monetary sanctions reasonable to remedy repeated and conscious "fail[ure] to comply with three Court orders").  Indeed, Al Thani agreed that monetary sanctions as to Hanke would be sufficient at oral argument.  *See* Oral Arg. Tr. at 16:3-6.  Such a sanction

"'is strong medicine,' though 'necessary on appropriate occasions to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators.'"  *Farmer v. Hyde Your Eyes Optical, Inc.*, No. 13 Civ. 6653 (GBD) (JLC), 2015 WL 2250592, at *8 (S.D.N.Y. May 13, 2015) (quoting *Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc.*, 295 F.R.D. 1, 5 (E.D.N.Y. 2013)).

However, because the Court finds that monetary sanctions—which have been described as "the mildest of sanctions," *id.* at *10 (internal quotation marks omitted)—would be effective, this factor disfavors the harsher sanction that Al Thani also seeks—striking the Hanke Defendants' affirmative defenses.  Nonmonetary sanctions are typically applied in cases where the Court has already imposed monetary sanctions to no avail.  *See, e.g.*, *Grammar*, 2016 WL 525478, at *4 (finding "no indication that anything short of terminating sanctions will rectify this situation" in part because "lesser sanctions have proved ineffective"); *Chowdhury v. Hamza Exp. Food Corp.*, 308 F.R.D. 74, 83 (E.D.N.Y. 2015) ("The Court has previously sanctioned defendants for conduct related to these same discovery requests.  Despite this prior sanction, defendants nevertheless did not fully satisfy (or even substantially satisfy) their obligations in their court-ordered responses to plaintiff's discovery requests."); *see also Funk*, 861 F.3d at 370 (noting that because monetary sanctions did not "induce[] plaintiffs' compliance with ordered discovery, there is no reason to think any lesser sanction would have been more effective").  *But see S. New England Tel. Co.*, 624 F.3d at 148 ("[D]istrict courts are not required to exhaust possible lesser actions before imposing dismissal or default if such a sanction is appropriate on the overall record.").  Moreover, given that the Hanke Defendants ultimately complied with Al Thani's discovery requests, albeit after much delay, the Court concludes that Al Thani's ability to litigate his claims against the Hanke Defendants is no longer compromised.  *See Doe v. Delta Airlines, Inc.*, No. 13 Civ. 6287 (PAE), 2015 WL 798031, at *9 (S.D.N.Y. Feb. 25, 2015) (finding nonmonetary sanctions unnecessary

24

because the plaintiff "has now produced the requested [documents], and [the defendant] has not pointed to any gap in these records"); *Silva v. Cofresi*, No. 13 Civ. 3200 (CM) (JFC), 2014 WL 3809095, at *4 (S.D.N.Y. Aug. 1, 2014) (imposing monetary sanctions but declining to impose terminating sanctions because even though "[t]he defendant has demonstrated a pattern of delay and failure to appreciate the seriousness of the discovery process[,] . . . he has now provided responses to the discovery requests in some form").

As to the third factor, duration, "[c]ourts have found noncompliance for a period of several months sufficient to warrant dismissal or default," whereas "lesser sanctions are appropriate" in situations when the period of noncompliance is "relatively short." *In re Keurig*, 2023 WL 3304287, at *10 (internal quotation marks and brackets omitted) (finding "delays of approximately five months in curing the deficient productions . . . sufficiently long to justify sanctions" and ultimately awarding reasonable attorneys' fees and costs (internal quotation marks omitted)). Here, the Court first ordered the Hanke Defendants to substantially complete their responses to Al Thani's document requests by November 30, 2020. *See* Nov. 19, 2020 Minute Entry. The Hanke Defendants did not provide access to the vast majority of communications responsive to Al Thani's discovery requests until after the vendor was retained in mid-February 2021. And the Hanke Defendants did not fully comply with the Court's order until June 13, 2022 when they produced Hanke's WhatsApp messages. 9/27/22 Herndon Declaration ¶ 37. Even just counting the time until this case was stayed due to Hanke's bankruptcy filing on June 9, 2021—given that the most egregious instances of non-compliance preceded the bankruptcy stay—and further omitting the period that Herndon and Hanke were working with the eDiscovery vendor to collect responsive documents from Hanke's devices, this still totals over three months of non-compliance with the

Court's discovery orders.  *See supra* I.  While not an extremely lengthy period of time, the Court

finds it long enough to warrant monetary sanctions.

