# Exhibit 9

Page 1

```
 1
 2    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 3    20 Civ. 4765 (JPC)
      ------------------------------------------------ X
 4    MOHAMMED THANI A.T. AL THANI,
                       Plaintiff,
 5    -v-
      ALAN J. HANKE et al.,
 6    Defendants.
      ------------------------------------------------ X
 7    MARTIN JOHN STEVENS,
                       Plaintiff,
 8    -v-
      ALAN J. HANKE et al.,
 9                     Defendants.
      ------------------------------------------------ X
10
11                         October 4, 2023
12                          10:42 a.m.
13
14
15            DEPOSITION OF ALAN J. HANKE
16             APPEARING REMOTELY FROM
17                MCHENRY, ILLINOIS
18              WEDNESDAY, OCTOBER 4, 2023
19                     10:42 a.m.
20
21
22
23
      REPORTED BY:
24    DANIELLE GRANT
      APPEARING REMOTELY FROM RICHMOND COUNTY, NEW YORK
25    JOB NO.: 6138444
```

Page 2

ALAN J. HANKE

October 4, 2023
10:42 a.m.

Remote Videotaped Deposition of ALAN J. HANKE, held remotely with all parties appearing from their respective locations, pursuant to Notice before DANIELLE GRANT, a Stenographic Reporter and Notary Public of the State of New York.

Page 3

ALAN J. HANKE

REMOTE APPEARANCES:

ALSTON & BIRD, LLP
Attorneys for the Plaintiff
    90 Park Avenue
    15th Floor
    New York, New York 10016
BY: MICHAEL HEFTER, ESQ.
    SCOTT O'BRIEN, ESQ.
    michael.hefter@alston.com
    scott.obrien@alston.com

CHELNEY LAW GROUP PLCC
Attorneys for the Plaintiff
    28 Liberty Street
    Sixth Floor
    New York, New York 10005
BY: PHILIPP SMAYLOVSKY, ESQ., of Counsel
    philipp@chelneylaw.com

ALSO PRESENT:
    LEE BOWRY, Videographer

Page 4

ALAN J. HANKE

FEDERAL STIPULATIONS

IT IS STIPULATED AND AGREED by and between the attorneys for the respective parties herein that the filing, sealing, and certification of the within deposition be waived.

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to the form of the question, shall be reserved to the time of the trial.

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be sworn to and signed before any officer authorized to administer an oath, with the same force and effect as if signed to before the court.

- oOo -

Page 5

ALAN J. HANKE

VIDEOGRAPHER: Good morning. We're going on the record at 10:42 a.m. eastern time on October 4 2023. Please note that this deposition is being conducted remotely using virtual technology. Quality of reporting depends on the quality of camera and Internet connection of participants. What is seen from the witness and heard onscreen is what will be recorded. Audio and video recording will continue to take place unless all parties agree to go off the record. This is Media Unit 1 of the video-recorded deposition of Alan J. Hanke, taken by counsel for plaintiffs in the matter of Mohammed Thani A.T. Al Thani versus Alan J. Hanke, et. al., consolidated with Martin John Stevens versus Alan J. Hanke, et. al., filed in the United States District Court Southern District of New York, case numbers 20 Civ. 4765(JPC) and 20 CV 8181(JPC). Excuse me. My name is Lee Bowry

Page 234

ALAN J. HANKE

2 Q And the amount of the funds
3 transfer is 300 -- or close to $300,000 less
4 $25, which was probably the wire fee, right?
5 A Probably, yes.
6 Q Okay. And so this is the tranche
7 of Mr. Stevens' funds that he wired into the
8 IOLTA account?
9 A Okay.
10 Q Do you know where this money
11 went -- or do you recall where this money
12 went?
13 A I do not.
14 Q Okay.
15     MR. SMAYLOVSKY: Well, let's --
16 let's pull up Document Number 40
17 please, Scott?
18     And we'll mark that as Exhibit 19.
19     (Whereupon, a Document,
20     Bates-stamped AH_055236 through
21     AH_055238 was marked as Plaintiff's
22     Exhibit No. 19 for identification,
23     as of this date.)
24     VIDEOGRAPHER: Mr. Hanke, it seems
25 like we've lost you a little bit on the

