UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
MOHAMMED THANI A.T. AL THANI,                                          :
                                                                       :
                              Plaintiff,                               :
                                                                       :
              -v-                                                      :          20 Civ. 4765 (JPC)
                                                                       :
ALAN J. HANKE *et al.*,                                                :
                                                                       :
                              Defendants.                              :
                                                                       :
-----------------------------------------------------------------------X
                                                                       :
MARTIN JOHN STEVENS,                                                   :
                                                                       :
                              Plaintiff,                               :
                                                                       :
              -v-                                                      :          20 Civ. 8181 (JPC)
                                                                       :
ALAN J. HANKE *et al.*,                                                :          OPINION AND ORDER
                                                                       :
                              Defendants.                              :
                                                                       :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

On September 23, 2024, the Court partially granted Plaintiffs Mohammed Thani A.T. Al

Thani's ("Al Thani") and Martin John Stevens's ("Stevens") motions for summary judgment. *See*

*Al Thani v. Hanke*, Nos. 20 Civ. 4765 (JPC), 20 Civ. 8181 (JPC), 2024 WL 4265196 (S.D.N.Y.

Sept. 23, 2024). The Court granted Al Thani summary judgment on Counts One and Two as to

Defendants Alan J. Hanke ("Hanke") and IOLO Global LLC ("IOLO") (together, the "Hanke

Defendants"), both as to liability alone, and otherwise denied the motion. *Id.* at *28-41. The Court

granted Stevens summary judgment on Count One as to the Hanke Defendants and on Count Six

as to Defendant Guarantee Investment Trust, also both as to liability only, and otherwise denied

the motion. *Id.* at *41-45. On October 23, 2024, Stevens moved for reconsideration. No. 20 Civ.

8181, Dkt. 178 ("Stevens Motion"). And on November 7, 2024, Al Thani and Stevens filed a joint motion for reconsideration. No. 20 Civ. 8181, Dkt. 180; No. 20 Civ. 4765, Dkt. 418 ("Joint Motion"). No Defendant has opposed these motions. For reasons discussed herein, the Court grants the Stevens Motion and denies the Joint Motion.

Separately, on September 6, 2023, the Court granted Al Thani's motion for sanctions and ordered the Hanke Defendants to pay, "jointly and severally, the reasonable incremental attorneys' fees and costs incurred by Al Thani based on the Hanke Defendants' noncompliance with the Court's discovery orders covering the period of November 30, 2020 through February 16, 2021 and the period of May 24, 2021 through June 9, 2021." *Al Thani v. Hanke*, No. 20 Civ. 4765 (JPC), 2023 WL 5744288, at *16 (S.D.N.Y. Sept. 6, 2023). For reasons that follow, the Court awards Al Thani $101,184.68 in attorneys' fees and costs.

## I. The Stevens Motion

Stevens moves the Court to reconsider the part of the September 23, 2024 Opinion "that denied summary judgment as to Mr. Stevens [sic] damages for the breach of Section 5.3 of the Management and Deposit Agreement (the 'MDA') between Mr. Stevens and [IOLO], Mr. Hanke's alter ego." Stevens Motion at 1; *see also* No. 20 Civ. 8181, Dkt. 158, Exh. 12 at 3-8 ("Stevens MDA"). In that Opinion, the Court granted Stevens summary judgment as to liability only on Count One—his breach-of-contract claim—against both IOLO and Hanke, as IOLO's alter ego. *Al Thani*, 2024 WL 4265196, at *41-42. The Court, however, declined to determine on summary judgment the amount of damages to which Stevens is entitled on that claim. *Id.* at *42.

