UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                                    :
MOHAMMED THANI A.T. AL THANI,                       :
                                                    :
                              Plaintiff,            :
                                                    :
              -v-                                   :          20 Civ. 4765 (JPC)
                                                    :
ALAN J. HANKE, *et al*.,                            :
                                                    :
                              Defendants.           :
                                                    :
---------------------------------------------------------------------X
                                                    :
MARTIN JOHN STEVENS,                                :
                                                    :
                              Plaintiff,            :
                                                    :
              -v-                                   :          20 Civ. 8181 (JPC)
                                                    :
ALAN J. HANKE, *et al*.,                            :
                                                    :          OPINION AND ORDER
                              Defendants.           :
                                                    :
---------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Allan J. Hanke, Sherry Sims, and Amy Roy-Haeger are Defendants in these two consolidated cases, with trial scheduled to commence on January 12, 2026. At various points during this litigation, Hanke, Sims, and Roy-Haeger have proceeded *pro se*. Then, on August 15, 2025, September 8, 2025, and November 7, 2025, respectively, *pro bono* counsel appeared to represent Sims, Hanke, and Roy-Haeger. Shortly thereafter, each Defendant filed motions in anticipation of the upcoming trial. On September 24, 2025, Sims and Hanke jointly moved to reopen discovery for the limited purpose of deposing Plaintiffs Mohammed Thani A.T. Al Thani and Martin John Stevens, as well as non-parties Samuel Miginnis, Steven Papi, and William Slater

Vincent.  That same day, Sims also moved to file late Answers in both cases.  And on November 14, 2025, Roy-Haeger joined Sims and Hanke's joint motion to reopen discovery.

For reasons that follow, the Court grants Sims's motion to file late Answers, and Defendants' joint motion to reopen discovery.  The Court finds "good cause" for the filing of the late Answers by Sims and the reopening of discovery under Federal Rules of Civil Procedure 55(c) and 16(b)(4), respectively, because each request is critical to *pro bono* counsels' ability to put on an effective defense, yet will not unduly prejudice Al Thani or Stevens in proving their cases.

## I.  Background

### A.    Facts

The Court assumes familiarity with the facts of this case, which were described at length in the Court's September 23, 2024 Opinion granting in part and denying in part Al Thani's and Stevens's motions for summary judgment.  *See Al Thani v. Hanke* ("*Hanke VI*"), No. 20 Civ. 4765 (JPC), 2024 WL 4265196, at *2-20 (S.D.N.Y. Sept. 23, 2024).  The facts are summarized here only to the extent relevant to resolving the present motions.[1]

### 1.    The Al Thani Matter

Al Thani was introduced to Hanke in early 2019 through non-parties Miginnis and Papi, who were two of Al Thani's investment advisors.  *See* Dkt. 382 ("Miginnis Affidavit") ¶ 3 (describing a January 16, 2019 meeting between Miginnis and Hanke); Dkt. 383 ("Al Thani 56.1 Stmt.") ¶ 19 (describing a February 11, 2019 meeting between Migginis, Papi, and Hanke).  According to Miginnis, Hanke held himself out as an experienced investor who could realize large

---

[1] Except where otherwise indicated, all docket citations refer to the docket in *Al Thani v. Hanke*, No. 20 Civ. 4765 (JPC) (S.D.N.Y.) ("Al Thani Matter").  All docket citations referring to the docket in *Stevens v. Hanke*, No. 20 Civ. 8181 (JPC) (S.D.N.Y.) ("Stevens Matter"), are so indicated.

returns.  Miginnis Affidavit ¶ 4.  But in fact, Hanke had never generated returns for any client. Stevens Matter, Dkt. 159, Exh. 1 ("Hanke Dep. Tr.") at 145:5-9 ("[Q]: [H]ave you generated any returns for any investor?  A[:] Not yet.").

Seeking a "wealth enhancement program to fund various humanitarian efforts," Miginnis Affidavit ¶ 1, Al Thani executed a management and deposit agreement on March 12, 2019, Dkt. 384 ("Hefter Decl."), Exh. 17 ("March MDA"), with Defendant IOLO Global LLC ("IOLO"), a company owned and operated by Hanke.  Per the parties' agreement, Al Thani wired $3 million into an Interest on Lawyer Trust Account ("IOLTA"), Hefter Decl., Exh. 3 at RSM-A00002; Hefter Decl., Exh. 19, and in return, IOLO promised to pay Al Thani a total of $28.8 million across over a dozen installments that were due within a span of ten months, March MDA, App'x B.

The parties' March MDA also provided that Al Thani's $3 million investment would be "insured by private deposit Surety," March MDA, § 5.3.2, so on April 4, 2019, Hanke obtained a $3 million surety bond through SubGallagher Investment Trust ("SGIT"), Hefter Decl., Exh. 20 ("Al Thani April Financial Guarantee").  At the time, Sims was among three individuals involved in SGIT, which was initially organized by an attorney named William Slater Vincent.  Stevens Matter, Dkt. 159, Exh. 6 ("Sims Dep. Tr.") at 8:24-9:1 (describing SGIT), 9:2-9 (describing the role of Vincent in SGIT's formation), 14:5-9 (testifying that there were only "four people in all of SGIT from the start"), 10:14-20 (discussing one person's departure from SGIT around 2018). Hanke and Sims had met earlier in 2019, after which Hanke asked SGIT to be IOLO's "Surety Provider."  Al Thani 56.1 Stmt. ¶ 6; Dkt. 333 (declaration of Al Thani's attorney, Michael Hefter), Exh. C (email sent by Hanke to sgit@sgitllc.com on February 17, 2019); *see also* Sims Dep. Tr. at 19:8-12 (testifying that when Sims was communicating as part of SGIT's business, she used "the sgitllc.com email account").