Regarding the final factor, while litigants have no "absolute entitlement to be 'warned' that

they disobey court orders at their peril,'" *Daval Steel Prods.*, 951 F.2d at 1366, "[c]ourts are

generally hesitant to impose [severe] sanctions before warning the offending litigant," *Grammar*,

2016 WL 525478, at *4; *see also Urbont v. Sony Music Ent.*, No. 11 Civ. 4516 (NRB), 2014 WL

6433347, at *3 (S.D.N.Y. Nov. 6, 2014) ("[S]evere sanctions like dismissal or default should be

imposed only if the party has been warned that such a sanction will follow from continued non-

compliance and has nevertheless refused to comply.").  In this case, while the Court administered

a clear warning to the Hanke Defendants that continued failure to comply with their discovery

obligations would result in sanctions, that occurred at the March 8, 2022 status conference—*after*

the violations discussed above.  It is true that, following that March 8, 2022 conference, the Court

set a deadline of April 8, 2022 for the Hanke Defendants to respond to all outstanding discovery

requests, Dkt. 276, and while the Hanke Defendants made a large production on that date, it did

not include responsive WhatsApp messages, 9/27/22 Herndon Declaration ¶¶ 36-37.  And although

no WhatsApp messages were found on Hanke's devices, 9/27/22 Herndon Declaration ¶ 38, and

Hanke swore that he had produced all responsive materials, 5/3/22 Hanke Declaration ¶ 6, it turned

out that WhatsApp messages existed in the cloud, *id.* ¶ 41.  But as discussed above, there is no

indication that Hanke knew that these messages had been backed up to the cloud and that he could

have retrieved them, and so the Court does not fault the Hanke Defendants for their failure to

timely produce the responsive WhatsApp messages, even though it followed the Court's March 7, 2022 warning.[9]

* * *

In sum, after assessing the relevant factors for imposing sanctions under Rule 37(b), the Court concludes that imposing sanctions on the Hanke Defendants is appropriate. The Court finds that their violations of discovery obligations were willful, and that the duration of said violations was relatively long. The Court also finds that monetary sanctions would be an effective remedy, and the nonmonetary sanction of striking the Hanke Defendants' affirmative defenses is unnecessary at this point, given that the Hanke Defendants ultimately complied with their discovery obligations and given the lack of clear warning that such a sanction might be imposed. Hanke and IOLO are therefore ordered to pay, jointly and severally, the incremental attorneys' fees and costs incurred by Al Thani based on the Hanke Defendants' noncompliance with the Court's discovery orders covering the period of November 30, 2020 through February 16, 2021 and the period of May 24, 2021 through June 9, 2021.[10]

### B.   Herndon

Rule 37(b)(2)(C) permits the Court to impose monetary sanctions against not just the offending party, but also "the attorney advising that party, or both." The Court therefore considers to what extent, if any, Herndon shares at least some responsibility for the Hanke Defendants' discovery violations.

---

[9] The April 8, 2022 production also failed to include any responsive text messages from the Hanke's devices, with those text messages finally produced on May 6, 2022. 9/27/22 Herndon Declaration ¶ 37. But for reasons that remain unclear, the eDiscovery vendor initially failed to extract text messages from Hanke's devices. The Court therefore does not fault the Hanke Defendants for the absence of the text messages in the April 8, 2022 production.

[10] This includes fees and costs incurred in seeking relief from the Court arising from the Hanke Defendants' failure to comply during these two periods with the Court's orders.

As to the Court's November 19, 2020 order that required the Hanke Defendants to substantially comply with Al Thani's document requests by November 30, Herndon claims that he was unable to meet that deadline because the Hanke Defendants only disclosed to him the potentially relevant responsive documents by November 23, and despite "cancel[ing] [his] Thanksgiving plans . . . in an effort to complete the review on time," he was unable to do so. 9/27/22 Herndon Declaration ¶ 13.  While Herndon did not bring this to the Court's attention at the time, the Court finds this explanation acceptable, and likely would have agreed to Herndon's plan of making an initial production of November 30 "and then a supplemental production on December 4, 2020 with the balance of the documents that [he] received from the Hanke Defendants."  *Id.*  The Court further notes that shortly after it became clear that the December 4, 2020 production was deficient, Herndon began the process of engaging with and retaining an eDiscovery vendor, and Herndon then worked with his clients and that vendor to collect responsive materials through his clients' bankruptcy filings in June 2021.