Page 235

ALAN J. HANKE

2 shot there, the video.
3     Can you just move that camera down
4 again or something?
5     THE WITNESS: How's that?
6     VIDEOGRAPHER: Thanks.
7     THE WITNESS: Here we go, again.
8     VIDEOGRAPHER: Hopefully it will
9 stick.
10     THE WITNESS: It's not going to.
11     VIDEOGRAPHER: Got any duct tape?
12     Just kidding.
13     THE WITNESS: I've got some.
14 That's what I -- that's exactly what
15 I'm doing. All right.
16     VIDEOGRAPHER: So far, so good.
17     THE WITNESS: It should hold. I
18 won't touch it.
19 A What number, sir, am I looking at?
20 Q You are looking at Exhibit 18.
21 A Okay. Number 18. Okay.
22 Q Do you recall -- do you -- are you
23 familiar with this document?
24 A Yes.
25 Q Okay. So this document, I guess,

Page 236

ALAN J. HANKE

2 Mr. Mills is explaining where Mr. Stevens
3 first $300 -- $300,000 went.
4     Do you see that?
5 A Yes.
6 Q All right. So the first -- first
7 transfer of -- funds transferred to Alan
8 Hanke WNB.
9     Do you see that?
10 A Yes.
11 Q All right. And the WNB is
12 Woodforest National Bank, correct?
13 A That's correct.
14 Q And that's your personal account
15 at Woodforest National Bank, right?
16 A That's correct.
17 Q Okay. So then it says: Funds
18 transferred to Richard Presley BOA.
19     Do you see that?
20 A I do.
21 Q Okay. So why is money going to
22 Mr. Presley?
23 A He is the -- he was the associated
24 consultant on this, on Mr. Stevens.
25 Q I see. So when you say

Page 237

ALAN J. HANKE

2 "associated consultant," what does that
3 mean?
4 A He receives a fee from anything
5 that Mr. Stevens does.
6 Q Okay. And so what did Mr. Stevens
7 do that justified a fee to Richard Presley?
8 A Because he was the introducer of
9 Mr. Stevens.
10 Q I thought Mr. Stevens came through
11 from -- through SRM?
12 A He did.
13 Q Is Mr. Presley affiliated with
14 SRM?
15 A He introduced us to SRM.
16 Q So let me get this straight.
17     Mr. Presley introduced you to SRM
18 so he got paid $30,000 -- almost $30,000?
19 A That's correct.
20 Q Okay. And what about Patricia
21 Howard?
22 A Same thing, introduced me to
23 Richard Presley.
24 Q So Patricia Howard introduced you
25 to Richard Presley and Richard Presley

60 (Pages 234 - 237)

Page 298

ALAN J. HANKE

1  Scott, if you will, 53?
2      (Whereupon, a Document,
3      Bates-stamped AH_005494 through
4      AH_005495 was marked as Plaintiff's
5      Exhibit No. 29 for identification,
6      as of this date.)
7      MR. O'BRIEN: Fifty-three is in.
8  Q   All right. Mr. Hanke, can you take a look at Document 53, please?
9  A   As soon as it is loads.
10 Q   Or now Exhibit 29.
11 A   Okay. I have it up.
12 Q   Are you familiar with this document, sir?
13 A   I am.
14 Q   Okay. So this is another trade distribution that you sent to Mr. Rogers, correct?
15     Or trade distribution notice that you sent to Mr. Rogers?
16 A   That is correct. Yes.
17 Q   All right. So I want to you to look at the distribution notice itself, which is on the second page, okay.

Page 299

ALAN J. HANKE

1  A   Okay.
2  Q   And this is for -- there's a transaction code. I'm not sure what that code indicates.
3      Do you know?
4  A   It's likely a client name or initials --
5  Q   This is --
6      (CROSS-TALK.)
7  A   -- the amount and then the date.
8  Q   Client name or initials, amount and then the date.
9      Where is the amount there?
10 A   300K.
11 Q   Okay. And so what -- do you know what the initials "EMSHDIG" is?
12 A   Who knows. At the time, I probably did.
13 Q   Okay. All right. And the amount is for $11,400, right?
14 A   That's correct.
15 Q   Okay. And so -- this also doesn't have anything to do anything with the SBLC Purchase and Loan Agreement, right?

Page 300

ALAN J. HANKE

1      This is the --
2  A   That's right.
3  Q   -- same form?
4      Okay.
5  A   Yes.
6  Q   All right. This was a direction to make a distribution to Mr. Mills' account, correct?
7  A   Yes.
8  Q   Okay. Do you know what this $11,400 was for?
9  A   Commissions.
10 Q   All right. To whom?
11 A   Beneficiaries S. Mills Rogers, Theodore Handerek and Javid Mirza and Will Anderson.
12 Q   Who are these guys?
13 A   The clients, I think, that brought Mr. -- just Harbour Distributing [sic].
14 Q   Okay. So -- I see. So they -- I see.
15     So they brought -- this is in connection with the Harbour distribution transaction, right?