For the first time, in the instant motion, Stevens asks the Court to consider the damages stemming from the breach of Section 5.3 of the Stevens MDA separately from any damages resulting from breaches of other contractual provisions. Stevens Motion at 2 ("Accordingly, irrespective of whether Mr. Stevens is entitled to additional damages for Mr. Hanke's breaches of

various *other* contractual provisions . . . , this Court should grant reconsideration, enforce the plain terms of the MDA, and immediately award partial summary judgment to Mr. Stevens in the amount of $1 million, plus statutory interest, for breach of Section 5.3."). Section 5.3 provides that "[i]n the event of any non-performance by IOLO, [Stevens] may, at [his] discretion . . . choose to request the return of [his] original Assets and IOLO shall comply with this request." Stevens MDA § 5.3. As the Court previously concluded, "IOLO undisputedly failed to perform its various obligations under th[e] MDA." *Al Thani*, 2024 WL 4265196, at *42. That included, "when Stevens demanded the return of his $1 million [*i.e.*, his 'original Assets'] pursuant to Section 5.3 of the MDA, IOLO breached that provision by failing to do so." *Id.* For the breach of Section 5.3, Stevens is unambiguously entitled to damages of $1 million, plus statutory interest. Under Wyoming law,[1] "[i]n an action for breach of contract, the damages awarded are designed to put the plaintiff in the same position as if the contract had been performed." *Berthel Land & Livestock v. Rockies Express Pipeline LLC*, 275 P.3d 423, 433 (Wyo. 2012). Here, had IOLO performed its obligations under Section 5.3, it would have returned the $1 million to Stevens after Stevens made his demand. *See* Stevens MDA App'x A (defining Stevens's "Assets" as "the equivalent of One Million United States Dollars").

Accordingly, Stevens is entitled to $1 million in damages for IOLO's breach of Section 5.3 of the Stevens MDA, which he has "proven with a reasonable degree of certainty." *Berthel Land & Livestock*, 275 P.3d at 433. The Court thus grants Stevens summary judgment against IOLO— and against Hanke as IOLO's alter ego, *see Al Thani*, 2024 WL 4265196, at *34-35—as to Count One with respect to the breach of Section 5.3 of the Stevens MDA and awards damages in the amount of $1 million resulting from that breach, plus prejudgment interest at the rate of seven

---

[1] Wyoming law governs the breach of contract claims. *See Al Thani*, 2024 WL 4265196, at *28, *41.

percent from July 16, 2020, to the date of this Opinion and Order.[2]  For the reasons provided in

the September 23, 2024 Opinion, and reaffirmed below in the discussion of the Joint Motion, the

Court does not determine on summary judgment the amount of damages to which Stevens is

entitled due to the breach of any other contractual provision in the Stevens MDA.

## II.  The Joint Motion

Local Civil Rule 6.3 instructs that, in seeking reconsideration of a court order denying a

motion, the movant must "set[] forth concisely the matters or controlling decisions which the

moving party believes the court has overlooked."  S.D.N.Y. Loc. Civ. R. 6.3.  "The major grounds

justifying reconsideration are an intervening change of controlling law, the availability of new

evidence, or the need to correct a clear error or prevent manifest injustice."  *Virgin Atl. Airways,*

*Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted);

*accord Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012); *see Cohen v. Jamison*,

No. 23 Civ. 1304 (LTS), 2023 WL 3412762, at \*2 (S.D.N.Y. May 12, 2023) (explaining that

---

[2] In a diversity case, like this one, "state law governs the award of prejudgment interest." *Schipani v. McLeod*, 541 F.3d 158, 164 (2d Cir. 2008).  Under Wyoming law, "[p]rejudgment interest is available if a two-part test is met: (1) the claim must be liquidated, as opposed to unliquidated, meaning it is readily computable via simple mathematics; and (2) the debtor must receive notice of the amount due before interest begins to accumulate." *Fuger v. Wagoner*, 551 P.3d 1085, 1094 (Wyo. 2024) (internal quotation marks omitted).  Here, both parts of the test are met.  First, Stevens's damages of $1 million for the breach of Section 5.3 are liquidated because they are for a sum certain.  And second, Hanke was on notice of this amount because he was "informed of what to pay" and there was "a fixed and determined amount which could have been tendered and interest thereby stopped." *Holst v. Guynn*, 696 P.2d 632, 636 (Wyo. 1985) (internal quotation marks omitted); *see also Fuger*, 551 P.3d at 1094 n.3 ("Notice of the amount due is typically achieved by some form of a demand.").  Stevens demanded payment of $1 million from Hanke, and thus Hanke was on notice of the amount owed, at least by July 16, 2020. *See* No. 20 Civ. 8181, Dkt. 159-32; *Al Thani*, 2024 WL 4265196, at \*19 ("Stevens demanded that Hanke immediately return the entirety of his investment, as required under MDA Section 5.3, both on the phone and through writing.  On July 16, 2020, Hanke agreed to return Stevens's $1 million investment.  But Hanke failed to do so." (citations omitted)).  Under Wyoming law, the statutory rate of prejudgment interest is seven percent. *Halling v. Yovanovich*, 391 P.3d 611, 622 (Wyo. 2017) (citing Wyo. Stat. Ann. § 40-14-106(e)).