3

The Al Thani April Financial Guarantee between SGIT and IOLO provided that that if IOLO "shall be declared in default [under the March MDA], by written notice to SGIT," then SGIT would "remedy the default . . . not later than one hundred eighty (180) days after SGIT receives notice." Al Thani April Financial Guarantee ¶ 3. But although IOLO ultimately failed to meet its payment obligations under the March MDA, Al Thani has thus far proffered no evidence that he gave written notice of that default (or any subsequent default) to SGIT. *See Hanke VI*, 2024 WL 4265196, at *36 ("Al Thani has proffered no evidence, however, that he notified SGIT, in writing or otherwise, of IOLO's default or that SGIT failed to perform its obligation once notified.").

Instead of calling IOLO's default, Al Thani's advisors Papi and Miginnis followed up with Hanke, who over the course of several months, repeatedly assured that the payments to Al Thani were forthcoming. *Id.* at *8-9. On June 21, 2019, and July 16, 2019, Al Thani agreed to two addenda to the March MDA which rolled over the amount IOLO owed as additional investment capital. Hefter Decl., Exhs. 65 (first addendum to the March MDA), 28 (second addendum to the March MDA). Then, on July 25, 2019, Al Thani agreed to make an additional investment of $3.5 million pursuant to a second MDA, Hefter Decl., Exh. 34 ("July MDA"), which was secured by a second financial guarantee with SGIT. And on October 28, 2019, the parties even entered into a third addendum to the March MDA, as well as an additional addendum to the July MDA. Hefter Decl., Exh. 41 (third addendum to the March MDA); Al Thani 56.1 Stmt. ¶ 74 (describing addendum to the July MDA).

In addition to following up with Hanke, Al Thani and his advisors also reached out to Roy-Haeger. Hanke had described Roy-Haeger as his "trade partner," Hefter Decl., Exh. 7 (Roy-Haeger deposition transcript) at 158:15-159:16, and according to Miginnis, Roy-Haeger also held

4

herself out on one phone call as the head of compliance for an entity called China Development Fund Limited, in which Hanke had invested.  Al Thani 56.1 Stmt. ¶ 64; Miginnis Affidavit ¶ 7. On multiple occasions, Roy-Haeger suggested that funds were on their way, *see Hanke VI*, 2024 WL 4265196, at \*10-11, but in fact, they were not.  IOLO never paid Al Thani under either MDA or the addenda thereto.

### 2.    The Stevens Matter

Stevens became acquainted with Hanke in September 2018, when he learned about a managed leveraging program run by Hanke called "Program 100."  Stevens Matter, Dkt. 161 ("Stevens 56.1 Stmt.") ¶ 3.  For the next year, Stevens waited to "free up [his] funds" and kept in contact with Hanke, who, according to Stevens, held himself out as an experienced and successful trader.  Stevens Matter, Dkt. 158 ("Stevens Decl.")  ¶¶ 14, 18.  Eventually, on November 29, 2019, Stevens entered into a management and deposit agreement with IOLO.  Stevens Decl., Exh. 12 (email sent by Hanke to Stevens on November 29, 2019, with the signed agreement attached) at AH_054115-AH_054121 ("Stevens MDA").  Pursuant to the Stevens MDA, Stevens wired $1 million to an IOLTA in exchange for the promise of "an initial payment of Five Million United States Dollars ($5,000,000) [to] be retained for use in a subsequent transaction as agreed between the parties."  Stevens MDA, App'x B; *see* Stevens Decl. ¶ 45 (describing Stevens's wiring of funds); Hanke Dep. Tr. at 23:3-20 (same).

Stevens claims to have believed he was investing in a managed leveraging program like Program 100.  *See* Stevens Decl. ¶¶ 32, 33, 35.  He says that Hanke discussed such a program with him when they first met over a conference call on October 5, 2018, *id.* ¶ 8, and that he invested only after consulting an outline of Program 100 online, *id.* ¶ 29.  Hanke denies discussing a managed leveraging program during the October 5 conference call, Hanke Dep. Tr. at 19:19-20:6,

24:21-23, but he did prepare, sign, and initial a "Program Manager Information Sheet" that was emailed to Stevens on October 10, 2018, Stevens Decl., Exh. 2 at 4-9 (email sent to Stevens on October 10, 2018); Hanke Dep. Tr. at 26:9-27:2, 28:22-30:20, 31:2-14. On November 28, 2019, Stevens shared with Hanke his understanding that there would be a leveraging component to his investment. Stevens Decl. ¶¶ 34-35.

Although the Program Manager Information Sheet that was emailed to Stevens suggested that his investment would be secured by Lloyd's of London, *id.* ¶ 14, IOLO actually guaranteed Stevens's investment through a surety bond with Guarantee Investment Trust ("GIT"), Stevens Decl., Exh. 13 at 3-12 ("Stevens Financial Guarantee"). GIT was formed after the trustee of SGIT resigned, in order to allow Sims, as trustee of GIT, to continue providing surety bonds that Hanke had already paid for. Stevens 56.1 Stmt. ¶¶ 50-51; *see also* Sims Dep. Tr. at 56:11-20. The Stevens Financial Guarantee therefore was one of only one or two new bond deals that GIT provided during its entire existence. Sims Dep. Tr. at 35:15-36:5. Much like the Al Thani April Financial Guarantee, the Stevens Financial Guarantee provided that if IOLO "shall be declared in default, by written notice to GIT," then GIT would "remedy the default . . . not later than one hundred eighty (180) days after GIT receives notice." Stevens Financial Guarantee ¶ 2.