However, following the lifting of the bankruptcy stay, the Hanke Defendants violated the Court's April 6, 2022 Order to "respond to all outstanding discovery requests by April 8, 2022." Dkt. 276.  The Hanke Defendants did make a production of over 22,000 documents on that day, yet that production failed to include relevant text messages and WhatsApp messages from Hanke's phone—documents which plainly fell under Al Thani's "outstanding discovery requests."  9/27/22 Herndon Declaration ¶¶ 36-37.  While it is unclear why the vendor failed to exploit Hanke's devices for text messages, that does not excuse Herndon's failure to review the materials provided by the vendor to ensure the production was complete before turning it over in discovery.  It should have been obvious to Herndon that text messages should have been recovered from Hanke's phone. But it appears that Herndon did not even look at the production before sending it to Al Thani.  In

fact, Herndon only learned from Al Thani's counsel that, to Herndon's surprise, the text messages and WhatsApp messages were missing from the production.  *See* 9/27/22 Herndon Declaration ¶ 37 ("On April 15, 2022, Plaintiff asserted that the Hanke Defendants' production did not include text messages or WhatsApp messages.  I was surprised by this assertion and understood that the vendor had imaged and collected data from all of the Hanke Defendants' devices, which would have included text messages and other messaging applications.").

Herndon's failure to review the documents prior to production—despite them being in the vendor's possession for over a year—was unacceptable.  As the Court stated at oral argument, it is understandable that Herndon "was in a difficult situation . . . for a number of reasons, but it's hard to understand why he was not able to at least eyeball [the production] and realize that a significant chunk of materials was clearly missing."  Oral Arg. Tr. at 34:25-35:4.  Had he, it would have been readily apparent to Herndon that the production was lacking responsive text messages involving Hanke.  Indeed, it took Al Thani's counsel a mere week to file a letter identifying the obvious shortcomings in the production, while Herndon failed to notice the absence of text messages despite the documents being in the vendor's possession for over a year.  Al Thani's counsel then raised with the Court the apparent "material deficiencies in the Hanke Defendants' production," citing the absence of text and WhatsApp messages, and further explained that Plaintiffs thus "need[ed] additional time to review the production" given that such "highly relevant text and WhatsApp messages appear to be missing from the production."  4/15/21 Ltr. at 2.  Thus, Herndon's failure to review the April 8, 2022 discovery production to ensure it was complete resulted in Al Thani's counsel engaging in unnecessary work to identify the deficiencies and raise them with Herndon and the Court.  All this is especially disconcerting as the production followed

the Court's warning on March 8, 2022 that further violations of discovery deadlines may lead to sanctions.  *See* 3/8/22 Tr. at 85:8-15.

Accordingly, sanctions against Herndon are appropriate for similar, although somewhat less compelling, reasons that apply to the Hanke Defendants.  In particular, Herndon's failure to review the April 8, 2022 production resulted in him not complying with the Court's order that his clients respond to all outstanding discovery requests by that date.  The reason for this failure is troubling: despite the Court articulating a very clear discovery order, a history in this case of Herndon's clients not complying with discovery, and a warning from the Court that additional discovery violations would not be tolerated, Herndon failed to review the discovery production to ensure it was complete.  The Court further finds, similar to its finding for the Hanke Defendants, that the efficacy of lesser sanctions favors a limited monetary sanction.  Harsher sanctions, such as striking the Hanke Defendants' affirmative defenses, would not be appropriate to address Herndon's conduct.  Herndon is no longer counsel in this case, and the blame for failing to adequately review the April 8, 2022 production falls on Herndon, not his clients.  The relatively short duration of this violation weighs against imposing substantial monetary sanctions on Herndon, as he made the full discovery production with the missing text messages just under one month later on May 6, 2022.  However, unlike the Hanke Defendants' sanctionable conduct discussed above, Herndon's conduct followed a very explicit warning from the Court on March 8, 2022 that further non-compliance with the Court's discovery orders would result in sanctions.