Page 301

ALAN J. HANKE

1  A   That's correct. I also see a date mismatch.
2  Q   Okay.
3  A   I think it's 2/11/20 and the contract was 3/02 -- okay. So not much after that.
4  Q   Okay.
5  A   Okay. Go ahead, sir.
6  Q   Okay. So my question is is this was Mr. Mirza's share of the commission?
7  A   The $11,400 was a -- was the full amount to be distributed, 40, 40, 10 and 10.
8  Q   Okay.
9      MR. SMAYLOVSKY: Let's -- let's look at Document 54, please, Scott, if you will?
10     (Whereupon, a Document,
11     Bates-stamped AH_005487 through
12     AH_005488 was marked as Plaintiff's
13     Exhibit No. 30 for identification,
14     as of this date.)
15     MR. SMAYLOVSKY: And we're going to mark that as Exhibit 30.
16     MR. O'BRIEN: Fifty-four is in.

76 (Pages 298 - 301)

Page 422

1    ALAN J. HANKE
2  referencing to.  It's the addendums that are
3  in contract that are considered the same as
4  payments.  When we extend these contracts,
5  they're considered extensions of payment
6  just like the one that Mr. Stevens has.
7    Q   All right.  But, as I said, you
8  didn't actually make any payments to
9  Mr. Al Thani, right?
10   A   Again, this is -- when a contract
11 gets extended by the addendum, that's what
12 that portion of it means.  That's the same
13 thing that Mr. Stevens received.
14   Q   Okay.  So it says here:  After
15 many months of payments and a unwillingness
16 to extend and make further payments on
17 additional contracts.
18       Do you see that?
19   A   Correct.  Yes.
20   Q   Okay.  Did you make any payments
21 to Mr. Al Thani on further -- or did you --
22 did you offer him to make additional
23 payments on further contracts?
24   A   Yes.
25   Q   All right.  So it says that Mr. Al

Page 423

1    ALAN J. HANKE
2  Thani sue you after many months of payments
3  and your unwillingness to extend and make
4  further payments on additional contracts,
5  right?
6    A   That's correct, yes.
7    Q   Did you tell Mr. Al Thani that you
8  wouldn't make any further payments on
9  additional contracts?
10   A   Yes.
11   Q   Okay.  Did you pay him what you
12 owed under the existing contracts?
13   A   No.
14   Q   Okay.
15   A   I did not.
16   Q   All right.
17   A   We couldn't make any future ones
18 without having the current ones paid.  That
19 would be impossible.
20   Q   Understood.  All right.  So you
21 didn't pay -- all right.  Got it.  All
22 right.  You told -- all right.  Let's see
23 here.
24       All right.  Did you tell
25 Mr. Stevens that you hadn't made any

Page 424

1    ALAN J. HANKE
2  payments to Mr. Al Thani?
3    A   No.
4    Q   Let's scroll down to page 4 of
5  this document.
6    A   Okay.
7    Q   And so this is -- the question
8  is -- so my first question is who is Hubner
9  and what is his role in this?
10       And your response is:  Craig is
11 the intake coordinator for China Development
12 Fund, which is owned in whole by China
13 Development Bank.
14       Do you see that?
15   A   I do.
16   Q   Okay.  Is -- so that's not true,
17 is it?
18   A   It's how he was introduced to me,
19 yes.
20   Q   Okay.  And who introduced you?
21   A   Amy Roy-Haeger.
22   Q   Okay.  And what was her --
23       (Whereupon, the court reporter
24       requested clarification.)
25       MR. SMAYLOVSKY:  Go ahead.