reconsideration is warranted if a movant demonstrates "that the Court overlooked controlling law or factual matters that had been previously put before it" (internal quotation marks omitted)).  The standard for reconsideration "must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." *Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 391-92 (S.D.N.Y. 2000); *see Iowa Pub. Emps. Ret. Sys. v. Deloitte & Touche LLP*, 973 F. Supp. 2d 459, 462 (S.D.N.Y. 2013) ("A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." (internal quotation marks omitted)), *aff'd*, 558 F. App'x 138 (2d Cir. 2014).  "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

In the September 23, 2024 Opinion, the Court concluded that Plaintiffs "failed to demonstrate [their] entitlement as a matter of law to the full amount of the returns contemplated by the agreements" for several reasons. *Al Thani*, 2024 WL 4265196, at *29, *42.  First, the Court noted that Plaintiffs' "purported entitlement to the full amount of the returns as expectation damages is difficult to square with the plain language of the MDAs." *Id.* at *29.  On this point, the Court noted that the MDAs' reference to the payment schedule as "desired funding" "expressly cast the funding plan described in Appendix B as an intended and desired outcome, not a guaranteed one." *Id.* at *29, *42; *see also* Stevens MDA § 2.2; No. 20 Civ. 4765, Dkt. 384, Exhs. 17 ("Al Thani March MDA") § 3.2, 34 ("Al Thani July MDA") § 3.2.  The Court also reasoned that there was a "colorable argument" that—based on the provision of the MDAs that allowed Plaintiffs to seek the return of their original investments in the event of non-performance by IOLO—the "only form of damages within the parties' reasonable contemplation was the return of

[Plaintiffs'] 'original Assets.'" *Al Thani*, 2024 WL 4265196, at *29-30, *42.  Second, the Court

noted Hanke's testimony expressing disbelief at the suggestion that he owed Al Thani over $100

million dollars in connection with IOLO's default under the MDAs.  *Id.* at *30.  And finally, the

Court observed that "Al Thani provides little in the way of support for his proposition that he is

entitled to approximately $134 million"—only "a single citation" with "no accompanying

analysis."  *Id.* at *30; *see also id.* at *42 (noting that Stevens's identical argument also was not

"accompanied by any developed legal argumentation").  Ultimately, in light of "the contractual

language referenced above, Hanke's testimony, and the lack of developed argumentation" as to

the claimed "lost profits" damages, the Court was unable to conclude that "'the issue of future

earnings was not only contemplated but also fully debated and analyzed by sophisticated business

professionals at the time of these extended contract negotiations'" such that IOLO "'must have

foreseen that if it breached the contract, [Al Thani and Stevens] would be entitled to lost profits.'"

*Id.* at *30 (quoting *Ashland Mgmt. Inc. v. Janien*, 624 N.E.2d 1007, 1011 (N.Y. 1993)).

In the Joint Motion, Al Thani and Stevens argue that the Court erred in denying summary

judgment as to expectation damages on their breach-of-contract claims.  Plaintiffs assert that the

MDAs unambiguously entitle them to damages in the amount of the full funding schedule outlined

in Appendix B of each MDA, and as support they point to two ways in which they argue the Court

misinterpreted the relevant contractual language.  First, Plaintiffs take issue with the Court's focus

on the payment schedule being described as "desired funding" in Section 3.2 of the Al Thani

MDAs and Section 2.2 of the Stevens MDA, and argue that "[t]he presence of the word 'desired'

in [the MDAs] must be read in the context of the entire agreement."  Joint Motion at 3-6.[3]  Plaintiffs