As with Al Thani's investment, Hanke and IOLO failed to make the required payments under the Stevens MDA. On April 15, 2020, the parties agreed to an addendum to the Stevens MDA that rolled over the outstanding payments, Stevens Decl., Exh. 18, but after IOLO once again failed to meet the payment deadlines, Stevens notified GIT of IOLO's default on August 14, 2020, Stevens 56.1 Stmt. ¶ 97. GIT failed, however, to provide the agreed-upon surety. *Id.* ¶ 99.

**B.      Procedural History**

On June 22, 2020, Al Thani filed a Complaint against Hanke, IOLO, and John Does 1-100. Dkt. 1.  Then, on September 25, 2020, Al Thani amended his Complaint, adding Roy-Haeger, SGIT, Sims, and two other parties as Defendants.  Dkt. 35 (Al Thani Amended Complaint).  Al Thani's Amended Complaint states claims for breach of the March MDA against Hanke and IOLO, *id.* ¶¶ 76-83 (Count One); breach of the July MDA against Hanke and IOLO, *id.* ¶¶ 84-91 (Count Two); breach of the Al Thani April Financial Guarantee against SGIT and Sims, *id.* ¶¶ 92-98 (Count Three); fraudulent inducement against all Defendants, *id.* ¶¶ 99-112 (Count Four); fraud against all Defendants, *id.* ¶¶ 113-122 (Count Five); aiding and abetting fraud against Roy-Haeger, Sims, SGIT, and two other Defendants, *id.* ¶¶ 123-127 (Count Six); breach of fiduciary duties against Hanke and IOLO, *id.* ¶¶ 128-131 (Count Seven); aiding and abetting breach of fiduciary duties against Hanke, *id.* ¶¶ 132-136 (Count Eight); and violation of the Investment Advisers Act against Hanke and IOLO, *id.* ¶¶ 137-141 (Count Nine).

After Al Thani filed his Amended Complaint, Hanke and IOLO, then represented by shared counsel, moved to dismiss Al Thani's claims for lack of personal jurisdiction and failure to state a claim on November 2, 2020.  Dkts. 62-65.  Roy-Haeger, who has proceeded *pro se* for the entirety of this litigation prior to *pro bono* counsel's appearance on November 7, 2025, moved on November 19, 2020 to dismiss for failure to state a claim or for lack of personal jurisdiction, and, in the alternative, sought to transfer venue.  Dkt. 82.  Sims and SGIT, represented by shared counsel, moved to dismiss the claims against them for lack of personal jurisdiction on December 11, 2020.  Dkt. 96.  Initial discovery was scheduled to begin on December 14, 2020.  Dkt. 94 at 2.

Meanwhile, Stevens filed a Complaint against Hanke, IOLO, GIT, Sims, Roy-Haeger, one other Defendant, and John Does 1-100 on October 2, 2020.  Stevens Matter, Dkt. 2 (Stevens

7

Complaint).  Stevens's Complaint states causes of action for breach of the Stevens MDA against Hanke and IOLO, *id.* ¶¶ 79-86 (Count One); fraudulent inducement against all Defendants, *id.* ¶¶ 87-97 (Count Two); fraud against all Defendants, *id.* ¶¶ 98-107 (Count Three); aiding and abetting fraud against GIT, Sims, Roy-Haeger, and one other Defendant, *id.* ¶¶ 108-112 (Count Four); breach of fiduciary duties against Hanke and IOLO, *id.* ¶¶ 113-117 (Count Five); aiding and abetting breach of fiduciary duties against Hanke, *id.* ¶¶ 118-122 (Count Six); violation of the Investment Advisers Act against Hanke and IOLO, *id.* ¶¶ 123-127 (Count Seven); and breach of the Stevens Financial Guarantee against Sims and GIT, *id.* ¶¶ 128-138 (Count Eight).  On October 7, 2020, the Court accepted the Stevens Matter as a related case to the Al Thani Matter, and in December 2020, the Court stayed motions practice in the Stevens Matter pending resolution of related motions in the Al Thani Matter.  *See* Stevens Matter, Dkts. 51, 55.

On March 17, 2021, while the parties' motions in the Al Thani Matter were still pending, counsel for Sims, SGIT, and GIT informed the Court that Sims had filed for bankruptcy, thus triggering an automatic stay of the action as to her.  Dkt 168.  Counsel subsequently moved to withdraw as SGIT's representative, Dkt. 169, and the Court granted that request on April 12, 2021, Dkt. 180.

On May 11, 2021, the Court denied Hanke and IOLO's motion to dismiss.  *See Al Thani v. Hanke* ("*Hanke I*"), No. 20 Civ. 4765 (JPC), 2021 WL 1895033, at *5-20 (S.D.N.Y. May 11, 2021).  Then, on June 10 and 11, 2021, respectively, the Court learned that Hanke and IOLO had filed for bankruptcy, triggering an automatic stay as to both parties.  Dkt. 211 (notice of Hanke's bankruptcy filing); Dkt. 220 at 12:6-17 (transcript of conference where the Court was informed of IOLO's bankruptcy filing).  While proceedings were paused as to Hanke, IOLO, and Sims, the Court denied Roy-Haeger's motion to dismiss or transfer venue on February 17, 2022.  *Al Thani*

*v. Hanke* ("*Hanke II*"), No. 20 Civ. 4765 (JPC), 2022 WL 489052, at *5-10 (S.D.N.Y. Feb. 17, 2022).