But the factors for Rule 37(b)(2)(C) sanctions "are not exclusive"; rather, the text of the Rule requires that the district court's orders be "just."  *S. New England Tel. Co.*, 624 F.3d at 144; *see also* Fed R. Civ. P. 37(b)(2)(C) (requiring a court to order monetary sanctions "unless the failure was substantially justified or *other circumstances make an award of expenses unjust*"

(emphasis added)).  The Court finds that this case presents certain unique circumstances that make substantial monetary sanctions against Herndon unjust.

First, it appears that, to say the least, the Hanke Defendants were difficult clients.  Per Herndon's statements in his declarations, many of which are not challenged by Hanke, Hanke made it extremely difficult for Herndon to comply with his discovery obligations.  That resistance does not, however, excuse Herndon's failure to review the April 8, 2022 production to ensure it was complete.

Second, Herndon was not paid for much of his representation of the Hanke Defendants.  Herndon avers that the last payment he and his prior firm received from the Hanke Defendants was in February 2021.  9/27/22 Herndon Declaration ¶ 25.  Herndon then attempted to continue working with the Hanke Defendants despite their ongoing shirking of their discovery and payment obligations until June 2021 when he was finally moved to withdraw.  *Id.* ¶¶ 26-28.  After the Court denied Herndon's motion in light of the Hanke Defendants outstanding discovery obligations, 3/8/22 Tr. at 79:24-80:3; *see also* Mar. 8, 2022 Minute Entry, Herndon was forced to continue working with the Hanke Defendants until June 2022, despite both not being paid and having departed his prior firm which left him without access to his former case files concerning this matter.  9/27/22 Herndon Declaration ¶ 33.   And in addition to that, Herndon paid $12,000 of his own funds to settle the Hanke Defendants' debt with the discovery vendor so that the vendor would release the production and allow him to comply with his clients' discovery obligations.  *Id.* ¶ 36.

In sum, Herndon found himself in an extremely difficult situation.  Could he have handled it better?  Probably.  But given that Al Thani has now received all of the documents in response to his requests, in large part due to Herndon footing the $12,000 vendor bill while simultaneously providing approximately eight months of free legal service to very difficult clients, the Court finds

31

that any substantial monetary sanction on top of these consequences would be "unjust."  The Court will impose sanctions on Herndon in the amount of $500 for failing to review the April 8, 2022 production to ensure it was complete.  This monetary sanction will be payable to Al Thani.  The Court will not otherwise impose sanctions on Herndon in connection with the discovery violations of the Hanke Defendants discussed above, as his former clients were primarily to blame for those violations.  Again, this sanctions amount considers the facts that Herndon was forced to provide free representation for the Hanke Defendants over a considerable period of this litigation and was required to cover the $12,000 vendor charge himself.  Were these considerations not present, the Court might well impose greater sanctions on Herndon.  But given the considerable financial hit Herndon already has taken on account of representing the Hanke Defendants in this case, the Court finds that monetary sanctions on Herndon in excess of $500 would be "unjust."

## IV.  Conclusion

Al Thani's motion for sanctions is granted as set forth above.  Hanke and IOLO are ordered to pay, jointly and severally, the reasonable incremental attorneys' fees and costs incurred by Al Thani based on the Hanke Defendants' noncompliance with the Court's discovery orders covering the period of November 30, 2020 through February 16, 2021 and the period of May 24, 2021 through June 9, 2021.  By September 19, 2023, Al Thani shall submit affidavits with supporting documentation setting forth with specificity all such reasonable incremental costs and fees.[11]  Herndon is ordered to pay $500 in sanctions to Al Thani for failing to review the April 8, 2022 production to ensure it was complete.

The Clerk of Court is respectfully directed to close Docket Number 334.

---

[11] Al Thani should clearly indicate whether any costs and fees sought relate to work that applied to seeking discovery compliance from both the Hanke Defendants and other Defendants, and provide a detailed breakdown of such work.

SO ORDERED.

Dated: September 6, 2023
New York, New York

_____
JOHN P. CRONAN
United States District Judge