Page 425

1    ALAN J. HANKE
2       THE WITNESS:  Amy Roy-Haeger.
3    Q   And Ms. Roy-Haeger, was she also
4  an employee of China Development Fund or
5  China Development Bank?
6    A   I don't think so, no.
7    Q   Okay.  Did you tell Mr. Stevens
8  that she was?
9    A   No.
10   Q   Okay.  So is it true that Craig
11 Hubner is an intake coordinator of China
12 Development Fund?
13   A   I don't know.  That's how he was
14 introduced to me.
15   Q   Okay.  And that's what you told
16 Mr. Stevens, right?
17   A   That's what I told Mr. Stevens,
18 yeah.
19   Q   Okay.  And did you -- did you do
20 any -- do any investigation to figure out
21 what -- whether he was actually employed by
22 China Development Bank?
23   A   Just because you are an intake
24 coordinator doesn't mean you are employed by
25 them.  You have contractual relationships,

Page 478

ALAN J. HANKE

2  A  Yes.
3  Q  What is Messner International Corporation?
5  A  I don't know.
6  Q  Okay.  They paid you some money in 2019.
8  A  I don't know --
9     (CROSS-TALK.)
10 Q  Do you recall what that was for?
11    What's that?
12 A  Do you recall how much, sir?
13 Q  I don't off the top of my head but I --
15    (CROSS-TALK.)
16 A  I think I bought some -- I think they bought -- I was a consultant and we bought some COVID test kits for that particular company and that's what that transaction was for.
21 Q  What is the Donlon Family Partnership?
23    Oh, actually, we talked -- yeah. We talked about that already.
25    MR. HEFTER:  Sense of the time on

Page 479

ALAN J. HANKE

2  the record?
3     MR. SMAYLOVSKY:  I just have like five more minutes.
5     MR. HEFTER:  Well, are we at seven or not, though because --
7     VIDEOGRAPHER:  We're at like 30 seconds away.
9  Q  All right.  Do you have any life insurance policies or annuities?
11 A  I'm sorry, sir.
12    Did you not hear me?
13 Q  Do you -- I didn't hear you, no.
14    Do you have any life --
15    (CROSS-TALK.)
16 A  I'm sorry, sir -- I'm sorry.
17 Q  Do you have any life insurance policies or annuities?
19 A  No, sir.  I do not.
20 Q  All right.  So you received a bunch of payments from American Family Mutual Insurance Company.
23    What was that for?
24 A  Well, my mom passed away.  That was -- she had, like, a 20,000 -- I think it

Page 480

ALAN J. HANKE

2  was $20,000.  And we used that for her final burial expenses.
4  Q  Okay.  Who is -- who is Matthew J. Matelick (ph)?
6  A  No idea.  That name doesn't ring a bell.
8  Q  He wrote you a check for $33,000 from Chase, and this -- it's a pay to order of C414-386, LLC, or Alan Hanke?
11    MR. HEFTER:  Hey, Philip, we're over the seven hours --
13    (CROSS-TALK.)
14    MR. SMAYLOVSKY:  Okay.
15    (Continued on following page to accommodate jurat.)

Page 481

ALAN J. HANKE

2     MR. HEFTER:  I think we need to stop.
4     MR. SMAYLOVSKY:  Okay.  I'm fine with that.
6     VIDEOGRAPHER:  All right. We're -- okay.  We are off the record at 7:35 p.m., and this concludes today's testimony given by Alan J. Hanke.  The total number of media used was seven and will be retained by Veritext.

15    (Time noted:  7:35 p.m.)

17    _____
18          ALAN J. HANKE

21 Subscribed and sworn to before me
22 this_____day of _____2023.
23 _____
      NOTARY PUBLIC

Page 482

```
 1              ALAN J. HANKE
 2   ----------------------INDEX----------------------
 3   WITNESS       EXAMINATION BY         PAGE
 4   ALAN J. HANKE   MR. SMAYLOVSKY        7
 5
 6   --------------------EXHIBITS--------------------
 7   FOR IDENTIFICATION  DESCRIPTION       PAGE
     Exhibit No. 1    Document,            14
 8                    Bates-stamped
                      AH_004439
 9
     Exhibit No. 2    Email dated October  26
10                    10, 2018 with an
                      attachment
11
     Exhibit No. 3    Document,            32
12                    Bates-stamped
                      AH_026783
13
     Exhibit No. 4    Document,            41
14                    Bates-stamped
                      AH_034270
15
     Exhibit No. 5    Document,            48
16                    Bates-stamped AH_13204
17   Exhibit No. 6    Document,            58
                      Bates-stamped
18                    AH_055757
19   Exhibit No. 7    Document,            64
                      Bates-stamped
20                    AH_055966
21   Exhibit No. 8    Document,            76
                      Bates-stamped
22                    AH_054116
23   Exhibit No. 9    Document,            87
                      Bates-stamped AH_04559
24
     Exhibit No. 10   Sims texts with Hanke  94
25
```