---

[3] The MDAs describe IOLO's obligations to include "plac[ing] the Assets into one or more asset enhancement transactions . . . to be structured for Client by IOLO to produce the *desired funding referenced in Appendix B* herein."  Stevens MDA § 2.2 (emphasis added); Al Thani March MDA § 3.2 (emphasis added); Al Thani July MDA § 3.2 (emphasis added).

point to the Al Thani March MDA and note that "the word 'desired' appears again only in the final sentence of Appendix B: 'Any payments desired by the client will be noticed to IOLO two weeks or more prior to the payment date and paid directly into the account specified in Appendix D unless otherwise notified.'" *Id.* at 5 (quoting Al Thani March MDA, App'x B).  They argue that, when "[r]ead in conjunction with § 3.2 [which is identical to Section 2.2 of the Stevens MDA], this language can only be read one way: namely that Plaintiffs respectively, if they so 'desired,' had the option to receive each individual payment as scheduled or roll those payments into the principal investment"; "it cannot be read to mean that Plaintiffs agreed to make their investments contingent on Hanke's success." *Id.*

Plaintiffs' argument is unpersuasive.  To start, neither the Stevens MDA nor the Al Thani July MDA include the word "desired" in Appendix B.  Plaintiffs offer no explanation for why the use of that word in one agreement should override its absence in the others.  Moreover, even if that language were present across all three MDAs, Plaintiffs' assertion that the reference to "desired funding" can "only be read one way" overstates the clarity of the relevant contractual provisions.  As the Court noted in its September 23, 2024 Opinion, the use of the phrase "desired funding" reasonably casts the funding schedule as an intended or hoped-for outcome, not a guaranteed contractual commitment.  *See Al Thani*, 2024 WL 4265196, at *29, *42.  Plaintiffs also point to language surrounding the words "desired funding" in the MDAs—which is not phrased in conditional terms—and argue that this context supports a reading of the payment provisions as mandatory.  Joint Motion at 4-5.  This surrounding language, however, does not "manifest[] an intention" of the parties to create an unconditional payment schedule, nor does it render the conflicting contractual language unambiguous, such that "'reasonable persons could not differ as to its meaning.'"  *Bentivoglio v. Event Cardio Grp., Inc.*, No. 18 Civ. 2040 (PKC), 2021 WL 736811, at *3 (S.D.N.Y. Feb. 24, 2021) (quoting *Fulton Cogeneration Assocs. v. Niagara Mohawk*

*Power Corp.*, 84 F.3d 91, 98 (2d Cir. 1996)).  In all, Plaintiffs' arguments as to the word "desired" fail to identify any contractual language overlooked by the Court that reasonably could have altered the prior conclusion.  *See Shrader*, 70 F.3d at 257.

Second, Plaintiffs disagree with the Court's conclusion that there is a "colorable argument" that, under Section 5.5 of the Al Thani MDAs (and the corollary Section 5.3 of the Stevens MDA), "the only form of damages within the parties' reasonable contemplation was the return of Al Thani's [or Stevens's] 'original Assets.'"  *Al Thani*, 2024 WL 4265196, at *30.  Those Sections provide that "[i]n the event of any non-performance by IOLO," "Client may at its discretion" either allow IOLO to cure the breach or "may choose to request the return of its original Assets."  Stevens MDA § 5.3; Al Thani March MDA § 5.5; Al Thani July MDA § 5.5.  Plaintiffs argue that, because these "provisions are subparts of the sections of the MDAs dealing with IOLO's asset surety obligations," they "can only be read to give Plaintiffs the option to demand a return of their investments if IOLO/Hanke failed to provide the surety bonds."  Joint Motion at 6-7.  The plain language of the MDAs cuts against Plaintiffs' argument.  These Sections contain no limiting language tying the right to demand a return of the original investment specifically to a failure to provide surety bonds.  Instead, they apply broadly "[i]n the event of *any non-performance* by IOLO."  Stevens MDA § 5.3 (emphasis added); Al Thani March MDA § 5.5 (emphasis added); Al Thani July MDA § 5.5 (emphasis added).   Section 5.5 of the Al Thani MDAs also has a cross-reference to Appendix B, which further supports a broad interpretation of the clause.  *See* Al Thani March MDA § 5.5 ("In the event of any non-performance by IOLO after the period specified in Appendix B . . . .");  Al Thani July MDA § 5.5 (same).  Appendix B, in turn, is titled "Client Funding" and defines a schedule for funding payments that similarly is in no way tied to IOLO's obligations relating to surety bonds.  Al Thani March MDA, App'x B; Al Thani July MDA, App'x B.  Plaintiffs point to no contractual provision linking the surety obligation to the funding timeline