Meanwhile, Stevens moved to consolidate his case with the Al Thani Matter on May 20, 2021, Stevens Matter, Dkts. 76-79, and the Court granted that request on February 17, 2022, *Stevens v. Hanke* ("*Hanke III*"), Nos. 20 Civ. 8181 (JPC), 20 Civ. 4765 (JPC), 2022 WL 489054, at *3-4 (S.D.N.Y. Feb. 17, 2022).[2]  The very next day, counsel for both Plaintiffs jointly informed the Court that the bankruptcy stays as to Sims, Hanke, and IOLO had been lifted.  Dkt. 257.  Thus, on February 22, 2022, the Court ordered discovery to proceed as to those parties.  Dkt. 258.

Sims's and GIT's attorney, who had already withdrawn as counsel for SGIT, also moved to withdraw as counsel for Sims on February 23, 2022, Dkt. 261, and for GIT on June 16, 2022, Stevens Matter, Dkt. 127.  The Court granted counsel's requests to withdraw on June 16, 2022, Dkt. 302, and Sims sat for a deposition without counsel on August 25, 2022, *see* Sims Dep. Tr.  Sims and SGIT's joint motion to dismiss in the Al Thani Matter remained pending.

Discovery as to Hanke and IOLO was much more fraught.  As early as March 8, 2022, counsel for Al Thani complained of ongoing deficiencies in Hanke's production.  Dkt. 323 (transcript of March 8, 2022 conference) at 6:21-9:14.  For the next six months, discovery deficiencies persisted, and the law firm jointly representing Hanke and IOLO repeatedly moved to withdraw—a request that the firm first made as early as June 9, 2021, Dkt. 208, but that, due to

---

[2] When the Court consolidated the Stevens Matter with the Al Thani Matter, it did so for pretrial purposes and indicated that it would later "determine whether consolidation for trial is warranted after the close of discovery and the resolution of any motions for summary judgment." *Hanke III*, 2022 WL 489054, at *4.  It has now been over a year since the Court resolved the parties' motions for summary judgment.  At the upcoming conference on November 19, 2025, the Court will confirm that there is no objection to consolidation for trial for the same reasons that the Court determined that pretrial consolidation was warranted.

the ongoing discovery deficiencies, the Court did not ultimately grant until September 8, 2022, Dkts. 329-331. Then, on September 13, 2022, Al Thani moved for sanctions against Hanke, IOLO, and their former lead counsel. Dkts. 334-336. On September 6, 2023, the Court granted the motion in part, ordering Hanke and IOLO to pay certain attorneys' fees and costs, and ordering their former attorney to pay $500 in sanctions. *See Al Thani v. Hanke* ("*Hanke V*"), Nos. 20 Civ. 4765 (JPC), 20 Civ. 8181 (JPC), 2023 WL 5744288, at *16 (S.D.N.Y. Sept. 6, 2023).

While this dispute played out, the Court denied Sims and SGIT's motion to dismiss for lack of personal jurisdiction on June 27, 2023. *Al Thani v. Hanke* ("*Hanke IV*"), Nos. 20 Civ. 4765 (JPC), 20 Civ. 8181 (JPC), 2023 WL 4210049, at *1-3 (S.D.N.Y. June 27, 2023). Under the Federal Rules of Civil Procedure, Sims, by then proceeding *pro se*, was thus required to serve Answers to the operative Complaints in the Al Thani and Stevens Matters by July 11, 2023. *See* Fed. R. Civ. P. 12(a)(4)(A) ("[I]f the court denies the motion . . . , the responsive pleading must be served within 14 days after notice of the court's action."). That deadline passed, however, without Sims filing an Answer to either Complaint.

Discovery in the consolidated cases proceeded, and on July 11, 2023, the Court ordered discovery to be completed by August 25, 2023. Dkt. 348. Al Thani and Stevens then moved for summary judgment on October 23, 2023. Dkts. 380-384; Stevens Matter, Dkts. 157-162. Particularly relevant for the Court's resolution of Sims's motions to file late Answers, while Sims did not file a responsive statement pursuant to Local Civil Rule 56.1(b) or any formal memorandum of law in opposition to Al Thani's motion or Stevens's motion, on May 3 and 6, 2024, she did file on the docket for the Al Thani Matter two letters, an affidavit, and a document titled a "response in opposition to plaintiff's motion for summary judgment." Dkts. 398-401.

These submissions were Sims's first filings since her attorney had withdrawn almost two years prior.

On September 23, 2024, the Court granted in part and denied in part summary judgment as to Al Thani's and Stevens's claims against Hanke, IOLO, Roy-Haeger, Sims, SGIT, and GIT. *Hanke VI*, 2024 WL 4265196 at *26-46. In the Al Thani Matter, the Court (1) granted summary judgment as to liability but denied summary judgment as to damages on Counts One and Two for breach of the March and July MDAs, *id.* at *29-30; and (2) denied summary judgment as to Counts Three through Nine, *id.* at *31-41. In the Stevens Matter, the Court (1) similarly granted summary judgment as to liability but denied summary judgment as to damages on Count One for breach of the Stevens MDA, *id.* at *41-42; (2) granted summary judgment on Count Eight[3] against GIT for breach of the Stevens Financial Guarantee, *id.* at 45;[4] and (3) denied summary judgment on all other counts, *id.* at *43-46.