Page 483

```
 1              ALAN J. HANKE
 2   --------------------EXHIBITS--------------------
 3   FOR IDENTIFICATION  DESCRIPTION       PAGE
 4   Exhibit No. 11   Document, Titled    105
                      "Limited Liability
 5                    Company Articles of
                      Incorporation"
 6
     Exhibit No. 12   Document,           121
 7                    Bates-stamped
                      AH_054083 through
 8                    AH_054-090
 9   Exhibit No. 13   Document,           189
                      Bates-stamped
10                    AH_025117
11   Exhibit No. 14   Document,           190
                      Bates-stamped
12                    AH_023903 through
                      AH_023904
13
     Exhibit No. 15   Document,           194
14                    Bates-stamped
                      AH_021123 through
15                    AH_021124
16   Exhibit No. 16   Document,           196
                      Bates-stamped
17                    AH_023980
18   Exhibit No. 17   Document,           201
                      Bates-stamped
19                    AH_0278168 through
                      AH_078169
20
     Exhibit No. 18   Document,           233
21                    Bates-stamped
                      AH_055133 through
22                    AH_055134
23   Exhibit No. 19   Document,           234
                      Bates-stamped
24                    AH_055236 through
                      AH_055238
25
```

Page 484

```
 1              ALAN J. HANKE
 2   --------------------EXHIBITS--------------------
 3   FOR IDENTIFICATION  DESCRIPTION       PAGE
 4   Exhibit No. 20   Document,           239
                      Bates-stamped
 5                    AH_005409 through
                      AH_005410
 6
     Exhibit No. 21   Document,           246
 7                    Bates-stamped
                      AH_005405 through
 8                    AH_005406
 9   Exhibit No. 22   Document,           248
                      Bates-stamped
10                    AH_055194 through
                      AH_055195
11
     Exhibit No. 23   Document,           260
12                    Bates-stamped
                      AH_005407 through
13                    AH_005408
14   Exhibit No. 24   Document,           265
                      Bates-stamped
15                    AH_055199 through
                      AH_055200
16
     Exhibit No. 25   Document,           271
17                    Bates-stamped
                      AH_007981 through
18                    AH_007982
19   Exhibit No. 26   Document,           279
                      Bates-stamped
20                    AH_057361 through
                      AH_057364
21
     Exhibit No. 27   Document,           288
22                    Bates-stamped
                      AH_059749 through
23                    AH_059750
24   Exhibit No. 28   Document,           293
                      Bates-stamped
25                    AH_059747 through
                      AH_059748
```

Page 485

```
 1              ALAN J. HANKE
 2   --------------------EXHIBITS--------------------
 3   FOR IDENTIFICATION  DESCRIPTION       PAGE
 4   Exhibit No. 29   Document,           298
                      Bates-stamped
 5                    AH_005494 through
                      AH_005495
 6
     Exhibit No. 30   Document,           301
 7                    Bates-stamped
                      AH_005487 through
 8                    AH_005488
 9   Exhibit No. 31   Document,           307
                      Bates-stamped
10                    AH_070953 through
                      AH_070960
11
     Exhibit No. 32   Document,           311
12                    Bates-stamped
                      AH_006645 through
13                    AH_006646
14   Exhibit No. 33   Document,           316
                      Bates-stamped
15                    AH_071964
16   Exhibit No. 34   Document,           323
                      Bates-stamped
17                    AH_041054 through
                      AH_041056
18
     Exhibit No. 35   Document,           328
19                    Bates-stamped
                      AH_041486 through
20                    AH_041487
21   Exhibit No. 36   Document,           338
                      Bates-stamped
22                    AH_065620
23   Exhibit No. 37   Document,           348
                      Bates-stamped
24                    AH_008406 through
                      AH_008408
25
```

Page 486

```
 1                ALAN J. HANKE
 2  --------------------EXHIBITS--------------------
 3  FOR IDENTIFICATION    DESCRIPTION           PAGE
 4  Exhibit No. 38    Document,             356
                     Bates-stamped
 5                   AH_0702226
 6  Exhibit No. 39    Document,             360
                     Bates-stamped
 7                   AH_070265 through
                     AH_070266
 8
    Exhibit No. 40    Document,             376
 9                   Bates-stamped
                     AH_077948
10
    Exhibit No. 41    Document,             378
11                   Bates-stamped
                     AH_078168 through
12                   AH_078169
13  Exhibit No. 42    Document,             382
                     Bates-stamped
14                   AH_078352
15  Exhibit No. 43    Document,             400
                     Bates-stamped
16                   AH_006955
17  Exhibit No. 44    Document,             410
                     Bates-stamped
18                   AH_078751 through
                     AH_78752
19
    Exhibit No. 45    Document,             419
20                   Bates-stamped
                     AH_078873 through
21                   AH_78877
22  Exhibit No. 46    Document,             431
                     Bates-stamped
23                   AH_078904 through
                     AH_78910
24
    Exhibit No. 47    Document,             441
25                   Bates-stamped
                     AH_079301
```