in Appendix B.  So too with respect to their arguments concerning the investment return provision, then, Plaintiffs have failed to identify any contractual language otherwise overlooked by the Court in its September 23, 2024 Opinion.

Accordingly, Plaintiffs have provided no basis for the Court to revisit its conclusion that the contractual provisions are not so unambiguous that the Court can grant summary judgment as to Stevens's and Al Thani's requests for "lost profits" damages.  Plaintiffs have failed to identify any controlling law or material facts that the Court overlooked in this regard, nor have they established that reconsideration is necessary to correct clear error or prevent manifest injustice. *See Virgin Atl. Airways*, 956 F.2d at 1255; *see also Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.").  The Joint Motion is therefore denied.

### III.  Attorneys' Fees

As mentioned, in the September 6, 2023 Opinion, the Court ordered the Hanke Defendants "to pay, jointly and severally, the reasonable incremental attorneys' fees and costs incurred by Al Thani based on the Hanke Defendants' noncompliance with the Court's discovery orders covering the period of November 30, 2020 through February 16, 2021 and the period of May 24, 2021 through June 9, 2021."  *Al Thani*, 2023 WL 5744288, at *16.  Al Thani's attorney, Michael C. Hefter, then filed an affidavit and detailed billing records setting forth such fees and costs, and requesting that the Court find a total of $132,232.50 in fees and costs reasonable.  No. 20 Civ. 4765, Dkt. 375 ("Hefter Affidavit"), Exh. 1 ("Time Sheet").

A district court "enjoys broad discretion in determining the amount of a fee award." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011).  To determine an appropriate fee, courts begin by calculating a "presumptively reasonable fee" that is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Millea v. Metro-*

*North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).  The counsel for the fee applicant must "justify the reasonableness of the requested rate or rates," which requires that party "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  In determining what a "reasonable fee" is, courts consider "what a reasonable, paying client would be willing to pay."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183-84 (2d Cir. 2008).  To do so, courts examine "the complexity and difficulty of the case," "the resources required to prosecute the case effectively," "the timing demands of the case," and "whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself."  *Id.* at 184.

While the fee applicant has the burden of showing the reasonableness of its fees, "the Court may also apply its 'own knowledge' of rates charged in the community in assessing the reasonableness of the rates sought."  *Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, No. 10 Civ. 5256 (KMW) (DF), 2012 WL 5816878, at *5 (S.D.N.Y. Nov. 14, 2012) (quoting *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987)).  In submitting evidence to support its proposed fees, counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  *Liang Huo v. Go Sushi Go 9th Ave.*, No. 13 Civ. 6573 (KBF), 2014 WL 1413532, at *7 (S.D.N.Y. Apr. 10, 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)).  Finally, "in awarding attorney's fees as a sanction, the Second Circuit has cautioned that a court should consider the financial circumstances of the sanctioned party."  *LCS Grp. LLC v.*

*Shire LLC*, 383 F. Supp. 3d 274, 279 (S.D.N.Y. 2019) (alteration adopted and internal quotation marks omitted).