Stevens moved for reconsideration of the Court's summary judgment decision on October 23, 2024, Stevens Matter, Dkt. 178, and on November 7, 2024, Al Thani and Stevens filed a joint motion for reconsideration, Dkt. 417-418. On June 5, 2025, the Court denied the joint motion for reconsideration but granted Stevens's motion, thus entering summary judgment on Stevens's claim for $1 million in damages due to IOLO's breach of Section 5.3 of the Stevens MDA. *Al Thani v.*

---

[3] At various points in the summary judgment opinion, the Court mistakenly referred to Stevens's claim for breach of the Stevens Financial Guarantee as Count Six. *Compare Hanke VI*, 2024 WL 4265196, at *21 (correctly referring to "breach of the Financial Guarantee against SIMS and GIT" as Count Eight), *and id.* at *23 (correctly referring to Stevens moving for summary judgment "against GIT on Count Eight (breach of the Financial Guarantee)"), *with id.* at *1-2, *41, *45-46 (incorrectly referring to this claim as Count Six).

[4] The Court "reserve[d] any determination on whether and to what extent GIT's liability [on Count Eight] is to be shared by [other parties], as [that] issue [had] not been briefed." *Hanke VI*, 2024 WL 4265196, at *45.

*Hanke*, ("*Hanke VII*"), No. 20 Civ. 4765 (JPC), 20 Civ. 8181 (JPC), 2025 WL 1591379, at *1-2 (S.D.N.Y. June 5, 2025).

After resolving the motions for reconsideration, the Court directed the Clerk of Court to attempt to locate *pro bono* counsel to represent Hanke, Roy-Haeger, and Sims, Dkt. 428, 447, and scheduled trial to begin on January 12, 2026, Dkt. 438.  On August 15, 2025, September 8, 2025, and November 7, 2025, respectively, *pro bono* counsel appeared to represent Sims, Hanke, and Roy-Haeger.  Dkts. 439-441, 464.

After discovering that Sims had never filed Answers, *pro bono* counsel for Sims moved to file late Answers in both cases on September 24, 2025.  Dkt. 449 ("Answers Motion").  Sims attached proposed Answers as exhibits to her motion.  Answers Motion, Exhs. A ("Al Thani Answer"), B ("Stevens Answer").  Her Answers would deny the allegations in the relevant Complaints or deny knowledge or information sufficient to form a belief as to those allegations. *See* Al Thani Answer at 2-15; Stevens Answer at 2-18.  Sims's proposed Answers also assert the same seven affirmative defenses in each case.  The first six affirmative defenses allege that (1) "[t]he claims asserted against Sims fail to assert a claim upon which relief may be granted"; (2) "[t]he Court lacks personal jurisdiction over Sims"; (3) "Plaintiff's claims are barred, in whole or in part, because conditions precedent to any contractual or surety obligation were not satisfied, including proper notice of default"; (4) "Plaintiff's claims are barred, in whole or in part, because the alleged surety obligations are unenforceable"; (5) "Plaintiff's claims are barred, in whole or in part, because the alleged surety obligations are void due to fraud"; and (6) "Plaintiff's recoverable damages, if any, must be reduced to reflect contribution or indemnification to which Sims may be entitled."  Al Thani Answer at 15-16; *accord* Stevens Answer at 18.  Sims's seventh proposed affirmative defense in the Answers alleges that the relevant financial guarantees "were rendered

void as a result of Hanke's false and fraudulent representations" because, as a condition of the financial guarantees provided by SGIT and GIT, the parties entered into an indemnity agreement providing that, if IOLO made any fraudulent representations, the financial guarantees would be unenforceable. Al Thani Answer at 16-18; *accord* Stevens Answer at 18-20.

The same day that Sims moved to file late Answers, Sims and Hanke filed a joint motion to reopen discovery in order to depose Al Thani, Stevens, Miginnis, Papi, and Vincent. Dkt. 448 ("Discovery Motion") at 1. *Pro bono* counsel appeared to represent Roy-Haeger on November 7, 2025, and one week later, Roy-Haeger filed a letter formally joining in Sims and Hanke's joint motion to reopen discovery. Dkt. 465.

Al Thani and Stevens filed joint letter responses in opposition to Sims's motion to file late Answers and the joint motion to reopen discovery on October 6, 2025. Dkts. 453 ("Answers Opposition"), 454 ("Discovery Opposition"). Sims and Hanke filed letter replies in support of their motions on October 10, 2025. Dkts. 456 ("Discovery Reply"), 457 ("Answers Reply"). On November 14, 2025, the Court ordered the parties to appear at an upcoming conference, which is scheduled for November 19, 2025. Dkt. 466.