Page 487

```
 1                ALAN J. HANKE
 2  --------------------EXHIBITS--------------------
 3  FOR IDENTIFICATION    DESCRIPTION           PAGE
 4  Exhibit No. 48    Document,             450
                     Bates-stamped
 5                   AH_079519 through
                     AH_079528
 6
 7
 8
 9
10
11  ------------PREVIOUSLY MARKED EXHIBITS------------
12  FOR IDENTIFICATION    DESCRIPTION           PAGE
13         -----NONE WERE MARKED------
14
15
16  -------------REQUESTS FOR PRODUCTION--------------
17  DESCRIPTION                               PAGE
18         -----NONE WERE MADE------
19
20
21
22
23
24
25
```

Page 488

```
 1                ALAN J. HANKE
 2              CERTIFICATE
 3   STATE OF NEW YORK )
 4                    )ss:
 5   COUNTY OF RICHMOND)
 6       I, DANIELLE GRANT, a Certified
 7   Shorthand Reporter, and Notary
 8   Public within and for the State of
 9   New York, do hereby certify:
10       That ALAN J. HANKE, the witness
11   whose deposition is hereinbefore set
12   forth, was duly sworn by me and that
13   such deposition is a true record of
14   the testimony given by such witness
15   remotely.
16       I further certify that I am not
17   related to any of the parties to
18   this action by blood or marriage and
19   that I am in no way interested in
20   the outcome of this matter.
21       In witness whereof, I have hereunto
22   set my hand this 11th day of October,
23   2023.
                 [signature: Danielle Grant]
24   _____
              DANIELLE GRANT
25
```

Page 489

```
 1                ALAN J. HANKE
 2          DEPOSITION ERRATA SHEET
 3
 4   DECLARATION UNDER PENALTY OF PERJURY
 5     I declare under penalty of perjury
 6  that I have read the entire transcript of
 7  my Deposition taken in the captioned matter
 8  or the same has been read to me, and
 9  the same is true and accurate, save and
10  except for changes and/or corrections, if
11  any, as indicated by me on the DEPOSITION
12  ERRATA SHEET hereof, with the understanding
13  that I offer these changes as if still under
14  oath.
15  Signed on the _____ day of
16  _____, 2023.
17  _____
18         ALAN J. HANKE
19
20
21
22
23
24
25
```

```
                                                    Page 490
 1         ALAN J. HANKE
 2         DEPOSITION ERRATA SHEET
 3  Page No._____Line No._____Change to:_____
 4  _____
 5  Reason for change:_____
 6  Page No._____Line No._____Change to:_____
 7  _____
 8  Reason for change:_____
 9  Page No._____Line No._____Change to:_____
10  _____
11  Reason for change:_____
12  Page No._____Line No._____Change to:_____
13  _____
14  Reason for change:_____
15  Page No._____Line No._____Change to:_____
16  _____
17  Reason for change:_____
18  Page No._____Line No._____Change to:_____
19  _____
20  Reason for change:_____
21  Page No._____Line No._____Change to:_____
22  _____
23  Reason for change:_____
24  SIGNATURE:_____DATE:_____
25         ALAN J. HANKE

                                                    Page 491
 1         ALAN J. HANKE
 2         DEPOSITION ERRATA SHEET
 3  Page No._____Line No._____Change to:_____
 4  _____
 5  Reason for change:_____
 6  Page No._____Line No._____Change to:_____
 7  _____
 8  Reason for change:_____
 9  Page No._____Line No._____Change to:_____
10  _____
11  Reason for change:_____
12  Page No._____Line No._____Change to:_____
13  _____
14  Reason for change:_____
15  Page No._____Line No._____Change to:_____
16  _____
17  Reason for change:_____
18  Page No._____Line No._____Change to:_____
19  _____
20  Reason for change:_____
21  Page No._____Line No._____Change to:_____
22  _____
23  Reason for change:_____
24  SIGNATURE:_____DATE:_____
25         ALAN J. HANKE
```

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.