Here, Al Thani seeks a total of $132,232.50 in attorneys' fees and costs incurred by Al Thani due to the Hanke Defendants' noncompliance with the Court's discovery orders. Hefter Affidavit ¶ 14. The Court begins by considering the reasonable hourly rates for the attorneys who worked on this matter. Al Thani provides only an excerpt from a "2022 Real Rate Report," published by Wolters Kluwer, to support his proposed hourly rates. *See* Hefter Affidavit ¶ 10; No. 20 Civ. 4765, Dkt. 376, Exh. 2 ("2022 Real Rate Report"). Al Thani, however, "make[s] no effort to 'compare the rates its counsel has charged to rates charged by counsel in similar cases' or to rates approved by courts in this district." *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, No. 17 Civ. 4576 (GHW) (BCM), 2023 WL 2870484, at *3 (S.D.N.Y. Apr. 10, 2023) (quoting *Danaher Corp. v. Travelers Indem. Co.*, No. 10 Civ. 121 (JPO) (JCF), 2014 WL 4898754, at *4 (S.D.N.Y. Sept. 30, 2014)). "Nor, for that matter, do[es he] describe the background or experience of the attorneys for whom [he] seeks fees, although it is well-settled that such information is required if the court is to engage in the necessary case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel." *Id.* (alterations adopted and internal quotation marks omitted). Given the dearth of information provided by Al Thani, the Court "take[s] judicial notice of biographical facts about [Al Thani's] attorneys, including the year that an attorney graduated law school." *NAACP v. E. Ramapo Cent. Sch. Dist.*, No. 17 Civ. 8943 (CS) (JCM), 2020 WL 7706783, at *5 n.5 (S.D.N.Y. Dec. 29, 2020).

For Michael Hefter—who was a partner at Hogan Lovells US LLP with thirty years of experience during the relevant time period, *see* No. 20 Civ. 4765, Dkt. 351 (Hefter's notice of change of address); *Michael Hefter*, https://www.alston.com/en/professionals/h/hefter-michael (last visited June 5, 2025)—Al Thani seeks an hourly rate of $1,295 for work performed in 2020

and $1,385 for work performed in 2021.  Hefter Affidavit ¶ 9.  For Matthew Ducharme—at the time an associate with five years' experience, *see Matthew Ducharme*, https://www.hoganlovells.com/en/ducharme-matthew (last visited June 5, 2025)—Al Thani seeks an hourly rate of $830 for work performed in 2020 and $960 for work performed in 2021.  Hefter Affidavit ¶ 9.  And for Peter Bautz—at the time an associate with two years' experience, *see Peter Bautz*, https://www.linkedin.com/in/peter-bautz (last visited June 5, 2025)—Al Thani seeks an hourly rate of $630 for work performed in 2020 and $770 for work performed in 2021.  Hefter Affidavit ¶ 9.

The 2022 Real Rate Report identifies a mean hourly rate of $1,209 for a partner and $777 for an associate practicing commercial litigation in a large law firm in New York City for the year 2020.  2022 Real Rate Report at 179.  Those rates increased to $1,266 and $799 for the year 2021.  *Id.*  In this District and in cases with a similar level of complexity, courts have found hourly rates of, at the very most, up to $1,400 to be reasonable for partners at large law firms in New York City.  *Wells Fargo Tr. Co., N.A. v. Fast Colombia S.A.S.*, No. 23 Civ. 603 (PGG) (RWL), 2023 WL 8591953, at *6-9 (S.D.N.Y. Oct. 16, 2023) (recommending approval of partner hourly rates of up to $1,400), *report and recommendation adopted*, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023); *Google LLC v. Starovikov*, No. 21 Civ. 10260 (DLC), 2023 WL 2344935, at *2 (S.D.N.Y. Mar. 3, 2023) (approving partner hourly rates of up to $1,173); *Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, No. 20 Misc. 23 (AT), 2021 WL 1353756, at *3 (S.D.N.Y. Apr. 12, 2021) (finding that partner hourly rates of $1,175 and $1,350, "though on the higher end, [were] comparable to rates awarded in this jurisdiction"); *Vista Outdoor Inc. v. Reeves Fam. Tr.*, No. 16 Civ. 5766 (JSR), 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (approving partner hourly rates of $1,170 in 2016, $1,195 in 2017, and $1,260 in 2018).  Al Thani's requested rates for Hefter sit close to the top of this range.  Meanwhile, "[c]ourts in this district have found hourly rates of