### III.  Discussion

**A.    Sims's Motion to File Late Answers**

**1.    Legal Standard**

Federal Rule of Civil Procedure 6(b)(1) generally requires that a party seeking to make a late filing after the time for filing has elapsed must show that it "failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). A motion to file a late Answer is different, however, because "[i]f defendants are not permitted to file an answer, they will be in default." *Allen v. Coughlin*, No. 92 Civ. 6137 (MGC), 1995 WL 117718, at *2 (S.D.N.Y. Mar. 17, 1995); *see also Luo v.*

*Baldwin Union Free Sch. Dist.*, 677 F. App'x 719, 720 (2d Cir. 2017) ("The practical effect of granting [the plaintiff's] motion to strike [the late Answer] would have been a default judgment."); *SEC v. Anticevic*, No. 05 Civ. 6991 (KMW), 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009) ("A default judgment is ordinarily justified where a defendant fails to respond to the complaint."). "Therefore, it is appropriate to look to the standard for setting aside an entry of default to decide whether defendants should be permitted to file an untimely answer." *Allen*, 1995 WL 117718, at *2; *accord Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) (analyzing the filing of a late Answer under the standard for a motion to vacate a default); *Liang v. Home Reno Concepts, LLC*, 803 F. App'x 444, 446 n.2 (2d Cir. 2020) ("The filing of a late answer is analogous to a motion to vacate a default." (internal quotation marks omitted)).

Federal Rule of Civil Procedure 55(c) requires a party to show "good cause" to set aside a default. Whether "good cause" exists depends, in turn, on "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). This test sets a lower bar than Rule 6(b)(1)'s standard of "excusable neglect." *Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos*, 109 F.R.D. 692, 695 (S.D.N.Y. 1986). Under the "good cause" standard, a "plaintiff does not suffer cognizable prejudice simply because he is forced to litigate issues raised in a late answer." *Kimberg v. Univ. of Scranton*, 411 F. App'x 473, 479 (3d Cir. 2010). Rather, "[t]o establish prejudice in the context of a default, there must be a showing that the delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Luo v. Baldwin Union Free Sch. Dist.*, No. 12 Civ. 3073 (JS), 2014 WL 3943099, at *4-5 (E.D.N.Y. Aug. 12, 2014) (internal quotation marks omitted), *aff'd*, 677 F. App'x 719. Moreover, "[t]he test of [a meritorious] defense is

14

measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98.[5]

### 2.    Analysis

Sims has shown "good cause" to warrant the filing of late Answers.  First, there is no indication that Sims's failure to file timely Answers was willful.  Sims has actively participated in this litigation at every stage, filing a motion to dismiss, sitting for a deposition, and submitting several documents in response to Al Thani's and Stevens's motions for summary judgment.  It thus appears that Sims's failure to file Answers was merely an oversight made by a then-*pro se* litigant.  This oversight then went unnoticed until Sims's counseled motion on September 24, 2025, over two years after her answer deadline of July 11, 2023.  This is hardly a situation where the events suggest that Sims "deliberately chose not to appear in an action."  *Enron Oil Corp.*, 10 F.3d at 98; *see also Luo*, 2014 WL 3943099, at *4-5 (permitting late filing because "Defendants' failure to file an Answer seems to be the result of confusion").

Second, allowing Sims to file late Answers would not unduly prejudice Al Thani or Stevens.  *See Kimberg*, 411 F. App'x at 479 ("A plaintiff does not suffer cognizable prejudice simply because he is forced to litigate issues raised in a late answer.").  Al Thani and Stevens argue that they would suffer prejudice because Sims's affirmative defenses, particularly each Answer's seventh affirmative defense asserting that SGIT's and GIT's financial guarantees "were rendered

---

[5] Although the parties analyze whether Sims should be permitted to file late Answers under the rubric of Rule 6(b)'s "excusable neglect" standard, the Court does not require Sims to satisfy that higher threshold.  *See Walpex Trading Co.*, 109 F.R.D. at 695 ("This Court deems it inappropriate . . . to hold defendant to the higher standard of excusable neglect merely because [it] inaptly invoked Rule 6(b).").

void as a result of Hanke's false and fraudulent representations," Al Thani Answer at 16; Stevens Answer at 18, "amount[] to litigation by ambush" given that Al Thani and Stevens have "had no opportunity to develop discovery specifically concerning any of the new defenses," Answers Opposition at 1. The Court disagrees. In the affidavit that Sims submitted on May 6, 2024 in response to Al Thani's and Stevens's summary judgment motions, Sims raised the argument that, in her words, "all bonds [are] null in void based on the section in the bond that voids due to fraud along with the bonds not commencing they are voided." Dkt. 401; *see also* Dkt. 134 (Reply Memorandum of Law filed on January 15, 2021 in support of Sims and SGIT's joint motion to dismiss for lack of personal jurisdiction) at 2 ("Plaintiff presents . . . absolutely no evidence to support . . . [that] this case is anything more than a private dispute between the plaintiff and Alan Hanke who, it seems based on the pleadings and proceedings thus far, is alleged to have taken the plaintiff's money."). To be sure, Sims's affidavit opposing summary judgment was submitted after the close of discovery on August 25, 2023, but if Al Thani or Stevens had been surprised by Sims's argument, they could have moved to re-open discovery at that point.[6]

Even assuming that Sims's proposed affirmative defenses come as complete surprises, the Court is confident that Al Thani and Stevens are adequately prepared to address the relevant issues. Counsel for both Plaintiffs extensively deposed Hanke, and to the extent that there is truth to

---

[6] If Al Thani and Stevens were surprised by Sims's argument in opposition to summary judgment, one expects that they would have checked whether Sims's Answers had raised those issues, at which point they would have discovered that Sims had not, in fact, filed Answers and then raised that deficiency with the Court. That this revelation never occurred suggests that Al Thani and Stevens were well aware that Sims intended to defend herself by arguing that the "bonds [are] null [and] void." Dkt. 401.