$753 on the 'upper limit' of rates award for associates in this district." *Angelo, Gordon & Co.*, 2021 WL 1353756, at \*3; *see Google*, 2023 WL 2344935, at \*2 (approving associate hourly rates of up to $569.50); *Phyto Tech Corp. v. Givaudan SA*, No. 18 Civ. 6172 (JGK), 2023 WL 1437714, at \*7-8 (S.D.N.Y. Jan. 31, 2023) (approving associate rates of "$465.97 to $723.39 per hour" as "on the higher end of the spectrum of rates typically allowed for other large firms in this district"); *VR Optics, LLC v. Peloton Interactive, Inc.*, No. 16 Civ. 6392 (JPO), 2021 WL 1198930, at \*5 (S.D.N.Y. Mar. 30, 2021) (approving associate hourly rates of up to $690), *aff'd*, No. 2021-1900, 2023 WL 2031213 (Fed. Cir. Feb. 16, 2023); *Vista Outdoor*, 2018 WL 3104631, at \*6 (approving associate hourly rates of up to $693.75).  And "[i]n general, courts decline to award hourly rates of over $650 for associates." *Angelo, Gordon & Co.*, 2021 WL 1353756, at \*3.

The Court finds it reasonable to reduce the hourly rates requested by Al Thani by twenty percent for several reasons.  First, such a reduction brings the hourly rates more in line with comparable rates approved as reasonable in this District.  Second, "courts may discount the rates charged to arrive at a reasonable fee for the work involved" where, like here, the "fee application arises out of a relatively straightforward discovery dispute in which defendants flatly refused to produce responsive documents after being ordered to do so."  *DoubleLine Cap.*, 2023 WL 2870484, at \*4.  Third, the Hanke Defendants have not come forward with any evidence of their financial circumstances to warrant an even greater reduction.  And fourth, courts may reduce rates where, like here, the fee applicant fails to provide sufficient evidence to substantiate the reasonableness of the requested hourly rates—for example, by failing to provide information about the attorneys' backgrounds or levels of experience.  *See Wells Fargo Tr. Co.*, 2023 WL 8591953, at \*9 (reducing the requested hourly rates in part because of "the lack of any information about the experience of the particular lawyers and staff whose rates are at issue"); *Capitol Recs., LLC v. ReDigi Inc.*, No. 12 Civ. 95 (RJS), 2022 WL 3348385, at \*4 (S.D.N.Y. Aug. 12, 2022) (explaining

13

that "[c]ourts have responded to a prevailing party's failure to provide adequate information supporting the reasonableness of a fees request in a number of ways," including by "employ[ing] an across-the-board percentage reduction in the rates requested because of inadequate proof of the reasonableness of the hourly rate charged" (internal quotation marks omitted) (collecting cases)); *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 392 F. Supp. 3d 382, 408 (S.D.N.Y. 2019) (concluding that "a reduction in [the] requested hourly rates . . . [was] warranted" because the plaintiffs "fail[ed] to submit *any* evidence relating to these attorneys' legal experience and skill that would allow this Court to ascertain the prevailing market rates for similar services").

Turning to the hours worked, Al Thani identifies a total of 162.5 hours billed to tasks that include work compensable under the September 6, 2023 Opinion. *See* Time Sheet. These hours reflect the amount of work required by Al Thani's attorneys to: (1) review and respond to the Hanke Defendants' deficient production of November 30, 2020, Hefter Affidavit ¶ 12(a); (2) prepare a January 28, 2021 letter to the Hanke Defendants detailing the discovery deficiencies of the prior two months, *id.* ¶ 12(b); (3) prepare letters to the Court in February 2021 regarding the status of discovery, requesting a pre-motion conference regarding discovery disputes, responding to the Hanke Defendants' letter to the Court, and prepare for and attend a February 16, 2021 status conference, *id.* ¶ 12(c); (4) correspond with the Hanke Defendants regarding the insufficiency of their May 24, 2021 production and failure to comply with the Court's deadline for substantial completion of jurisdictional discovery, *id.* ¶ 13(a); (5) prepare for and participate in a June 1, 2021 meet-and-confer regarding the ongoing discovery deficiencies, *id.* ¶ 13(b); and (6) prepare a letter to the Court requesting an order compelling production by the Hanke Defendants, *id.* ¶ 13(c). These six categories of hours are all "compensable tasks," *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, No. 18 Civ. 4437 (JGK) (BCM), 2021 WL 1549916, at *5 (S.D.N.Y. Apr. 20, 2021), as the Court ordered the Hanke Defendants to pay for the "incremental attorneys' fees

and costs incurred by Al Thani based on the Hanke Defendants' noncompliance with the Court's discovery orders covering the period of November 30, 2020 through February 16, 2021 and the period of May 24, 2021 through June 9, 2021," *Al Thani*, 2023 WL 5744288, at *16.