Sims's contention that the parties entered into indemnification agreements as a condition of the financial guarantees, that fact should already be familiar to both Plaintiffs.[7]

Al Thani and Stevens broadly assert that there is "no authority from this Court (or any other), allowing a defendant to belatedly file an answer after a two-year delay, and subsequent to the close of fact discovery and a ruling on summary judgment motions, with trial [less than] three months away." Answers Opposition at 2 (emphasis omitted). But in fact, courts in this District have allowed litigants to file Answers after similar delays, *see Bolin v. Harvard Prot. Servs., Inc.*, 277 F. App'x 102, 105 (2d Cir. 2008) (affirming a "district judge's decision to allow an amended answer to be filed three years after the amended complaint"), and have permitted litigants to amend their pleadings to add new arguments with even less time before trial, *see Estrada v. Cnty. of Nassau*, No. 05 Civ. 1821 (LDW) (ARL), 2010 WL 2218802, at *1 (E.D.N.Y. May 28, 2010) (granting leave to amend a complaint two weeks before trial); *see also Am. Fed. Group, Ltd. v. Rothenberg,* 136 F.3d 897, 910 (2d Cir. 1998) (explaining that waiver of an unpleaded affirmative defense "may not be proper where the defense is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party").

Third and finally, Sims's Answers present potentially meritorious defenses. "The test of [a meritorious] defense is measured . . . by whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98. As the Court explained in its decision denying summary judgment on Al Thani's and Stevens's claims against Sims, this

---

[7] As discussed below, *see infra* III.B, the Court is reopening discovery for the limited purpose of allowing Sims, Hanke, and Roy-Haeger to depose Al Thani, Stevens, Miginnis, Papi, and Vincent. At the upcoming conference on November 19, 2025, Al Thani and Stevens should be prepared to explain whether they request a further reopening of discovery for the limited purpose of addressing the assertions raised in Sims's Answers, and, if so, what such additional discovery would entail.

litigation presents multiple genuine disputes of material fact, such that a jury could reasonably find in favor of Sims. *See Hanke VI*, 2024 WL 4265196 at \*26-46.

## B.      Joint Motion to Reopen Discovery

### 1.      Legal Standard

Federal Rule of Civil Procedure 16(b)(4) provides that a discovery schedule "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). "Good cause" has a different meaning in the context of Rule 16(b)(4) than Rule 55(c). In the Rule 16(b)(4) context, courts in this District have looked to a non-exhaustive set of factors including

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics Inc.*, 335 F.R.D. 50, 52 (S.D.N.Y. 2020) (internal quotation marks omitted); *see also Trombetta v. Novocin*, No. 18 Civ. 993 (RA) (SLC), 2023 WL 2388722, at \*3 (S.D.N.Y. Mar. 7, 2023) ("Courts do not apply these factors in every case, and their application is not mandatory." (cleaned up)).

Courts on occasion have said that "an application to reopen discovery should be denied where the moving party has not persuaded the Court that it was impossible to complete the discovery by the established deadline." *Baburam v. Fed. Express Corp.*, 318 F.R.D. 5, 8 (E.D.N.Y. 2016) (cleaned up); *accord Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) ("A finding of good cause depends on the diligence of the moving party."). But there is no strict prerequisite to a showing of "good cause"—the relative importance of various "[f]actors differ[s] based upon the posture of the case and the particular type of relief sought." *Rubik's Brand Ltd. v.*

*Flambeau, Inc.*, 329 F.R.D. 55, 58 (S.D.N.Y. 2019); *see also Castro v. City of New York*, No. 06 Civ. 2253 (RER), 2010 WL 889865, at *2 (E.D.N.Y. Mar. 6, 2010) ("By requiring the district court to consider and balance factors other than a plaintiff's diligence, the [Second Circuit] left open the possibility that [good cause] could be [shown] even where a plaintiff has not been diligent.").  The only true overarching principle is that Rule 16(b)(4), like all rules of civil procedure, "should be construed, administered, and employed . . . to secure the just, speedy, and inexpensive determination of every action."  Fed. R. Civ. P. 1.

Given that Sims, Hanke, and Roy-Haeger have each proceeded *pro se* for much of this litigation, it is also relevant here that a "party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation." *Enron Oil Corp.*, 10 F.3d at 96.  Thus, in "undertaking the good cause inquiry, [a court should] give[] solicitude to [a plaintiff's] status as a *pro se* litigant." *Tatintsian v. Vorotyntsev*, No. 16 Civ. 7203 (GHW), 2021 WL 780139, at *5 (S.D.N.Y. Jan. 27, 2021) (cleaned up).

### 2.    Analysis

The Court finds that there is "good cause" under Rule 16(b)(4) to reopen discovery for the limited purpose of deposing Al Thani, Stevens, Miginnis, Papi, and Vincent, subject to the requirement that the requested discovery must be completed within four weeks, by December 15, 2025.[8]  Two factors in particular support this finding.  First, Al Thani and Stevens are not likely to be unduly prejudiced by the reopening of discovery.  In the Rule 16(b)(4) context, prejudice exists if a party's request would "(1) require the defendant to expend 'significant additional

---

[8] The joint motion requests three weeks to accomplish the requested discovery, *see* Discovery Motion at 2, but given the intervening Thanksgiving holiday, the Court will allow four weeks.  The parties should not expect any extension of the December 15, 2025 discovery deadline.

resources' to conduct discovery, or would (2) 'significantly delay' the resolution of the dispute." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 200 (S.D.N.Y. 2014) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  On the other hand, the mere "expenditure of some additional time, effort, or money [does] not constitute undue prejudice." *Randolph-Rand Corp. of N.Y. v. Tidy Handbags, Inc.*, No. 96 Civ. 1829 (DF), 2001 WL 1286989, at *4 (S.D.N.Y. Oct. 24, 2001) (internal quotation marks omitted).