As Hefter recognizes, "the timekeeper entries . . . in many instances did not delineate between time spent on individual tasks." Hefter Affidavit ¶ 11. Accordingly, Al Thani proposes a "10% reduction to the fees requested." *Id.* The Court agrees that the block-billing present in Al Thani's fee application warrants some reduction in fees. *See Vista Outdoor*, 2018 WL 3104631, at *7 ("Courts regularly apply percentage cuts where there is a substantial amount of block billing in a fee request." (internal quotation marks omitted) (collecting cases)). Here, of the fifty relevant time entries, only sixteen were for work that was completely compensable. *See* Time Sheet at 2-14. The remaining thirty-four entries—or sixty-eight percent of the relevant time entries—mixed tasks that were compensable with those that were not. *Id.* Although block-billing is not *per se* unreasonable, *see Hines v. City of Albany*, 613 F. App'x 52, 55 (2d Cir. 2015), the commingling of compensable and uncompensable tasks in single time entries here hampers the Court's ability to review the reasonableness of the fees requested. The Court accordingly reduces the number of reasonable hours by fifteen percent from the number of hours billed. *See VR Optics*, 2021 WL 1198930, at *4 (explaining that block-billing "warrants [an] across-the-board reduction" where "the block-billing was mixing together tasks that were not all compensable"); *Vista Outdoor*, 2018 WL 3104631, at *7-8 (reducing the requested hours by thirty percent because over seventy-five percent of the time entries were block-billed); *see also Hines*, 613 F. App'x at 55 (affirming a thirty percent reduction largely because of block-billing); *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (affirming a fifteen percent reduction due to block-billing).

Applying the reductions noted above, the Court concludes that the following rates and hours are reasonable:

| Attorney | 2020 Rate | 2020 Hours | 2021 Rate | 2021 Hours | Fees & Costs |
|---|---|---|---|---|---|
| Hefter | $1,036.00 | 5.525 | $1,108.00 | 9.265 | $15,989.52 |
| Ducharme | $664.00 | 15.045 | $768.00 | 62.050 | $57,644.28 |
| Bautz | $504.00 | 8.330 | $616.00 | 37.910 | $27,550.88 |
| Total | | | | | $101,184.68 |

The Court thus awards Al Thani a total of $101,184.68 in attorneys' fees and costs.

### IV.  Conclusion

For the reasons stated above, Stevens's motion for reconsideration is granted, the joint motion for reconsideration is denied, and the Court awards Al Thani a total of $101,184.68 in attorneys' fees and costs.  The Court accordingly grants summary judgment to Stevens in the amount of $1 million, plus prejudgment interest at a rate of seven percent starting on July 16, 2020, in damages for his breach-of-contract claim (Count One) against IOLO and against Hanke, as IOLO's alter ego, to the extent the claim concerns a breach of Section 5.3 of the Stevens MDA. For that grant of summary judgment, post-judgment interest shall accrue at the statutory rate pursuant to 28 U.S.C. § 1961 from the date judgment is entered until payment is made in full.  The Clerk of Court is respectfully directed to enter partial judgment accordingly.

The parties are ordered to appear for a status conference to discuss next steps in this litigation.  The status conference will take place in Courtroom 12D of the Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, New York 10007, on June 17, 2025, at 11:00 a.m. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 417 in Case Number 20 Civ. 4765 and the motions pending at Docket Numbers 178 and 179 in Case Number 20 Civ. 8181.

SO ORDERED.

Dated: June 5, 2025
New York, New York

_____
JOHN P. CRONAN
United States District Judge

16