Here, the requested reopening of discovery will not entail the expenditure of significant resources or delay the resolution of the dispute.  Defendants seek to depose only five individuals— two are the Plaintiffs themselves, two are Al Thani's advisors (Papi and Miginnis), and the fifth was purportedly one of Al Thani's attorneys, *see* Sims Dep. Tr. at 44:16-19 (testifying that Vincent represented Al Thani).  Nor will such discovery delay the resolution of this litigation, since the trial remains scheduled to begin January 12, 2026.  The Court acknowledges that "[a]bsence of prejudice to the non-movant alone . . . is not sufficient to satisfy the 'good cause' requirement of Rule 16," *Thomas v. JPMorgan Chase Bank N.A.*, No. 21 Civ. 8477 (JHR) (SLC), 2023 WL 11892332, at *4 (S.D.N.Y. Feb. 27, 2023), *report and recommendation adopted*, 2024 WL 3373373 (S.D.N.Y. July 11, 2024), but this factor nonetheless cuts in favor of granting the joint motion.

The second factor supporting the reopening of discovery is the possibility that the request will uncover relevant evidence.  Each of the parties that Sims, Hanke, and Roy-Haeger seek to depose has intimate knowledge of facts at the heart of this litigation, but none has yet sat for a deposition.  This presents a crucial gap in the evidentiary record—as the Court previously explained, "Plaintiffs' claims may well turn on issues of credibility involving Plaintiffs' and Defendants' testimony."  Dkt. 428 at 3.

20

In response, Plaintiffs argue that Sims, Hanke, and Roy-Haeger have already had ample time to conduct the requested discovery.  This ignores, however, that in "undertaking the good cause inquiry, [a court should] give[] solicitude to [a plaintiff's] status as a *pro se* litigant." *Tatintsian*, 2021 WL 780139, at *5 (cleaned up).  Roy-Haeger has represented herself *pro se* for the entirety of this litigation, and Sims, too, was without counsel for almost the entirety of discovery.  *Cf. Young v. S.W. Airlines Co.*, No. 14 Civ. 1940 (LDH), 2016 WL 3257008, at *4 (E.D.N.Y. May 4, 2016)  (granting the plaintiff's request to reopen discovery because "while it is clear that [the magistrate judge] took painstaking and repeated efforts to advise [the *pro se*] plaintiff of the need for expert discovery, it is less clear that [the plaintiff] fully understood her responsibilities in that regard").  Although Hanke was represented by counsel for much of the discovery period, the quality of that representation was troubling.  Hanke's former counsel repeatedly moved to withdraw as his attorney, failed to comply with multiple discovery deadlines, and ultimately, was sanctioned by the Court for his conduct.  *See Hanke V*, 2023 WL 5744288, at *16.  The firm representing Hanke also completely withdrew on September 8, 2022, well before the parties finished taking depositions.  Hanke's own deposition did not occur until over a year later, on October 4 and 5, 2023.  *See* Hanke Dep. Tr. at 2, 226.

Since *pro bono* counsel appeared, Sims, Hanke, Roy-Haeger have demonstrated much greater diligence in seeking discovery.  *See Young*, 2016 WL 3257008, at *3 ("[A *pro se* plaintiff's] diligence is further evidenced by the fact that she sought leave to reopen discovery shortly after obtaining counsel."); *Shapard v. Attea*, No. 08 Civ. 6146 (CJS), 2015 WL 866892, at *2 (W.D.N.Y. Mar. 2, 2015) ("First and most importantly, the Court believes that since coming into the case to represent the inmate Plaintiff, Plaintiff's counsel have diligently pursued discovery.").

21

The Court trusts that counsel for Sims, Hanke, and Roy-Haeger will be equally as diligent in completing the limited discovery by the firm December 15, 2025 deadline.

### IV.  Conclusion

For the foregoing reasons, the Court grants Sims leave to file her proposed Answers and grants Defendants' joint motion to reopen discovery for the limited purpose of deposing Al Thani, Stevens, Miginnis, Papi, and Vincent, provided that such depositions be completed by December 15, 2025.  To accommodate the reopening of discovery, the deadline to submit a joint proposed pretrial order and all other required pretrial filings is extended until December 17, 2025, and the deadline to file any opposition to a motion *in limine* or responsive pretrial memoranda of law is extended until December 23, 2025.

At the conference scheduled for November 19, 2025, all parties should be prepared to explain whether they object to consolidation of the Al Thani and Stevens Matters for trial.  Al Thani and Stevens should further be prepared to explain whether they request a reopening of discovery for the limited purpose of responding to the assertions raised in Sims's Answers, and, if so, what the scope of such new discovery would be.  The Clerk of Court is respectfully directed to terminate the motions pending at Docket Numbers 448 and 449 in Case Number 20 Civ. 4765 and the motions pending at Docket Numbers 207 and 208 in Case Number 20 Civ. 8181.

SO ORDERED.

Dated: November 17, 2025
        New York, New York

_____
        JOHN P. CRONAN
        United States District Judge